**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

THE ANDERSON LIVING TRUST f/k/a
THE JAMES H. ANDERSON LIVING
TRUST; THE PRITCHETT LIVING TRUST;
J. RICHIE FIELDS; THE TATUM
LIVING TRUST; and NEELY-ROBERTSON
REVOCABLE FAMILY TRUST,

           Plaintiffs,

      v.                              No. 13-CV-00909 KBM-CG

ENERGEN RESOURCES CORPORATION,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART and DENYING IN PART**
**DEFENDANT'S PARTIAL MOTION TO DISMISS**

THIS MATTER comes before the Court upon Defendant Energen Resources
Corporation's Motion to Dismiss Plaintiffs' First, Second, Third, Fifth, Sixth, Eighth, Ninth,
Tenth and Eleventh Causes of Action, filed June 20, 2014 (**Doc. 25**) and Plaintiffs' Motion to
Certify Question of Law to the New Mexico Supreme Court, filed August 14, 2014 (**Doc. 38**).
Having reviewed the parties' briefs and applicable law, the Court finds that the motion to dismiss
shall be GRANTED in part and DENIED in part for the reasons stated in this opinion.

**BACKGROUND**

The essential controversy in this case involves issues relating to the proper payment of
royalty income to Plaintiffs, and all others similarly situated,[1] from the production of oil, natural
gas and associated hydrocarbons (including drip condensate) from natural gas wells on lands

---

[1]  Based on the allegations in the First Amended Complaint ("Complaint"), Plaintiffs intend to seek class action
certification under Fed.R.Civ.P. 23, but no motion to certify the action as a class has been filed as of the date of
filing of this opinion.

subject to various oil and gas leases in northern New Mexico and southern Colorado all within the geologic formation known as the San Juan Basin. Defendant Energen Resources Corporation ("Defendant" or "Energen") is the owner/operator of the natural gas wells on the oil and gas leases at issue in this lawsuit. According to the First Amended Complaint, Defendant produces and sells the production from its wells pursuant to the terms of oil and gas leases and other royalty instruments. Plaintiffs allege that they own royalty and overriding royalty interests under some of these instruments. They also allege that Energen is required to pay monthly royalties to them, and to other owners on the production and sale of oil and natural gas, consistent with the terms of the royalty instruments.

The Court takes note that the complaint in this case is essentially a re-filing of a previous case that was removed to federal court from the 1st Judicial District Court, County of Rio Arriba, State of New Mexico, in April 2012. *See Anderson Living Trust v. Energen,* Civil No. 12-00352 JCH-KBM ("previous lawsuit"). In that case, United States District Court Judge Judith C. Herrera dismissed Plaintiffs' claims without prejudice. Doc. 29, filed Mar. 21, 2013.

The instant case was filed in federal court on September 20, 2013. It was amended on January 22, 2014 as a First Amended Complaint ("FAC"), and asserts eleven causes of action:

- First Cause of Action: Failure to Pay Royalty on Values Received by Energen; Volumes of Hydrocarbons; and Drip Condensate;
- Second Cause of Action: Breach of Duty of Good Faith and Fair Dealing:
- Third Cause of Action: Breach of Duty to Market Hydrocarbons—New Mexico;
- Fourth Cause of Action: Breach of Duty to Market Hydrocarbons—Colorado
- Fifth Cause of Action: Violation of New Mexico Oil and Gas Proceeds Payment Act, and Interest Due (Under Colorado law);
- Sixth Cause of Action: Bad Faith Breach of Contract;
- Seventh Cause of Action: Declaratory Relief;
- Eighth Cause of Action: Fraud, As a Stand-alone Claim in Tort;
- Ninth Cause of Action: Fraudulent Concealment;
- Tenth Cause of Action: Estoppel and Continuing Wrong; and
- Eleventh Cause of Action: Implied Covenant to Market—Unreasonable Expenses.

Defendant moves to dismiss the First, Second, Third, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Claims for Relief (all but the Fourth and Seventh), which are described as follows, based on the allegations in the FAC:

- First Cause of Action: Plaintiffs allege that Energen has breached the royalty instruments by failing to pay royalties on "drip condensate" which is comprised of liquid hydrocarbons that naturally fall out of the gas stream as the gas is delivered to its point of sale. The claim also alleges that Energen "has consistently underpaid royalties" by failing to compensate Plaintiffs for "certain volumes of natural gas . . . used or consumed 'in the field' by Energen and not reported (or paid) to Plaintiffs or the class." FAC, ¶¶34-35;

- Second Cause of Action: Plaintiffs allege that Energen has breached the implied duty of good faith and fair dealing under New Mexico and Colorado law. FAC, ¶¶37-42;

- Third and Eleventh Causes of Action: Plaintiffs allege in the Third Cause of Action that Energen has breached New Mexico's implied "duty to market" by allocating to royalty owners their proportionate share of the costs for post-production services. FAC, ¶¶ 43-54. Similarly, in their Eleventh Cause of Action, Plaintiffs allege that those post-production costs were unreasonable. FAC, ¶¶ 94-101;

- Fifth Cause of Action: Plaintiffs allege that, under Colorado law, they are entitled to "interest at the statutory rate" on the amounts that Energen has allegedly underpaid them. FAC, ¶¶ 60-65;

- Sixth Cause of Action: Plaintiffs allege that Energen has breached the royalty instruments in "bad faith" by "continuously, maliciously and wrongfully [withholding] the benefits owed to Plaintiffs and the class under the terms" of the royalty instruments. FAC at ¶¶ 66-70;

- Eighth Cause of Action: Plaintiffs allege "fraud, as a stand-alone claim in tort." Plaintiffs allege that Energen has engaged in "fraudulent conduct" through unspecified "affirmative misrepresentations and material omissions" in its monthly royalty payment statements. FAC, ¶¶ 77-78;

- Ninth and Tenth Causes of Action: Plaintiffs allege that Energen's statements constitute "fraudulent concealment" (Ninth Claim) and a "continuing wrong" (Tenth Claim).

Defendant's arguments on the Sixth and Eighth Claims for Relief concern the requirement for pleading with sufficient particularity under the Federal Rules of Civil Procedure, but also include some discussion on the Ninth Claim for Relief. This Ninth Cause of Action is also

included in Defendant's arguments concerning applicable limitations period, so this claim will be addressed under both discussions.

## DISCUSSION

The nine counts on which Defendant seeks dismissal are grouped into several categories, and the Court will follow this approach for purposes of analysis in this opinion.

## I.     Legal Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."   To survive a motion to dismiss, a plaintiff's complaint "must contain facts that, if assumed to be true, state a claim to relief that is plausible on its face." *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1087 (D.N.M. 2011); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (complaint must state a claim to relief "that is plausible on its face") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).    In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."   *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Dismissal is appropriate where a plaintiff asserts causes of action that have no basis in the law.   *See Twombly*, 550 U.S. 560- 61. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice.   *Id.* at 555.

## II.    First Cause of Action

In this claim, Plaintiffs allege that Energen has breached the royalty instruments by failing to pay royalties on "drip condensate" and also alleges that Energen "has consistently underpaid royalties" by failing to compensate Plaintiffs for "certain volumes of natural gas . . . used or consumed 'in the field' by Energen and not reported (or paid) to Plaintiffs or the class."

A.     Royalties on Drip Condensate

"Condensate" is defined as "liquid hydrocarbons recovered at the surface without resorting to processing, and is the "mixture of liquid hydrocarbons that results from condensation of petroleum hydrocarbons existing initially in a gaseous phase in an underground reservoir.   30 CFR §206.171.   "Drip condensate" is the liquid portion of the production that falls out of the gas stream, in gathering and transmission lines, away from the wellhead.    Department of Interior regulations define drip condensate as "[a]ny condensate recovered downstream of the facility measurement point without resorting to processing.   It includes condensate recovered as a result of its becoming a liquid during the transportation of the gas removed from the lease or recovered at the inlet of a gas processing plant by mechanical means, often referred to as scrubber condensate." 64 F.R. 43506-01; 30 CFR §206.171.[2]

Defendant contends that because there is no provision in the royalty instruments for paying royalties on liquids that are separated or extracted from the gas stream as "condensate," Plaintiffs' claim for these royalties should be summarily dismissed.    Plaintiffs claim that Energen is failing to report or pay royalty on all volumes of hydrocarbons produced and rely on NMSA 1978, § 70-10-3 to argue their entitlement to royalties for drip condensation.   The statute provides that:

> The oil and gas proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in New Mexico shall be paid to all persons **legally entitled** to such payments.

NMSA 1978 §70-10-3 (emphasis added).   The statute expressly limits entitlement to royalties to individuals who are "legally entitled" to such payments and therefore the question becomes whether Plaintiffs adequately allege they are legally entitled to royalties on liquids that are separated or extracted from the gas stream as "condensate."   Absent an expression of intent to the contrary, the purchase of natural gas at the well carries with it all of its constituent parts and

---

[2]   CFR regulations define "condensate" as "liquid hydrocarbons recovered at the surface without resorting to processing."

the rights to separate or extract any of its hydrocarbon-based elements.   *Barby v. Cabot Corp*., 465 F.2d 11, 14 (10th Cir. 1972).   Defendant relies on *Barby* to argue that Plaintiffs' claim for royalties for drip condensation proceeds should be dismissed.   In *Barby,* the court concluded that the language of the contracts at issue in that case indicated that "all the gas *was sold at the wellhead*" and had "tied their royalty payments to the wellhead market value of the gas."   *Id.* at 14 (emphasis in original).

Plaintiffs refer to portions of the FAC which contain excerpts from the relevant leases, and based on the language from those leases, assert a right to royalties for the production of hydrocarbons produced from the lands, whether marketed on or "off the leased premises."   *See, e.g.,* FAC, ¶¶ 1(E) & 2(E).   The FAC also alleges that "Energen has violated its duties as lessee and operator by selling or transferring the Plaintiffs' share of hydrocarbons to its affiliates. . ." and has used a basis other than an arm's length sale "for payment of the amounts owed to the Plaintiffs for production under their leases, including natural gas, condensate, drip, natural gas liquids, and/or other hydrocarbons."   FAC, ¶ 31; *see also* FAC, ¶ 35 (alleging Defendant has "continually failed to credit revenues to Plaintiffs representing the value of the said produced drip condensate."   For example, Plaintiffs allege that they are entitled to, under the Pritchett Living Trust, royalties to be paid "upon the gross proceeds received by [Energen], including all hydrocarbons contained in any natural gas recovered or separated on or off the lease premises." FAC, ¶4(E).   This language does not express an intent to exclude royalty payments on revenues received by Energen for the production of hydrocarbons, including "drip condensate.

Plaintiffs point to another one of the many similar cases being litigated in this district, *Anderson Living Trust v. WPX Energy Prod.,* 952 F.Supp.2d 979, 1036-37 (D.N.M. 2013) ("*ALT v. WPX")*, in which United States District Judge James O. Browning concluded that plaintiffs

had sufficiently alleged a breach of contract claim based on defendant's failure to pay royalties from sale of drip condensate. The complaint in that case alleged:

> Under the leases, the Defendants owe the Plaintiffs a "duty to pay royalties on all hydrocarbons" for the value or price which the Defendants do or should receive from the "arm's length" sale of the hydrocarbons. . . . The leases give the Plaintiffs a right to royalties in the "drip condensate," a liquid product which is recovered during the Defendants' oil and gas mining processes. . . .

952 F.Supp.2d at 985-86, No. CIV12-0039 JB/SCY, No.CIV12-0040 JB/LFG, Doc. 76). In the instant case, the Court finds that the FAC plausibly suggests that Energen is liable by allegedly breaching the royalty instruments by failing to pay royalties on "drip condensate." Whether the leases at issue actually entitle Plaintiffs to these royalties is a matter to be resolved further down the road in this litigation. For now, the FAC has passed muster under *Twombly* because Plaintiffs have alleged a plausible claim for relief for royalty payments attributable to drip condensation. Accordingly, Defendant's motion is denied on this issue.[3]

B.    <u>Royalties Used by Energen "In the Field"</u>

Plaintiffs also allege that Energen "has consistently underpaid royalties" by failing to compensate them for "certain volumes of natural gas . . . used or consumed 'in the field' by Energen and not reported(or paid) to Plaintiffs or the class." FAC, ¶35. Defendant characterizes this claim as a challenge by Plaintiffs to Energen's right to "free use" of produced gas for its operations.

Defendant moves to dismiss this claim because the FAC fails to allege that Defendant has made use of gas from Plaintiffs' lands despite the absence of "free use" clauses in the royalty instruments. A "free use" clause "is an express provision in most oil and gas leases and governs

---

[3] In *Anderson Living Trust v. Energen*, Civil No. 12-00352 JCH-KBM, Judge Herrera concluded that plaintiffs had "failed to identify applicable contractual language governing the alleged duties and breaches" and dismissed that Cause of Action. 12CV00352, Doc. 29 at 7. Plaintiffs have corrected this pleading deficiency in the present case, adding several pages of descriptions of individual leases, which together with the assertions of breach in the First Claims for Relief, satisfy *Twombly* requirements.

the right of a lessee to use products derived from the leased premises in the operation of said lease," without paying royalties on such gas.  *ConocoPhillips Co. v. Lyons*, 299 P. 3d 844 (NM., 2012).  When a lease provides "that the lessee is privileged to use gas in operating the lease, it is generally held that the gas used for such purposes should be excluded from the lessor's royalty." *Id.* at 856.    For support, Defendant points specifically to the lease relating to the Anderson Living Trust and Pritchett Living Trust, Doc. 5-1, which provides that:

> The lessee shall have the right to use *free of cost,* gas, oil and water found on said land for its operations thereon. . . .

Doc. 5-1, ¶ 8.   Defendant notes that under this express language, these Plaintiffs have no claim for payment of royalties on volumes of gas used or consumed in the field.    Defendant further notes that the FAC does not contain any allegations addressing "free use" clauses and that Plaintiffs do not provide copies of other royalty instruments for other Plaintiffs asserting this same claim.  In other words, Defendant contends that because Plaintiffs have failed to allege that their oil and gas leases or other instruments "do not contain free use clauses," they have failed to state a cause of action.

Plaintiffs' point is well-taken here in that their allegations relating to underpayment of royalties for natural gas "used or consumed in the field by Energen" would not be resolved depending on whether the royalty instruments contained—or did not contain—"free use" clauses. Rather, Plaintiffs simply allege that volumes of natural gas are being produced under their leases and Energen is not reporting or paying Plaintiffs on these volumes.    *See, e.g.,* FAC, ¶ 35 (alleging that "certain volumes of natural gas are used or consumed "in the field" by Energen and not reported (or paid) to Plaintiffs or the class); *see also* FAC, ¶¶ 31 & 33.  Whether the royalty instruments contain, or do not contain, "free use" clauses is an entirely different issue and Defendant's raising of the "free use" clause argument is something of a red herring.  Aside from

any "free use" clause contained in a royalty instrument, other volumes of gas could still be unreported and therefore not represented in the royalties paid to Plaintiffs. As Plaintiffs acknowledge, Energen may have a defense for its failure to compensate Plaintiff for some of the volumes of gas produced from the well (or wells) based upon the "free use clause," but that remains a factual dispute to be tried or resolved by way of summary judgment, but not by way of a motion to dismiss. Plaintiffs have sufficiently alleged this claim and thus, Defendant's motion to dismiss is denied on this issue.

**III.    Second Cause of Action**

This claim applies to the leases in both New Mexico and Colorado. Plaintiffs allege that Energen has breached the implied duty of good faith and fair dealing under New Mexico and Colorado law by underpaying royalties and misleading Plaintiffs about how their royalties were calculated. FAC, ¶¶37-42.

A.    <u>New Mexico Leases</u>

Under New Mexico law, the implied covenant of good faith and fair dealing "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." *Sanders v. FedEx Ground Package Sys., Inc.,* 144 N.M. 449 (2008) (citing *Bourgeous v. Horizon Healthcare Corp*., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994)). Because the implied covenant is aimed at making effective the agreement's promises, it is breached "only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Id.* (covenant of good faith and fair dealing "cannot be used to overcome or negate an express term contained within a contract").

The tenor of Energen's argument is that its royalty payment obligations are governed by the express terms of the royalty instruments, and not by any implied duty. *Elliott Indus. Ltd.*

*P'ship v. BP Am. Prod. Co.,* 407 F.3d 1091, 1108 (10th Cir. 2005 (affirming dismissal of breach of implied duty of good faith and fair dealing claim).   Defendants rely on *Elliott* to argue that because Plaintiffs have failed to plead a breach of the royalty instruments, their claim for breach of implied duty of good faith and fair dealing fails as well.   The Court rejects this argument for two reasons.   First, as discussed above, the Court does not find that Plaintiffs have failed to plead a breach of contract claim.[4]   Second, unlike the plaintiffs in *Elliott* who dismissed their breach of express contract claims for strategic reasons, *see* 407 F.3d at 1108, Plaintiffs here have clearly alleged breaches by Energen of their lease contracts—for example, in the First Cause of Action.   The court in *Elliott* found that in the absence of a claim for breach of an express contract to pay royalties, it was "impossible to discuss, let alone determine, what the possible parameters of an implied covenant of good faith and fair dealing would involve."   407 F.3d at 1114.   *Elliott* does not "preclude a plaintiff from articulating that a lessor of an oil-and-gas lease breached the implied duty of good faith and fair dealing when that duty is necessary to effectuate an express contractual provision."   *ALT v. WPX,* 952 F.Supp.2d at 1039 (citing *Abraham v. BP Am. Prod. Co.,* 685 F.3d 1196 at 1205 (10th Cir. 2012)).[5]   *Elliott* does not lend itself to any comparison because here, the claim for breach of an express contract is alive and well (thus far) and as a result, the Court finds Defendant's reliance on the *Elliott* case is misplaced.

The only question left on this issue is whether Plaintiffs have sufficiently and clearly alleged why and how Energen wrongfully used the contract to Plaintiffs' detriment.   *See Sanders,* 144 N.M. at 452 (breach of implied covenant claim requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party").

---

[4]   As Plaintiffs note, Energen has limited its motion regarding the breach of contract claims to Plaintiffs' drip condensate and field fuel allegations, and so the Court's analysis of Plaintiff's breach of contract claims are confined to those parameters as well.

[5]   The Court will continue to refer to *Anderson Living Trust v. ConocoPhillips Co, LLC., v. WPX Energy Production, LLC.,* 952F.Supp.2d 979 (D.N.M. 2013) as "*ALT v. WPX"* throughout this decision, for ease of the frequent references that will be made to this case.

The Second Cause of Action describes in clear enough detail the allegedly wrongful conduct of Defendant in breaching its duty of good faith and fair dealing: that Energen co-mingled sales of the gas from Plaintiffs' wells with others; realized a higher value for the produced hydrocarbons than the value paid to Plaintiffs; based their payments to Plaintiffs on artificial prices; concealing and failing to report the full volume of gas produced at Plaintiffs' wells; misrepresenting both the quantity of the full measured volume of natural gas "at the mouth of the well" and the gross value of the volume of gas produced, processed, used, or sold; and in addition, doing all of this "willfully and in knowing violation of the legal duties imposed upon Energen. . . ." FAC, ¶¶30-38.

Such allegations come within the purview of a breach of the implied covenant of good faith and fair dealing under New Mexico law. None of these allegations "override" the express provisions addressed by the terms of the royalty instruments. *Sanders,* 144 N.M. at 452 (aligning with courts "that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract"). Instead, the allegations present a showing of bad faith, or at least clearly assert that one party has wrongfully and intentionally used the contract to the detriment of the other party. *See Elliott,* 407 F.3d at 1115 (concept of implied covenant of good faith and fair dealing "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement") (citation omitted).

B.      Colorado Leases

Under Colorado law, every contract "contains an implied covenant of good faith and fair dealing," but the doctrine is applied only when one party has "discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Kaspryzk v. PNC Bank, Nat. Ass'n,* 2013 WL 3895069 (D.Colo. 2013) (citing *City of Boulder v. Public Serv. Co. of*

*Colo.,* 996 P.2d 198, 204 (Colo. App. 1999)).   "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." City of Golden v. Parker, 138 P.3d 285, 292 (Colo.2006) (quoting *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995)).   However, the doctrine cannot be applied to contradict terms or conditions for which a party has bargained.   *Amoco Oil Co.,* 908 P.2d at 498.   Defendant contends that under the royalty instruments at issue, the manner of performance does not allow for discretion on the part of either party, and therefore Plaintiffs cannot rely on the doctrine.

In response, Plaintiffs argue that the good faith and fair dealing (or "bad faith") doctrine "specifically applies to the lessee's duty when dealing with the royalty payments."   Doc. 47 at 12.   Plaintiffs cite to a Colorado oil and gas case which outlined the contours of bad faith conduct in contract performance:

> Thus, in determining whether a lessee acted in bad faith, the focus is on the sale price of the gas, and what a fair sale price would have been had the lessee acted in good faith. A bad faith claim raises the issue of improper receipt and distribution of royalty payments, not calculation of the allocation of costs. Thus, a bad faith claim does not implicate allocation of costs in the first instance.   Instead, a bad faith claim raises the issue of determining what a fair price would have been had the gas been sold in good faith.

*Rogers v. Westerman Farm Co*., 29 P.3d 887, 908 (Colo., 2001).

However, Plaintiffs do not provide any response to the critical question, which is whether the royalty instruments allow for discretion on the part of either party.   Additionally, they fail to allege what discretionary act on the part of  Energen violated the implied covenant of good faith and fair dealing under Colorado law.  Plaintiffs rely only on *Rogers,* which may be helpful in describing the nature of bad faith claims, but does not contradict the Colorado case law cited by Defendant which requires that such claims be founded on contracts that allow for discretion by one party in the manner of performance.   The cases cited by Defendant bears out this

requirement in asserting a claim of good faith and fair dealing under Colorado law.  In *Kaspryzk*, which involved a loan agreement based on a promissory note, the court assumed without deciding that Colorado law recognizes the implied duty of good faith and fair dealing in enforcing what the court found to be a contractual *remedy* (as opposed to *performance* of the contract) in the bank's "discretion" to foreclose on the property, and concluded that plaintiff in that case had failed to identify a relevant discretionary term regarding the performance of her contract.  2013 WL 3895069, *2.

*Amoco Oil Co.* is a seminal case on Colorado contract law, but it does not fill in any blanks for Plaintiffs on their sparse responsive argument.  That case involved leases between retail service station dealers and the oil company.  The leases at issue there contained a provision which gave one  party unmistakable discretion, but the Colorado Supreme Court declined to apply the doctrine of good faith and fair dealing.  The Colorado Supreme Court held that a good faith claim is "irrelevant" where the contract left decisions "absolutely to the uncontrolled discretion of one of the parties."  In such instances, the court reasoned, parties have "expressly contracted for the unconditional right" for such discretion and thus "cannot reasonably expect any special implied protection from terminating the contract other than the proper written notice."  *Amoco Oil Co.* at 506 (citing *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1267-68 (10th Cir. 1998)).  In the *Amoco Oil Co.* case, because the parties had expressly agreed to a contract term that allowed Amoco "unfettered discretion in modifying the rent," the oil company had "absolute discretion to modify a dealer's rent as long as there was adequate notice."  *Id.* at 507.  The Colorado Supreme Court concluded that notice had been given, and the dealers "should not now be permitted to maintain the untenable position that they did not reasonably expect Amoco to exercise this legal right under the lease agreements.  *Id.*

13

The instant case does not fit at all within the factual scenario of *Amoco Oil Co.* because Defendant is not arguing the *extent* of any discretion given to any one party, but rather that the manner of performance in the royalty instruments does not allow for *any* discretion on the part of either party, and therefore Plaintiffs cannot rely on the doctrine.   *Twombly* requires a minimal showing of specific factual allegations which renders the cause of action "plausible on its face." Here, there is no way to know whether the leases in question allow for discretion to be given to either party because Plaintiffs provide no facts at all to suggest that Energen holds some discretion in the manner of performance.[6]   Therefore, the Court finds that Defendant is entitled to dismissal of the Colorado leases under the Second Cause of Action.   However, the Court will allow Plaintiffs to amend the complaint if they wish to include allegations that fit within the contours of the leases in question and Colorado law for this claim.

## IV.     Third and Eleventh Claims for Relief

The Third and Eleventh Claims for Relief concern post-production costs.   In the Third Cause of Action Plaintiffs allege that Energen has breached New Mexico's implied "duty to market" by allocating to royalty owners their proportionate share of the costs for post-production services.   Similarly, in their Eleventh Cause of Action, Plaintiffs allege that these post-production costs were unreasonable.   The question here is whether the relevant law requires the producer or the royalty owner to pay field-related and processing costs for marketing and sale.

A.     Implied Duty to Market

Defendant contends that the Tenth Circuit has addressed this issue and has definitively rejected Plaintiffs' interpretation of an implied duty to market to include the imposition of all processing costs on producers:

---

[6]   The Court can envision some ways that an oil and gas operator can exercise discretion in the performance of the contract, but sees no need to engage in such speculation when Plaintiffs have failed to allege any such discretionary acts.

> Elliott  contends that under the implied duty to market Appellees bear *1114 the burden of all costs incurred to put the gas in a **marketable condition** including the cost of removing the NGLs [natural gas liquids] from the gas.  Thus, Elliott argues any 39% processing fee should not be borne by the royalty owners.  This conception of the implied duty to market finds no support within New Mexico case law. . . .  Nor is the claim saved by Elliott's assertion that the 39% fee is a production cost that must be borne by Appellees because there is no market for the unprocessed gas at the wellhead. This duty imagined by Elliott is inconsistent with New Mexico law because the express terms of the royalty obligations direct the royalty to be paid on the value of the gas "at the well."

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.,* 407 F.3d at 1108 (emphasis added).   Defendant also contends that *Elliott's* holding is consistent with New Mexico law.  In  *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690 (1993), the New Mexico Supreme Court rejected the argument that the producer must bear all costs necessary to render the gas "marketable" and also rejected this particular interpretation of an implied duty to market.   Defendant notes that the answer to which party must pay these processing costs boils down to the terms in the written agreement, and both *Elliott* and *Cont'l Potash* support this notion.  *See Elliott*, 407 F.3d at 1113-14 (no implied legal duty either nullifies or overrides instrument's language); *Cont'l Potash,* 115 N.M. at 704 (when parties "reduce their agreements to writing, the written instrument is presumed to embody their entire contract").   Defendant also notes that no New Mexico appellate court has questioned or disapproved of the Tenth Circuit's interpretation of state law.  *See Wankier v. Crown Equip. Corp*., 353 F.3d 862, 866 (10th Cir. 2003) ("[W]hen a panel of this Court had rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue").

Plaintiffs insist that bearing processing costs is part of Defendant's implied duty to market, and urges the Court to find that the "marketable condition rule" is included within the implied duty to market in New Mexico.   The New Mexico Supreme Court has indeed

recognized the implied covenant "to make diligent efforts to market the production in order that the lessor may realize on his royalty interest." *Darr v. Eldridge,* 66 N.M. 260 (1959).[7]   The lessee has a duty to "proceed with reasonable diligence, as viewed from the standpoint of a reasonably prudent operator, having in mind his own interest as well as that of the lessor, to market the product." *Id.* (citation omitted).   The Supreme Court has implied this legal duty "on oil and gas producers in equity, without looking to the language of the agreements or other evidence of the parties' intentions." *Id.* (citation omitted).   However, there is no indication that New Mexico law intended to interpret this implied duty to market to include the obligation to assume all post-production costs associated with putting the product in "marketable condition." In fact, in *Elliott*, the Tenth Circuit interpreted New Mexico law to reject exactly this notion.

Plaintiffs rely in large part on *ALT v. WPX*, 952 F.Supp.2d 979, in which the royalty owners- plaintiffs also asserted similar implied duty to market claims.   In a five-page footnote to the opinion, the court gave reasons why it believed that the New Mexico Supreme Court, when it determined that the marketable condition rule was "ripe for review," would find that the marketable condition rule was included within the implied duty to market in New Mexico.   *ALT v. WPX,* 952 F.Supp.2d 979, 1029, n.7.    In the footnote analysis, the court referred to case law from other districts such as Kansas, Colorado and Oklahoma which hold that the lessee must bear the cost of putting the gas in condition to be sold pursuant to the "marketable condition rule." *Id.*   However, the court acknowledged that the few New Mexico cases mentioning the subject have declined to address the issue because the matter was not ripe for review. *See Davis v. Devon Energy Corp.*, 147 N.M. 157 (2009) and *ConocoPhillips Co. v. Lyons,* 299 P.3d 844

---

[7]   In *Darr,* the court was "faced with a situation where the lessee was holding onto the property without selling the minerals." *Elliott,* 407 F.3d 1091.   There is no allegation here that Energen is not actively producing and processing the gas, but rather which party should bear the processing costs.

(N.M. 2012).   Ultimately, the court dismissed the royalty owners' implied duty to market claim in light of the Tenth Circuit's holding in *Elliott*.  959 F.Supp.2d at 1049. [8]

This Court agrees with Defendant that at present, the "marketable condition rule" is a minority rule of law.    The in-depth analysis in footnote 7 of the court's opinion in *ALT v. WPX* may well foretell of some future time when the New Mexico Supreme Court decides to grapple with the question of which party bears post-production costs in oil and gas leases; but in the meantime, this Court has the benefit of Tenth Circuit precedent which governs the issue here. Therefore, the Court finds that Plaintiffs have failed to state a Cause of Action in their Third and Eleventh Claims for Relief because the implied duty to market does not include the "marketable condition rule" on which those claims are premised.

B.     Plaintiffs' Motion to Certify (Doc. 38)[9]

Plaintiffs have filed a Motion to Certify Question of Law to the New Mexico Supreme Court (**Doc. 38**).  Because the motion is related to the issue just discussed, the Court finds this to be an appropriate place to address the motion.  Plaintiffs note that the marketable condition rule has been adopted as part of the implied covenant to market in several adjoining states, including Colorado, Kansas and Oklahoma.  The marketable condition rule, as referenced in the preceding discussion, implies a duty as a matter of law upon the lessee to place all hydrocarbons produced under oil and gas lease in marketable condition at the lessee's sole expense.  The New Mexico Supreme Court has not yet determined whether New Mexico will adopted the marketable

---

[8]   In its reply, Energen comments on the relevance of the *Lyons* case, noting that it was limited to leases where the State of New Mexico is the lessor.   Defendant also points out that the court in *Lyons* relied on other cases and authorities that interpreted private leases and royalty agreements to reject the notion of a "marketable condition rule" that would trump express language in leases which permitted lessees to deduct the costs of post-production expenses incurred after the gas exited the wellhead. 299 P.3d at 851.  The issue thus comes full-circle, with final reliance on the express language of the royalty instruments or leases.

[9]  The Motion to Certify is sealed as to Case Participants.  However, the Court's discussion on this motion does not make any references or contain any information that was not in the underlying pleadings on the motion to dismiss, and thus the Court finds no need to separate this discussion from the rest of this opinion.

condition rule, and Plaintiffs urge the Court to certify this question, as it has considerable bearing on Plaintiffs' Third and Eleventh Claims for Relief.

Whether to certify a question of state law to the state supreme court is within the discretion of the federal court. *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974); *Holler v. United States*, 724 F.2d 104, 105 06 (10th Cir.1983). The decision to certify rests in the sound discretion of the federal district court. *Lehman Brothers*, 416 U.S. at 391. Certification is particularly appropriate where the legal question at issue is novel and the applicable state law is unsettled. *Id.* However, certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law. *Armijo v. Ex Cam, Inc*., 843 F.2d 406 (10th Cir. 1988).

Plaintiffs argue that the question is a novel and unsettled question of law in which the public has a significant interest, making it ripe for certification. Plaintiffs are referred to Judge Browning's decision in *ALT v. WPX*, where the court took pains to set out an analysis indicating its disagreement with the Tenth Circuit regarding whether its holding was a correct statement of New Mexico law, *see* 952 F.Supp.2d 979, n.7. Nevertheless, the court declined to ignore clear precedent and dismissed Plaintiffs' claims of implied duty to market. *Id.* at 1049. Judge Browning also declined to certify the question to the New Mexico Supreme Court. *See ALT v. WPX,* 12-cv-00039 JB/SCY (9/18/13), Doc. 89.

This Court intends to do the same in this case, also recognizing that Tenth Circuit precedent in *Elliott* is binding on the issue. The Tenth Circuit holds that New Mexico law does not recognize the marketable condition rule within the implied duty or covenant to market, and this Court is not inclined to second-guess what the New Mexico Supreme Court might do in the face of clear Tenth Circuit precedent. Plaintiffs attempt to undermine the holding in *Elliott* by noting that plaintiffs in that case had made the strategic decision to drop their breach of express

18

contract claim, and so any attempt to assert implied contractual duties simply failed as a matter of law.[10]   *See* Doc. 38 at 11.   However, in *Elliott,* the Tenth Circuit specifically chose to address the implied duty claim ignoring the fact that plaintiffs had dropped their express contract claims. 407 F.3d at 1113 ("Even if we were to ignore Elliott's strategic choice to avoid reliance on the express contractual language, Elliott's implied duty to market claim would still fail").   Thus, Plaintiffs cannot claim that *Elliott's* holding carries no weight for that reason.

Accordingly, Plaintiffs' motion to certify is denied.

## V.      Fifth Cause of Action

Plaintiffs allege that, under Colorado law, they are entitled to "interest at the statutory rate" on the amounts that Energen has allegedly underpaid them. See id. at ¶¶ 60-65.  Defendant assumes that Plaintiffs are referring to Colorado's Payment of Proceeds Act governing oil and gas royalties, C.R.S. § 34-60-118.5.  With this assumption, Defendant asserts that this Court has no jurisdiction over claims alleging violations of the Colorado Payment of Proceeds Act.

The caption of the Fifth Cause of Action asserts a "Violation of the New Mexico Oil and Gas Proceeds Payment Act and Interest Due Under Colorado Law."  Plaintiffs seek payment for the "full proceeds from the sale of hydrocarbons attributable to Plaintiffs' ownership interest" pursuant to the New Mexico Payment of Proceeds Act, NMSA 1978, ¶¶ 70-10-1 et seq. ("NMPPA").   FAC, ¶ 61. In that claim, Plaintiffs also seek their portion of their share of "revenues in Colorado." FAC, ¶ 62.

The NMPPA addresses the timing of payments for oil and gas proceeds, and provides for interest to be paid on late payments.  NMSA 1978, ¶¶ 70-10-3, 70-10-4 91985).  Proceeds must be paid no later than "forty-five days after end of the calendar month within which payment is

---

[10]   As discussed previously, under New Mexico law, covenants "are not implied for subjects that are treated in express provisions."  *Elliott,* 407 F.3d at 1113.   Thus, without an express contract, a plaintiff cannot proceed on a claim for breach of implied contract.

received by the payor. . . .''    The Court finds that Plaintiffs' request for payment of royalties under the NMPPA may proceed.  *See  Elliott*, 407 f.3d at 1120 (A claim for underpayment of royalties may very well fall within the provisions of the Payment Act) (cited in *ALT v. WPX*, 952 F.Supp.2d at 1052).   However, Plaintiff's claim for underpayment of royalties under Colorado law is problematic. The Tenth Circuit has held that C.R.S. §34-60-118.5 only governs enforcement proceedings before the [Colorado Oil and Gas Conservation] Commission and is inapplicable to claims for breach of contract.''    *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1157 (10th Cir. 2000) (affirming district court's refusal to apply the Colorado Payment of Proceeds Act to allegations that a producer breached the act by improperly deducting post-production expenses); *see also ALT v. WPX,* 952 F.Supp.2d at 1053 (following *Atlantic Richfield* in finding that §34-60-118.5 "only governs enforcement proceedings before the Commission and is inapplicable to claims for breach of contract").

In the Fifth Cause of Action, Plaintiffs appear to seek: (1) a claim for underpayment of royalties: pursuant to the NMPPA; (2)payment for revenues "in Colorado"; as a claim for underpayment of royalties; and (3) the "statutory rate" of interest related to all amounts left unpaid or paid late.   FAC, ¶ 64.   Part of the difficulty in parsing out this particular claim is that Plaintiffs fail to assert the relevant Colorado law or statute under which they seek relief for either underpayment or statutory interest.

In their response, Plaintiffs state that they do not allege a claim under the Colorado Payment of Proceeds Act (i.e., §34-60-118.5), but rather under C.R.S. §5-12-102.[11]   Doc. 47 at 19.   It is clear that Plaintiffs have no claim for either underpayment of royalties or interest under C.R.S. §34-60-118.5 because that claim is not within the Court's jurisdiction to enforce, but there is some support for allowing Plaintiffs' claim for statutory interest under Colorado law to

---

[11]   C.R.S. §5-12-102 allows for statutory interest for creditors when there is no agreement about the applicable rate.

proceed pursuant to C.R.S. §5-12-102(b).   *See ALT v. WPX,* 952 F.Supp.2d at 1054 (noting that Tenth Circuit held that federal district court "properly applied [C.R.S.] §5-12-102(b), rather than [C.R.S.] §34-60-118.5 to determine the prejudgment interest the defendant owed for late royalty payments") (citing *Atlantic Richfield Co.,* 226 F.3d at 1157).

With respect to Plaintiffs' Fifth Cause of Action, the Court finds that (1) Plaintiffs' allegations of late royalty payments under the NMPPA may proceed, and Defendant's motion is denied on this basis; (2) Plaintiffs have no claim for either underpayment of royalties or interest under C.R.S. §34-60-118.5 because that claim is not within the Court's jurisdiction, and Defendant's motion is granted on this basis; and (3) Plaintiffs' claim for statutory interest under C.R.S. §5-12-102 may proceed and Defendant's motion is denied on that basis.

## VI.    Sixth Cause of Action

The Sixth Cause of Action asserts a "Bad Faith Breach of Contract" claim.   Plaintiffs allege that Energen has breached the royalty instruments in "bad faith" by "continuously, maliciously and wrongfully [withholding] the benefits owed to Plaintiffs and the class under the terms" of the royalty instruments.   Defendant also claims that the Sixth Cause of Action fails for two other reasons: (1) Plaintiffs cannot sustain a claim for "bad faith" breach without having asserted a breach of express contract claim; and (2) Plaintiffs seek the tort remedy for damages for "injuries sustained" (FAC, ¶ 68), which are not recoverable in a claim for breach of contract.

In this claim, Plaintiffs assert that Energen "continuously, maliciously and wrongfully withheld the benefits owed to Plaintiffs and the class under the terms of the Leases."   Plaintiffs allege that Energen breached its duties including "proper payment of royalties and proper reporting of production and sales values," and that this "breach of contractual duties was continuous, intentional and unjustified and further constitutes fraudulent concealment."   FAC, ¶ 67.   Defendant first contends that Plaintiffs cannot sustain this claim for bad faith without

having asserted a breach of express contract claim.    In the previous lawsuit, *Anderson Living Trust,* Civil No. 12-000352 JCH-KBM, the court dismissed this claim, agreeing with Defendant that plaintiffs' "bad faith breach of contract" was equated with a breach of the implied covenant of good faith and fair dealing" and that because plaintiffs had not sufficiently alleged existence of a contract, the bad faith breach of contract claim must be dismissed. Doc. 29 at 14.    The Court also finds that this claim is essentially a breach of implied covenant claim, but Defendant's argument fails because the Court has found that Plaintiffs have sufficiently alleged a breach of express contract claim.    *See* n.3, above.

However, Defendant's other argument as to this claim has merit.    Plaintiffs assert that Energen is liable "to compensate Plaintiffs for injuries sustained as a result of Energen's acts of bad faith breach of contract."    FAC, ¶ 68.    Defendant contends that Plaintiffs are seeking recovery of tort remedies, which are not available for breach of contract.    The Court agrees with Defendant on this issue.    New Mexico courts recognize that parties to a contract must act in good faith and therefore imply a covenant of good faith and fair dealing in all contracts.    *City of Raton v. Ark. River Power Auth.,* 611 F.Supp.2d 1190, 1199 (D.N.M. 2008).    However, under New Mexico law, breach of this implied covenant ordinarily sounds in contract, not tort.    *Id.* (cause of action for breach of covenant of good faith can normally arise only out of a contract); *Gilmore v. Duderstadt*, 125 N.M. 330, 337 (N.M. Ct. App. 1998) (plaintiffs would be entitled to recover on the contract, including all damages naturally flowing from breach).    The duty "not to act or deal unfairly becomes part of the contract and the remedy for its breach is on the contract itself." *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 439 (1994).[12]

---

[12]    *Bourgeous's* explicit holding was that tort remedies "are not available for breach of the implied covenant in an employment contract."    In that case, the New Mexico Supreme Court also noted that the "strongest basis for permitting tort recovery for breach of the implied covenant is in the insurance context" where there exists a "special relationship" between insurer and insured.    For this reason, the Court finds that *Bourgeous* should not be limited to the employment context, in light of other New Mexico law that is agreement with *Bourgeous* in non-employment context, and of the limitation in *Bourgeous* of the "special relationship" to the insurance context.

Plaintiffs offer no responsive argument at all to Defendant's contention that the Sixth Cause of Action seeks to recover tort damages in a contract case.   Instead, they respond only to Defendant's argument concerning lack of specificity under Rule 8(a), contending that the FAC provides Energen with notice that is sufficient under the Rule.   They also contend that the Sixth Cause of Action alleges the requisite "culpable state of mind" which is necessary for the recovery of punitive damages under New Mexico law.   These arguments are not responsive to the issue of whether the relief Plaintiffs seek constitutes a tort remedy, and insofar as Plaintiffs are seeking relief which is not available under the contracts at issue, their bad faith breach of contract claim shall be dismissed.

Plaintiffs have already alleged a breach of the covenant of good faith and fair dealing in all contracts in the Second Cause of Action, which the Court is allowing to proceed as to the New Mexico leases.   Thus, there is no reason Plaintiffs should be precluded from at least alleging punitive damages for a breach of contract, assuming Defendant's conduct is found to be malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for Plaintiffs' rights.   *Romero v. Mervyn's,* 109 N.M. 249, 256 (1989).   However, a demand for punitive damages is "not a stand-alone claim and does not sustain a separate Cause of Action, and so Plaintiffs' Sixth Cause of Action cannot proceed solely as a request for punitive damages for breach of contractual duties.   *See Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1251 (D.N.M. 2011) (holding that demand for punitive damages is "not a stand-alone claim").

Therefore, the Sixth Cause of Action shall be dismissed because (1) it impermissibly pleads a tort claim for breach of contractual duties; and (2) if viewed as Plaintiffs' seeking of punitive damages under contract law, a claim for punitive damages under contract cannot stand-

alone.   Plaintiffs may seek punitive damages as part of the relief requested pursuant to claims for breach of contract but not as a separate claim for affirmative relief.

**B.**   Eighth and Ninth Claims for Relief

The Eighth and Ninth Claims for Relief are best addressed together.   The Eighth Cause of Action alleges fraud "as a stand-alone claim in tort" and asserts "fraudulent conduct of Energen as alleged, including but not limited to, affirmative misrepresentations and material omissions made in Energen's monthly statements. . . ."   FAC, ¶¶ 77-78.   In the Ninth Cause of Action, Plaintiffs allege that Energen "issued monthly statements to the Plaintiffs . . . which contain erroneous and mis-information about the volumes, values, prices, and types of hydrocarbons produced, used or sold from subject wells"; that Energen did not represent the true values of hydrocarbons produced, used or sold from the wells; that Plaintiffs relied on Energen's misrepresentations and omissions to their detriment and as a result were repeatedly underpaid in their royalties.  FAC, ¶ 81, 82, 83, 84.

Defendant contends that for the Eighth Cause of Action, Plaintiffs make no effort to comply with the specificity requirements of Rule 9(b) which requires that in all averments of fraud, "a party must state with particularity the circumstances constituting fraud . . . . " Fed.R.Civ.P. 9(b).   They also contend that the Ninth Cause of Action alleging fraudulent concealment, which is also grounded in fraud, is also insufficient under Rule 9(b).

Rule 8(a) requires only "a short a plain statement of the claim chowing that the pleader is entitled to relief . . . ."   Fed.R.Civ.P. 8(a)(2).   Rule 9(b) must be read in conjunction with this rule and should not be used to defeat the purpose behind Rule 8:

> Rule 9(b) must be interpreted in harmony with Rule 8, which requires that a complaint provide "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Id.* (quoting Fed. R. Civ. P. 8(a)). Under Rule 8, a complaint need not allege an exhaustive roadmap of a plaintiff's claims, but must be sufficient to "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In other words, while  [*6] Rule 9(b) adds particularity requirements for allegations of fraud or mistake, it should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Civil Rules.  *See, e.g., Michaels Bldg. Co. v. Ameritrust Co., N.A*., 848 F.2d 674, 678 (6th Cir.1988) (quotation omitted)

*Rehnberg v. OfficeMax Inc*., 2011 U.S. Dist. LEXIS 154633 (D.N.M. Nov. 23, 2011); *see U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("[w]hen read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct").

On one hand, Plaintiffs maintain that the FAC clearly provides Energen with sufficient allegations under Rule 9(b) for the stand-alone fraud claim in the Eighth Cause of Action.  On the other hand, they apparently recognize major problems exist with their allegations in the Sixth, Eighth and Ninth Claims for Relief.   For example, the assertions in the FAC on which Plaintiffs rely are *not* contained in the Eighth Claim for fraud, but rather in the Ninth Cause of Action for fraudulent concealment.   *See* Doc. 47 at 21-22 (citing FAC, ¶¶ 81-86).  Plaintiffs agree to withdraw their pleading for fraudulent concealment "to the extent [it] states a prayer for affirmative relief against Defendant, contending that the facts in that claim are sufficient to support Defendant's fraud and bad faith breach of contract claim.   Plaintiffs also request to amend the complaint in order to move the facts now included in the fraudulent concealment claim into the Sixth and Eighth Claims for Relief (for bad faith breach of contract and fraud, respectively).  Doc. 47 at 21, n.7.   The Court notes that Plaintiffs asserted bad faith and fraud

claims in the previous lawsuit.[13]   The Court will allow Plaintiffs to amend their complaint and since this will be the third opportunity for Plaintiffs, hopefully they will  get it right.

As discussed above, the Court is dismissing the Sixth Cause of Action for bad faith breach of contract for reasons other than sufficiency of the pleading, which would render any amendment futile.   *See Steinert v. The Winn Group, Inc.,* 190 F.R.D. 680, 682 (D.Kan. 2000) (court may deny leave to amend if amendment would prove futile).    The fraud claim in the Eighth Cause of Action is abysmally short on allegations sufficient to satisfy Rule 9(b), as Plaintiffs acknowledge by attempting to rely on the assertions in the fraudulent concealment claim to satisfy Rule 9(b)'s requirements for the fraud claim.    Yet, it is not clear whether Plaintiffs actually seek to amend the complaint to seek relief on these claims because Plaintiffs equivocate on the relief they seek.   In one place (as mentioned above), Plaintiffs want to amend the complaint to "affirmatively allege" facts from the fraudulent concealment claim in the Sixth and Eighth Claims for Relief.   Doc. 47 at 21, n.7.   A few pages later, Plaintiffs state that they "do not state a prayer for affirmative relief" in the paragraphs alleging facts supporting the Sixth, Eighth, Ninth and Tenth Claims for Relief, and withdraw the pleading on that basis, reserving the allegations to establish facts concerning the tolling of the statutes of limitations.  Doc. 47 at 30.

Plaintiffs have represented to the Court that they do not seek affirmative relief for these claims, but rely on the facts underlying those claims to support their argument for tolling the statute of limitations.   For these reasons, the Court finds that the Sixth, Eighth, Ninth and Tenth Claims for Relief shall be dismissed to the extent they ask for affirmative relief, but will consider these facts in the next discussion regarding whether the statute of limitations should be tolled.

## VIII.   Ninth and Tenth Claims for Relief and Statute of Limitations Arguments

---

[13]    The bad faith breach of contract claim was the Fifth Cause of Action and the fraud claim was the Second Cause of Action in the previous lawsuit.   *See* Doc. 5.

Plaintiffs allege that Energen's statements constitute "fraudulent concealment" (Ninth Claim) and "estoppel and "continuing wrong" (Tenth Claim).   Defendant considers these claims as a demand for damages for periods predating the applicable statutes of limitations and an attempt on Plaintiffs' part to avoid the applicable statutes of limitation.   *See, e.g.*, FAC at ¶ 89 (alleging underpayment "each and every month, from the date that Energen and/or their corporate successors first initiated delivery of monthly statements to the Plaintiffs and class members, up to the present").

Defendant also contends that the Ninth and Tenth Claims for Relief do not seek any independent relief.   Plaintiffs have conceded as much, and the Court has already dismissed these claims to the extent Plaintiffs seek affirmative relief based on fraudulent concealment, estoppel and continuing wrong, but will consider the assertions in those claims in the context of tolling the statutes of limitations.

A.      "Continuation of Action Doctrine"

The first question here is whether facts underlying these claims are sufficient to apply the "continuation of action" doctrine in order to extend the applicable limitations periods. According to Plaintiffs, the previous lawsuit was filed in state court on October 26, 2011. *See* Doc. 47 at 24 & n.9.[14]   It was dismissed on March 28, 2013 (Doc. 30, Final Order).   The instant complaint was filed in federal court on September 20, 2013, just under six months after the previous lawsuit was dismissed.   Defendant contends that many of Plaintiffs' claims in the FAC are limited by applicable statutes of limitations.   For example, Defendant contends that the First and Sixth Claims for Relief assert breach of contract and bad faith breach of contract, and are subject to the six-year statute of limitations for actions on contracts.   *See* NMSA 1978, §37-1-3.

---

[14]  This filing date is inconsistent with the pleadings on the docket, which shows that it was filed in Rio Arriba County, New Mexico, on February 22, 2012, and not on October 26, 2011.  Doc. 1 (Notice of Removal, at 1) and Doc. 1-1 (Complaint Exhibit).

Plaintiffs' Second, Third, Fourth and Eleventh Claims for Relief allege breach of the implied covenant of good faith and fair dealing and breach of the implied duty to market which is subject to the four-year statute of limitations set forth in NMSA 1978, §37-1-4 which applies to "all other actions not herein otherwise provided for and specified."   The Fifth Cause of Action alleging a violation of the New Mexico Proceeds Payment Act is subject to a four-year statute of limitations, according to Defendant, because there is no specific limitations provision in the Act. Plaintiffs' Eighth Cause of Action asserts fraud, which Defendant contends is also subject to the same four-year limitations period.   Because Plaintiffs seek no independent relief under the Ninth and Tenth Claims for Relief, Defendant argues that these should not be claims at all.  Defendant contends that these limitations should apply to the claims as described and that Plaintiffs cannot avail themselves of the "continuation of action" doctrine to extend the applicable limitations period.

New Mexico law tolls the statute of limitations when a newly-filed action is virtually identical to an earlier-filed action, providing that "[i]f, after the commencement of an action, the plaintiff fail therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first." NMSA 1978, § 37-1-14.   Courts have narrowly construed this statute, however, and have held that it "applies only when the two complaints are substantially the same—involving the same parties, the same cause of action and the same rights."   *Murphy v. Romero,* 1998 WL 438794 (10th Cir. 1998); *Rito Cebollo Invs. v. Golden West Land Corp.*, 94 N.M. 121 (Ct.App. 1980).   Defendant contends that under this standard, §37-1-14 does not apply to Plaintiffs' claims in this lawsuit because the FAC differs substantially from the complaint in the earlier action in that it contains several additional causes of action that were not pled in the earlier lawsuit, 12cv352, such as: (1) breach of the duty of

good faith and fair dealing; (2) duty to market hydrocarbons under Colorado law; (3) interest due under Colorado law; (4) fraudulent concealment; and (5) equitable estoppel.

Plaintiffs contend that this action is clearly "substantially the same" as the earlier lawsuit, and the Court agrees with Plaintiffs here.   In both cases, the claims all arise from Energen's alleged failure to pay royalty on volumes of liquid hydrocarbons to Plaintiffs, and these claims are founded on breach of contract and fraud.   Moreover, the claims of fraudulent concealment and equitable estoppel (the "additional" claims) are not independent claims: Defendant argued as much, Plaintiff conceded as much, and the Court agreed as well.   Thus, they do not qualify as "additional claims," much less claims that alter the nature of the complaint as to parties and underlying rights.   Similarly, claims concerning the Colorado leases onto the Second and Fifth Claims for Relief are barely significant, considering that they are grafted onto already existing claims seeking the same relief, but under New Mexico law.   *Cmp. Murphy v. Romero,* 1998 WL 438794 (10th Cir. 1998) (plaintiff's claim was time-barred by earlier petition, where the parties were not the same and were not even in privity).   Therefore, the Court finds that New Mexico's "continuing violation" doctrine applies under NMSA 1978, § 37-1-14 and has been adequately pled in the FAC.

B.    Fraudulent Concealment and Tolling of the Statute of Limitations

Defendant also contends that the applicable limitations periods apply because Plaintiffs have not adequately pled fraudulent concealment to toll the statute.

Questions of tolling are governed by state law in diversity cases.    *See See Ragan v. Merchants Transfer & Warehouse Co*., 337 U.S. 530, 533–34 (1949) (holding that state law, not the Federal Rules of Civil Procedure, determines when an action is commenced in a diversity case for statute of limitations purposes); *Murphy v. Romero*, 1998 WL 438794 (10th Cir. 1998); *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010) (state law

determines when a diversity suit commences for purposes of tolling the state limitations period); *Burnham v. Humphrey Hospitality Reit Trust, Inc*., 403 F.3d 709, 714 (10th Cir. 2005).

The statute of limitations commences when an 'injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs." *Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 401 n. 12, 827 P.2d 102, 116 n. 12 (1992); *Long v. Weaver*, 105 N.M. 188, 191 (Ct.App.1986) ("We have recognized that under the Tort Claims Act the limitation period commences when an injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs."). New Mexico applies the "discovery rule," which means that the statute of limitations period "begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." *Gerke v. Romero*, 148 N.M. 367, 371, 237 P.3d 111, 115 (Ct.App.2010). The discovery rule provides that the cause of action accrues "when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Williams v. Stewart*, 137 N.M. 420, 424, 112 P.3d 281, 285 (Ct.App.2005).

New Mexico law, under principles of equitable estoppel, recognizes the doctrine of fraudulent concealment as a means of tolling a statute of limitations. *See Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532 (1995); *Ballen v. Prudential Bache Sec., Inc*., 23 F.3d 335, 337 (10th Cir.1994); *Great American American Ins. Co. v. Crabtree*, 2012 WL 3656500, 13 (D.N.M., 2012). While the Court has found that fraudulent concealment cannot be considered a claim for affirmative relief, the Court will consider the alleged facts to determine whether the statute of limitations should be tolled. A party seeking to toll a statute of limitations through this doctrine must prove that: (i) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (ii) the injured party reasonably relied on the other party and the concealment was successful; and (iii) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts

giving rise to a cause of action.  *See Cont'l Potash, Inc. v. Freeport–McMoran, Inc*., 115 N.M. 690 (1993); *Kern ex rel. Kern v. St. Joseph Hosp., Inc*., 102 N.M. 452 (1985).

　　The Court digresses at this point before embarking on a discussion of the parties arguments on this issue.   In responding to Defendant's arguments on the discovery rule (and on pleading deficiencies), Plaintiffs make several references to Judge Browning's opinion in *Anderson Living Trust v. WPX Energy,* 2014 U.S. Dist. LEXIS 94128, D.N.M. June 20, 2014. *See* Doc. 47 at 21, 27 & 29-30.  Plaintiffs rely on this opinion in arguing that Judge Browning denied the Defendant's identical motion to dismiss based on the statutes of limitations.   The opinion, as cited by Plaintiffs, contained Judge Browning's rulings on Defendants' Emergency Motion to Vacate Class Certification Hearing.   However, the cited opinion contains none of the language referenced by Plaintiffs' counsel in the response on pages 21, 27 & 29-30.   As just one example, Plaintiffs cite to *ALT v. WPX*, 2014 U.S. Dist. LEXIS 94128 at *77 as stating "[i]n the end, the check stub tells an investor little . . . ."  See Doc. 47 at 21.   However, that LEXIS cite has only 19 pages, and no reference to any of the language cited.

　　The Court spent considerable effort and time in trying to find the correct cite, expanding its search beyond Plaintiff's LEXIS cite and including the other docket entries for other related cases assigned to Judge Browning, e.g., 12cv0040 JB/WPL, 12cv00917 JB/CG and 12cv00039 JB/SCY.   This was no small task, considering that there are numerous docket entries for each of these cases.  After a considerable search, the Court did find the correct citation in an opinion that was filed on May 16, 2014 and not on June 20, 2014, as cited by Plaintiffs.   The correct LEXIS citation is to an opinion authored by Judge Browning on Defendants' Motion to Dismiss Claims in Plaintiffs' Fourth Amended Complaint, 2014 U.S. Dist. LEXIS 82677 (D.N.M. May 16, 2014)—as opposed to 2014 U.S. Dist. LEXIS 94128, filed June 20, 2014.   It is an opinion from

the same case, No. CIV 12-0040 JB/KBM, but a different pleading.[15]   There is a Westlaw

citation available for the opinion at *ALT v. WPX,* No. CIV 12-0040 JB/KBM, 2014 WL 2750652

(D.N.M. May 16, 2014), which the Court prefers to use.

      This error was not an isolated occurrence or a minor typographical error where the

citation was off by a digit.   In fact, about the only thing Plaintiffs' counsel got right was the

caption of the case, and considering that there are approximately six related cases with the same

caption, this does not say much for the due diligence of the attorneys who are representing

Plaintiffs in this case.   This gaffe is worth mentioning because of the frequency of references by

Plaintiffs' counsel to language in the opinion and the emphasis counsel has placed on Judge

Browning's findings on a similar issue addressed in that case.   Obviously, the Court was not

obligated to embark on a wild goose chase to find the correct cite for Plaintiffs' error, but the

Court was curious to see where the exercise would end up.    Errors like this are inexcusable,

given the number of attorneys (including the *pro hac vice* attorneys) representing the Plaintiffs,

the level of skill and expertise of counsel, and the ability of these attorneys to delegate the more

mundane aspects of proofreading and cite checking of briefs before filing pleadings with the

Court.  Such attention to detail is especially important considering there are several related cases

with the same caption and numerous pleadings in each case.

      Continuing with the analysis, the Court turns to the question of whether Plaintiffs have

adequately pled facts to toll the statutes of limitations.   In the early stages of a case, the plaintiff

---

[15]   The opinion at issue here should be distinguished from another Judge Browning opinion which the Court has cited earlier in this Memorandum Opinion and Order from a related *Anderson Living Trust* case, *ALT v. WPX* case, No.CIV12-0039, JB/SCY, Doc. 76, 952 F.Supp.2d 979 (D.N.M. June 28, 2013).

   Plaintiffs' response contains other careless oversights and inattention to detail which has proven to be quite frustrating for the Court.   For example, counsel cites to the *Anderson Living Trust* case, 12cv00040, as "recognizing six-year limitation for contract claims." Doc. 25 at 16.   The citation reference offers no docket entry at all, much less a page number.  Given that the case has 276 docket entries, the Court cannot fathom why counsel would even bother providing this useless reference, unless counsel believes it is the Court's job to hunt through all the opinions in a case that has over 200 docket entries in order to locate the opinion.

invoking the discovery rule has the burden of showing "that if [he or] she had diligently investigated the problem [he or] she would have been unable to discover" the facts underlying the claim. *Elm Ridge Exploration Co., LLC v. Engle,* 721 F.3d 1199, 12111 (10th Cir. 2013) (citing *Martinez v. Showa Denko, K.K.,* 125 N.M. 615 (Ct.App. 1998)).    In the Ninth Cause of Action, Plaintiffs allege that Energen issued monthly statements to Plaintiffs, including check stubs, which contained "erroneous and mis-information about the volumes, values, prices, and types of hydrocarbons produced, used or sold from subject wells and that Plaintiffs placed their "trust and reliance" in Energen  because of Plaintiffs' "lack of knowledge of the true facts concerning the types, volumes, and values of hydrocarbons produced and sold by Energen" and the "superior knowledge available to Energen . . . ."   The Tenth Cause of Action asserts and Plaintiffs "did not discover and could not have reasonably discovered their claims . . . of underpayment by [the Defendant] due to the omissions and misreporting of Energen. . . ." FAC, ¶¶ 80, 81, 82, 83, 84, 90 & 91.

The "reasonable diligence" standard under New Mexico's discovery rule is a "reasonable-person standard . . . as to whether [the plaintiff] should have known of the [cause of action]." *Elm Ridge Exploration Co., LLC v. Engle,* 721 F.3d at 1210-11.   The Court finds that under this standard, Plaintiffs sufficiently plead the reasonable diligence element of the discovery rule.   It is reasonable for Plaintiffs to rely on the oil producers they entrust to process the oil taken from the oil on their lands.   They appear to be individuals who are not necessary experienced in the oil and gas industry and may not even be near enough to their properties to observe operations.   The oil producers would have a better sense, in terms of knowledge and experience, of the best way to maximize profit from the oil.  Plaintiffs did not ignore their leases (in which case there would not have been reasonable diligence), but attempted to keep track of their profits by using monthly statements and check stubs provided by Defendant.

33

Plaintiffs rely on the opinion by Judge Browning (discussed just above) in which the court denied Defendant's identical motion to dismiss based on statutes of limitations.   *See ALT v. WPX,* No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at \*42 (D.N.M. May 16, 2014) (citing *Elm Ridge Exploration Co., LLC v. Engle,* 721 F.3d 1199, 1210-11 (10th Cir. 2013)).   In that case, Plaintiffs argued:

> (i) that they exercised reasonable diligence, because there was nothing more, within reason, they could do to verify the information reported to them by the Defendants, who were in a much better position to collect knowledge about the financial circumstances of each well; and (ii) that their exercise of reasonable diligence, and their subsequent inability regardless to discover the causes of action, proves the futility of reasonable diligence, and satisfies that element of the discovery rule.

*ALT v. WPX,* 2014 WL 2750652, \*42.   Judge Browning agreed with Plaintiffs:

> It is not clear what more the Defendants want. They offer no concrete examples of the behavior necessary to practice reasonable diligence, but are unsatisfied with the Plaintiffs' reliance on the Defendants—the only financially feasible source of information of which the Court can conceive. The Plaintiffs are additionally in the difficult position of having to prove a negative—that no reasonable amount of diligent investigation would have uncovered the causes of action—and they also fail to articulate a satisfactory definition of what conduct constitutes reasonable diligence. The Plaintiffs need only plead facts, however, not law, and the Plaintiffs have pled sufficient facts to lead a reasonable jury to the conclusion that reasonable diligence would be, or was, futile, and the limitations defense thus fails.

*Id.*   Judge Browning stated that the court "will not dismiss any claim, in whole or in part, on limitations grounds, because the Plaintiffs have alleged facts that might reasonably establish that the discovery rule delayed the accrual of the statutes of limitations.   *Id.,* \*30.   This Court also concludes that Plaintiffs have sufficiently alleged the elements of the discovery rule, and that further inquiry into whether Plaintiffs should have discovered that they had been wronged earlier will be left to a jury to decide.   *See Id.,* \*42.

C.   <u>Tenth Cause of Action</u>

Defendant contends that Plaintiffs have failed to adequately allege equitable estoppel or "continuing wrong" in the Tenth Cause of Action. The Court has already dismissed these claims on Plaintiffs' representation that these are not independent claims on which they seek affirmative relief. Instead, the Court has considered the facts asserted in these claims in the context of whether the statutes of limitations should be tolled and has determined that Plaintiffs have sufficiently alleged elements of the discovery rule in the allegations contained in the Ninth and Tenth Cause of Action. No further analysis is necessary on these claims.

## IX.     Whether Plaintiff J. Ritchie Field is a Party

Last, Defendant contends that Plaintiff J. Ritchie Field is not a party to any royalty instrument with Energen, and that his claim should be dismissed. Plaintiffs represent that they are in the process of seeking to dismiss Mr. Fields without prejudice, upon learning that Mr. Fields is deceased. Therefore, Defendant's motion is granted on this issue.

## CONCLUSION

In sum, the Court finds and concludes as follows:

*First Cause of Action regarding "drip condensate":* The FAC plausibly suggests that Energen is liable by allegedly breaching the royalty instruments by failing to pay royalties on "drip condensate." Defendant's motion is DENIED on this issue.

*First Cause of Action regarding use of fuel gas in the field by Energen:* Plaintiffs have sufficiently alleged this claim, and Defendant's motion is DENIED on this issue.

*Second Cause of Action:* Plaintiffs' allegations come within the purview of a breach of the implied covenant of good faith and fair dealing under New Mexico law. However, Plaintiffs provide no response as to whether the FAC alleges the requisite discretion regarding performance terms for the Colorado contracts, and alleges no facts to suggest that Energen holds some discretion in the manner of performance. Therefore, the Court DENIES Defendant's motion as to this cause of action for the New Mexico leases, and GRANTS the motion without prejudice as to the Colorado leases, subject to amendment by Plaintiff.

*Third and Eleventh Causes of Action:* Plaintiffs have failed to state a Cause of Action grounded in these claims because the implied duty to market does not include the "marketable condition rule" on which those claims are premised. Defendant's motion is GRANTED on these

claims.     Also, the Court DENIES Plaintiffs' request to certify the question regarding the marketable condition rule to the New Mexico Supreme Court.

*Fifth Cause of Action:*  (1) Plaintiffs' allegations of late royalty payments under the NMPPA may proceed, and Defendant's motion is DENIED on this basis; (2) Plaintiffs have no claim for either underpayment of royalties or interest under C.R.S. §34-60-118.5 because that claim is not within the Court's jurisdiction, and therefore Defendant's motion is GRANTED on this basis; and (3) Plaintiffs' claim for statutory interest under C.R.S. §5-12-102 may proceed and Defendant's motion is DENIED on that basis.

*Sixth Cause of Action:*  This claim is DISMISSED because (1) it impermissibly pleads a tort claim for breach of contractual duties; and (2) alternatively, if viewed as Plaintiffs' seeking of punitive damages under contract law, a claim for punitive damages under contract cannot stand-alone.   The Court will allow Plaintiffs to amend the FAC to conform to this Order, and at that time, Plaintiffs may include a claim for punitive damages with the requisite supportive language, within their Second Cause of Action for the New Mexico leases.   Defendant's motion is therefore GRANTED on this claim, subject to Plaintiffs' amendment.

*Eighth, Ninth and Tenth Causes of Action:*   The Sixth, Eighth, Ninth and Tenth Claims for Relief are DISMISSED to the extent they ask for affirmative relief.   Plaintiffs have represented to the Court that they do not seek affirmative relief for these claims, but rely on the facts underlying those claims to support their argument for tolling the statute of limitations, and the Court has considered those facts in that context.   Thus, Defendant's motion is GRANTED to the extent the claims are independent or seek affirmative relief.

*Dismissal Based on Statute of Limitations*:   The Court finds that:

(1) New Mexico's "continuing violation" doctrine applies to Plaintiffs' claims under NMSA 1978, § 37-1-14;

(2) Plaintiffs have sufficiently alleged fraudulent concealment in order to toll the applicable statutes of limitations;

(3) Plaintiffs have sufficiently alleged the elements of the discovery rule.

*Dismissal of Plaintiff Ritchie Field:*   Defendant's motion is GRANTED, and Plaintiffs have acknowledged that Mr. Field should be dismissed from the case.

**THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiffs' First, Second, Third, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Causes of Action **(Doc. 25)** is GRANTED in part and DENIED in part as described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court (**Doc. 38**) is hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FINALLY ORDERED** that  Plaintiffs may amend the complaint to conform to the Court's rulings.  No additional claims or parties shall be added, although additional facts may be asserted to comport with the rulings herein.   Should Plaintiffs wish to amend the complaint, that pleading must be filed **thirty (30) days from the entry of this Memorandum Opinion and Order.**

Finally, a word to Plaintiffs' counsel:  The court notes that in a previous federal case nearly identical to the one at bar, Judge Herrera dismissed all of Plaintiffs' claims without prejudice largely for insufficiency of pleading.   In revising the complaint for re-filing, Plaintiffs' counsel repeated some of the same insufficiency of pleading mistakes that this Court has had to address in this opinion.   Moreover, this Court has called to the attention of Plaintiffs' counsel numerous citation and pleading errors that are just not acceptable in a complex case such as the one at bar when Plaintiffs are being represented by numerous attorneys who are no doubt being well-compensated for their services.   The Court does not have unlimited time and resources to continually deal with pleading deficiencies. Plaintiffs' counsel are put on notice that they should take the opportunity to amend the complaint to conform to the Court's rulings.

_____
UNITED STATES DISTRICT JUDGE