IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a
THE JAMES H. ANDERSON LIVING
TRUST; THE PRITCHETT LIVING TRUST;
J. RICHIE FIELDS; THE TATUM
LIVING TRUST; and NEELY-ROBERTSON
REVOCABLE FAMILY TRUST,

      Plaintiffs,

   v.                                       No. 13-CV-00909 WJ/CG

ENERGEN RESOURCES CORPORATION,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' CLAIMS BARRED BY THE STATUTE OF LIMITATIONS**

THIS MATTER comes before the Court upon Energen Resources Corporation's Motion for Summary Judgment on Plaintiffs' Claims that are Barred by the Statute of Limitations, filed June 10, 2015 (**Doc. 116**). Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, accordingly, is DENIED.

## BACKGROUND

The controversy in this case arises from issues relating to the proper payment of royalty income to Plaintiffs, and all others similarly situated, from the production of oil, natural gas and associated hydrocarbons (including drip condensate) from natural gas wells on lands subject to various oil and gas leases in northern New Mexico and southern Colorado all within the geologic

formation known as the San Juan Basin.[1] Defendant Energen Resources Corporation ("Defendant" or "Energen") is the owner/operator of the natural gas wells on the oil and gas leases at issue in this lawsuit. According to the First Amended Complaint, Defendant produces and sells the production from its wells pursuant to the terms of oil and gas leases and other royalty instruments. Plaintiffs allege that they own royalty and overriding royalty interests under some of these instruments. They also allege that Energen is required to pay monthly royalties to them, and to other owners on the production and sale of oil and natural gas, consistent with the terms of the royalty instruments.

## I. Procedural History

The instant lawsuit, filed in federal court on September 20, 2013, is essentially a re-filing of a previous case that was originally filed in the 1st Judicial District Court, County of Rio Arriba, State of New Mexico, on February 22, 2012. *See Anderson Living Trust v. Energen*, Civil No. 12-00352 JCH-KBM ("previous lawsuit"). That previous case was removed to federal court on April 5, 2012 and United States District Court Judge Judith C. Herrera dismissed Plaintiffs' claims in that case without prejudice. Doc. 29, filed March 21, 2013.[2] It was refiled as a separate case on September 20, 2013.

The Second Amended Complaint contains the following claims:

---

[1] The New Mexico Plaintiffs (Anderson Living Trust, Pritchett Living Trust and the Neely-Robertson Revocable Family Trust) own interests only in wells located in New Mexico, although a separate Plaintiff, the Tatum Living Trust, owns interests in wells located in Colorado.

[2] In the pleadings for the instant motion, Plaintiffs insist on using an October 26, 2011 date instead of February 22, 2012 as the filing date for the previous state court lawsuit, *see* Doc. 47 at 24 & n.9, despite the fact that the Court had pointed out this inconsistency in its earlier Memorandum Opinion and Order, *see* Doc. 67 at 27 n.14. Plaintiffs have provided the Court with no explanation for the discrepancy. The Court noted previously that the October 26, 2011 date does not match the date on the state court complaint for the previous action that was removed to federal court and was before Judge Herrera. That pleading clearly shows that the state court complaint was filed in Rio Arriba County, New Mexico, on February 22, 2012, and not on October 26, 2011. *See* Doc. 1 (Notice of Removal, at 1) and Doc. 1-1 (Complaint Exhibit). Thus, the Court will use the February 22, 2012 date as the filing date in state court for the filing of the previous lawsuit.

First Cause of Action ("COA"): Failure to Pay Royalty on values received by Energen, on volumes of hydrocarbons, drip condensate and lawful expenses;

Second COA: Breach of Duty of Good Faith and Fair Dealing (Dismissed as to Colorado and Re-Pled); [3]

Fourth COA:  (Breach of Duty to Market Hydrocarbons): Colorado Law;

Fifth COA: Violation of the New Mexico Oil and Gas Proceeds Payment Act and Interest Due;

Sixth COA – Bad Faith Breach of Contract (Re-pled); or

Seventh COA – Declaratory Relief.

These COA's can be categorized as alleging four types of claims: (i) improper deduction of post-production costs, (ii) failure to pay royalties on "drip condensate," (iii) selling gas at an improperly low price, or (iv) late payment of royalties under New Mexico law.

## II.     Court's Previous Ruling on Limitations Issue

Defendant has previously sought to dismiss Plaintiff's claims as being barred on a statute of limitations basis in a motion to dismiss, which the Court denied.  Doc. 67.  The Court addressed the issue both under the "continuation of action" doctrine and also as a consideration of Plaintiff's allegations of fraudulent concealment in the context of tolling the statute of limitations.  *See* Doc. 67 at 28-34.   The Court ruled that New Mexico's continuing violation doctrine applied to extend the applicable limitations periods to the claims asserted in the previous lawsuit which had been filed on February 22, 2012 because those claims were the same as those in the previous lawsuit, and because the instant complaint was filed in federal court just under six months after the previous lawsuit was dismissed.  Doc. 67 at 29; *see* NMSA 1978, ¶37-1-14. The Court also found that Plaintiffs had sufficiently alleged the elements of the discovery rule, including the allegation of facts that might reasonably establish that the discovery rule delayed

---

[3] The Third Cause of Action asserts a breach of duty to market hydrocarbons under New Mexico law, but has been dismissed, as reflected in the Second Amended Complaint. *See* Doc. 67 at 35-36.

the accrual of the statutes of limitation. Defendant's motion to dismiss was denied on these grounds. *Id.* at 34. The Court also left for the jury the question of whether Plaintiffs *should* have discovered earlier that they had allegedly been wronged. *Id.* at 34. The instant motion is Defendant's attempt to resolve the limitations issue on a summary judgment standard.

### III.    Facts[4]

The disputed facts center around only two areas: (1) Plaintiffs' lack of knowledge based on discovery responses and check stubs for the royalty payments sent to Plaintiffs, and (2) statements made by John Harold Anderson in a deposition on a separate matter. Mr. Anderson's mother is Georgia F. Anderson, whose trust conveyed the relevant mineral interests to Plaintiffs' Anderson Living Trust and Pritchett Living Trust.

In January 2015, Energen served discovery on Plaintiffs to determine the facts supporting their allegations of fraudulent concealment. *See, e.g.,* Deft's Facts 8, 10. Defendant asked Plaintiffs to identify persons and documents supporting their contention that none of the Plaintiffs or putative class members had knowledge of the true facts underlying their claims. Doc. 117-2 at 2. Plaintiffs' response was that ". . . none of the fuel gas used in gathering or plant processing are [sic] shown on the plaintiffs' or class members' check stubs." *Id.* Defendant claims that this answer shows that Plaintiffs do *not* contend they lacked knowledge about monthly prices used to calculate royalties or deductions. Plaintiffs dispute Defendant's attempts to summarize Plaintiffs' responses to those discovery requests, and contend that their responses are taken out of context. Plaintiffs maintain that the reason they lacked knowledge about the underlying claims is because Energen allegedly misrepresented or omitted information on the royalty check stubs. *See* Deft's Facts 7, 8 9 and responses thereto.

---

[4] The Court references exhibits where necessary. Otherwise, supporting exhibits are attached to the parties' pleadings.

The second set of disputed facts revolves around Mr. Anderson's deposition statements, in which Mr. Anderson described a discussion he had with his mother. Defendant claims that this conversation concerned his mother's belief that producers did not have the right to royalty-free use of gas as fuel.[5] Defendant contends that despite these conversations, Plaintiffs never contacted Energen to inquire about the use of gas as fuel or whether Energen paid royalties on such gas. While it is undisputed that Mr. Anderson's conversation with his mother occurred sometime before 2000, Plaintiffs dispute both the content and significance of the conversation and contend that the topic of the conversation Mr. Anderson had with his mother had nothing to do with any of the facts underlying the claims in this lawsuit. *See* Deft's Facts 14, 15, 16 & 17, and responses thereto.

## IV.     Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial; the nonmoving party may not rest on mere allegations or denials in her own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must set forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not

---

[5] Because Mr. Anderson's deposition excerpts were filed under seal, the Court makes only general references to those statements. *See* Doc. 118 (Ex. C).

sufficient to defeat a motion for summary judgment. *Id.* at 252. Rather, "if the evidence is merely colorable, or is not significantly probative, "summary judgment is appropriate. *See id.* at 249-50 (citation omitted).

## DISCUSSION

The issue before the Court is whether Defendant has presented sufficient evidence showing that, as a matter of law, Plaintiffs knew about the underlying claims in this action prior to the expiration of the applicable limitation periods, and whether Plaintiffs present evidence to create a material issue of fact on that issue. Energen seeks summary judgment on Plaintiffs' breach of contract claims arising six years or more before Plaintiffs filed this lawsuit, in other words, on all claims arising before February 22, 2006, based on the six-year statutes of limitations under both New Mexico and Colorado law. *See* NMSA 1978, §37-1-3; C.R.S. §13-80-103.5(1)(a). Energen also seeks summary judgment on Plaintiffs' remaining claims under New Mexico law arising prior to four years before Plaintiffs filed their lawsuit, i.e., claims prior to February 22, 2008, based on New Mexico's four-year statute of limitations under NMSA 1978, §37-1-4. *See Anderson Living Trust v. WPX Energy Proc., LLC,* 27 F.Supp.3d 1188, 1231-33 (D.N.M. 2014) (holding four year limitations period applied to claims of breach of implied duties and violation of the New Mexico Proceeds Payment Act).

**I.    Relevant Law**

New Mexico uses the discovery rule, meaning that statutes of limitation accrue, or begin to run, only when the "the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim." *Butler v. Deutsche Morgan Grenfell, Inc*., 140 N.M. 111, 118 (Ct.App. 2006). The substantive elements of the rule are that the plaintiff lacked knowledge of at least some of the facts necessary to establish the cause of

action before the date of accrual, *see Gerke v. Romero*, 148 N.M. 367 (Ct.App. 2010) and that reasonable diligence—the level of investigation and inquiry that a reasonable person would pursue—at any point in the period between the cause of actions occurrence and discovery, would not have unearthed the cause of action. A reasonable person standard is used to determine what constitutes "reasonable diligence." *Wilde v. Westland Dev. Co*., 148 N.M. 627 (Ct.App. 2010).[6]

Under New Mexico law, principles of equitable estoppel recognize the doctrine of fraudulent concealment as a means of tolling a statute of limitations. *See Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532, 893 P.2d 428, 432 (1995); *Ballen v. Prudential Bache Sec. Inc.,* 23 F.3d 335, 337 (10th Cir. 1994). Plaintiffs rely on the doctrine of fraudulent concealment by Defendant as the reason they did not have the requisite knowledge for any of the claims that expired before the end of the limitations period. "Equitable tolling is a nonstatutory tolling theory which suspends a limitations period," *Ocana v. Am. Furniture Co*., 135 N.M. 539, 547 (2004), and "[s]uch extraordinary event[s] include conduct by a defendant that caused the plaintiff to refrain from filing an action during the applicable period." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (internal quotation marks omitted). In this case, Plaintiffs must present evidence supporting their position that they did not know the facts giving rise to their claims before the applicable limitations period expired.

**II.    Analysis**

The first question is whether any of Plaintiffs' claims are barred by statutes of limitations that expired prior to this filing date. The second question is whether Plaintiffs knew or should have known the facts underlying their claims prior to the expiration of the limitations period. Finally, assuming that some claims would be barred, the Court must ascertain whether there are

---

[6] The Court has jurisdiction over this case based on diversity, *see* Complaint, ¶ 9, which requires application of New Mexico law to Plaintiffs' claims. *See Wood v. Eli Lilly & Co.,* 38 F.3d 510, 512 (10th Cir. 1994).

any facts to suggest fraudulent concealment which would toll the limitations period for those claims and excuse Plaintiffs' failure to make inquiries or exercise due diligence.

Defendant targets Plaintiffs' claims which fall outside of the applicable limitations period based on the time Plaintiffs knew or should have known about those claims. The Court assumes that Energen is not seeking to dismiss all of Plaintiff's claims here, but only to limit damages by limiting the number of claims asserted by Plaintiffs. As mentioned previously, this Court has determined that New Mexico's continuing violation doctrine applies to extend the applicable limitations periods to the claims asserted in the previous lawsuit which had been filed on February 22, 2012. Based on the Court's ruling that the continuation violation doctrine applies, only some of Plaintiff's claims would be subject to the limitations bar. For example, if Defendant is successful with this summary judgment motion, only royalties for claims prior to February 22, 2006 (for contract claims) and prior to February 22, 2008 (for non-contract claims) would be barred. In other words, contract claims arising in 2006 and thereafter would be considered timely as having been filed within six years of the February 22, 2012 filing date; and non-contract claims arising in 2008 and thereafter would be timely because they were filed within four years of the February 22, 2012 filing date.

Nevertheless, there is some confusion over the scope of claims that would be affected if Defendant prevails in this motion because it is unclear how far back any of Plaintiffs' claims reach, and also unclear how far back Defendant believes Plaintiffs should have known about potential claims. *See* Doc. 10 (as early as the year 2000 and before) and Doc. 140 at 1 (noting that Energen has operated in the San Juan Basin since 1997). According to Plaintiffs, Energen did not acquire interest in the oil wells at issue until 2004. *See* Doc. 120 at 14-15. Thus, although Plaintiffs have not specified the time period for which they seek damages for the

alleged royalty underpayment, the Court will assume that that such claims cannot be alleged earlier than 2004.

Defendant contends that Plaintiffs cannot show either a lack of knowledge about the facts underlying their claims, or that they exercised any diligence in order to discover those facts—which would bar Plaintiffs from relying on the fraudulent concealment doctrine.

### A. Lack of Knowledge and Failure to Use Diligence

The statutes of limitations for Plaintiffs' claims began to run when Plaintiffs had "knowledge of sufficient facts to constitute a cause of action." Doc. 67 (Mem. Opin. & Ord.) at 30. In order to preclude summary judgment, Plaintiffs must show that they lacked knowledge of these facts, and that they did not fail to exercise due diligence in trying to uncover these facts. Plaintiffs—in particular, Plaintiff Anderson—maintain that they first learned they may have an action against Energen for underpayment of his royalty in July 2011, which would render their claims timely for the complaint that was initially filed on February 22, 2012. Doc. 120 at 2. Plaintiffs claim that the basis for their allegations of underpayment was not discovered until that time because of fraudulent concealment by oil companies. Defendant contends that Plaintiffs knew of the facts underlying potential claims prior to 2000.

#### 1. Discovery responses

Defendant contends that Plaintiffs' discovery responses indicate that they do *not* contend that they lack knowledge about the monthly prices incurred by Energen to calculate royalties or about the deductions of post-production expenses from royalties, such as expenses for gathering or processing the gas. Doc. 117-2 at 2. However, the Court agrees with Plaintiffs that Defendant's statement of fact could be viewed as a mischaracterization of Plaintiffs' response, which was that ". . . none of the fuel gas used in gathering or plant processing are [sic] shown on

the plaintiffs' or class members' check stubs." *Id.* A reasonable interpretation of Plaintiffs' response is that, based on the lack of information (or inaccuracy of that information), Plaintiffs could not be expected to gain any knowledge about misconduct by Energen or to become sufficiently suspicious to make further inquiries. The Court might also add that Defendant's request for evidence of a *lack* of knowledge is like asking for someone to prove a negative. A fact finder could conclude that, based on Plaintiffs' attestations and circumstantial evidence such as the information included (or not included) on the check stubs, Plaintiffs did not fail to exercise due diligence in contacting Energen to make inquiries because they had insufficient information to cause them to become suspicious before July 2011.

       2.    <u>Check Stubs</u>

Defendant contends that Plaintiffs had ample opportunity to discover their claims based on the information contained in the check stubs for the royalty payments which were sent to Plaintiffs, pointing to the listing for deductions for "FT" (Field Transportation), "NGPT" (Natural Gas Processor Tax), "MKTEX" (Marketing Expense), and "PROC" (Liquids Processing). Defendant claims that these deductions form the basis for Plaintiffs' claims. Defendant also notes that the check stubs include a telephone number in the top left-hand corner for payment inquiries, but that Plaintiffs never called to make any inquiries.

It is undisputed that Defendant's only communication with Plaintiffs was through check stubs and division orders. Plaintiffs contend that the check stubs omitted certain information which was intentionally withheld by Energen, referring to the deposition statements of Jacqueline Cobb one of Energen's own corporate representatives. Ms. Cobb testified that it was a "management decision" not to disclose the amounts of gas used by Energen or third parties for fuel on the check stubs. Doc. 120-4 at 26:82-84 (Cobb Deposition). Energen also did not reveal

the volume of liquids from Plaintiffs' wells that were retained by processors or the volumes used for plant fuel. Energen decided to omit this information because including it would make the check stubs more expensive to produce. *Id.,* at 83-83. As a result, Plaintiffs could not tell whether gas was produced or used by Energen for gathering fuel and they did not have full knowledge of the types sand volumes of hydrocarbons being produced. Plaintiffs contend that omitting such information was a misrepresentation by Energen, and a reasonable fact finder could agree with this characterization. *See* Pltffs' Facts No. 3, 4, 8, 13 and 14 (why Plaintiffs found it difficult to discern information on check stubs). Energen would have had superior knowledge of the volumes, values, prices and types of hydrocarbons produced, used or sold from the oil wells at issue here, but this information was not passed along to Plaintiffs. To complicate matters, Plaintiffs could not independently confirm or corroborate any of the information on the check stubs because they had no access to the wells or equipment (having leased that exclusive right to Energen).

Plaintiffs have shown that a considerable amount of information was intentionally omitted from the check stubs. Had this information been made available to Plaintiffs, they might have been inclined to contact Energen with questions about their royalty payments.
Defendant's only response to the omissions on the check stub is to explain that Energen was not required to furnish this information. Even assuming this is so, Defendant's explanation does not rebut Plaintiffs' additional facts on this issue.

The division orders sent to Plaintiffs also did not provide Plaintiffs with information that might have triggered further inquiry. One such division order, *see* Doc. 140-1, states that "payment shall not be made on "gas in operations *under the terms of the lease* or for fuel in compressing, dehydrating, treating or processing gas hereunder. . . ." Doc. 140, Ex. A (emphasis

added).[7]  One of the issues in this case is whether Defendant was complying with the terms of the lease in its free use of gas, and whether Energen was entitled to such use off the leased property.  The division order would provide no information at all to a lessor which would make the lessor suspect that Energen was *not* complying with the terms of the lease because the division order simply *refers* to the "terms of the lease."   Thus, Energen cannot rely on either the check stubs or the division orders as a basis that would have provide Plaintiffs with a reason to "discover" any of their underlying claims.

### 3. Mr. Anderson's Deposition Statements

The foundation of Defendant's argument rests on Mr. Anderson's conversation with his mother, Georgia Anderson, some time prior to 2000.  It is undisputed that these conversations did take place and that the subject touched on the use of gas by oil producers without royalty payments prior to 2000.  Plaintiffs insist that those conversations concerned the "free use clause" which involves gas used on the lease premises and that the topic of those conversations cannot form part of the facts underlying Plaintiffs' claims in this lawsuit because legitimate "on lease" use of gas is not the subject of the captioned litigation.  Contrary to Plaintiffs' position, however, there may be some basis for considering the "free use clause" as part of Plaintiffs' claims, contrary to Plaintiffs' position, since in this lawsuit Plaintiffs are alleging that Energen was not complying with the terms of the lease under the "free use" provision.[8]  At the same time, Ms.

---

[7] The Court can only trust that the excerpt from the Division Order reads as Defendant says it does, since the print on Exhibit A in the reply is virtually unreadable due to the microscopic size of the print.  Doc. 117, Ex. A. Surely, the original document the parties signed had to contain a larger font and was printed on legal size paper, since the copied document does not even fill the entire page.  It seems pointless to submit exhibits to the Court that cannot read—even with reading glasses.  *See also* Doc. 97-1 (oil and gas lease with print that is slightly larger, but still requiring magnification several times over through a copier before it approached a point where it was readable).

[8]  Plaintiffs contend that Energen was exempt from royalty payments only for oil, gas or water that was used *on* the leased premises for Energen's operations, See Doc. 137 at 9 (Pltffs' Resp. to Deft's Fact No. 14) and at 15 (Pltffs' Fact No. 2.  In addition, Plaintiffs' response refers to the issue of underpayment or non-payment for Defendant's free use of gas off the lease premises.  *See* Doc. 120 at 12-13, Pltffs' Facts 9-11.

Anderson could have been voicing her concern to her son over her general concern about an oil producers' free use of oil under a "free use" clause, and with which she generally disagreed. This would be distinct from allegations of a producer's free use of oil or gas which is expressly prohibited under the express terms of a lease and which is a breach of that lease. This interpretation would support Plaintiffs' position. The Court has read the excerpts provided in the sealed exhibit containing Mr. Anderson's deposition statements, and cannot determine a definitive interpretation of the conversation Mr. Anderson had with his mother.

     Historically, New Mexico courts have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn. *Genesee Cnty. Employees'Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1227 (D.N.M. 2011) (Browning, J) (quoting *Williams v. Stewart,* 137 N.M. 420, 424 (Ct.App. 2005)). Conflicting inferences can be drawn from Mr. Anderson's deposition statements regarding the conversations he had with his mother about the free use of oil by oil producers, and thus the matter should be relegated to a jury to decide which inference is accurate.

     Plaintiffs also point out that Energen never produced natural gas at the time from *any* Anderson lease when the minerals were owned by Mr. Anderson's mother, and that Georgia Anderson died before Energen started producing natural gas from *any* Anderson lease. Taking Plaintiffs' representations of fact as true for now, a reasonable juror could find that the subject of discussion between Mr. Anderson and his mother did not touch on any of the facts underlying Plaintiffs' claims in this lawsuit, and so would not be sufficient to alert Plaintiffs to any potential claims they might have had against Defendant. Accordingly, the Court does not find that the conversation between Mr. Anderson and his mother either provided or should have provided Mr. Anderson (and therefore the Anderson Plaintiffs) with enough information to reasonably know

they had underpayment claims against Energen or to require Plaintiffs to investigate further at that point.

B.      Fraudulent Concealment

Plaintiffs rely on the doctrine of fraudulent concealment as the basis for their lack of knowledge of any facts underlying their claims. The Court has already determined that material factual disputes exist on whether Plaintiffs lacked knowledge of the facts underlying their claims prior to July 2011. The Court also finds that Plaintiffs have presented sufficient facts to preclude summary judgment on the issue of fraudulent concealment. The information and detail presented to Plaintiffs on the check stubs and division orders were not sufficient to make Plaintiffs aware of any facts underlying potential underpayment claims. Plaintiffs have presented facts which could be viewed as evidence of misrepresentation by Energen because it intentionally omitted certain information from the check stubs which could be important to a lessor trying to calculate the accuracy of royalty payments. This evidence is enough to preclude summary judgment because the Court cannot find as a matter of law that Plaintiffs should have discovered the basis for their claims prior to July 2011, and certainly not at the time Mr. Anderson had discussions with his mother prior to 2000. A reasonable juror could find that without more information on the check stubs, Plaintiffs would have no reason to investigate or suspect the information on their check detail was false and incomplete, and that large volumes of gas were being used by Energen or its contracting parties and not reported on the check stub detail.

Energen claims that it was available and willing to answer any questions Plaintiffs might have had if Plaintiffs had contacted them, and charges Plaintiffs with a failure to exercise due diligence in discovering their claims. Defendant claims that other royalty owners on occasion have contacted Energen with "questions or concerns about the calculation of their royalty

payments" and relying on deposition statements by Kimberly Ming, Energen's corporate representative.  Doc. 117, Deft's Fact No. 17.  However, Plaintiffs point out that this claim is based on only a partial excerpt of Ms. Ming's testimony.  In other portions of her deposition, Ms. Ming identified only two oil companies, Catamount and Blackstone (rather than individual owners) who "contacted" Energen—and neither Catamount nor Blackstone are named plaintiffs in this action.

For purposes of the statute of limitations, summary judgment is proper where the undisputed facts establish that a plaintiff's claims are time-barred). *Sender v. Mann,* 423 F. Supp. 2d 1155, 1166-67 (D. Colo. 2006).  However, this is not such a case.  *Id.* (rejecting fraudulent concealment argument where plaintiff's knowledge of the claim was undisputed and such claim was barred).  Defendant argues that Plaintiffs failed to exercise any due diligence to discover their claims and cites to several cases to support that argument.  However, those cases are inapposite because in those cases, it was clear that the plaintiffs knew or should have known the facts underlying their claims during the limitations period.  *See, e.g., Martinez v. Showa Denko, K.K.,* 964 P.2d 176, 182 (N.M.App. 1998) (discovery rule did not toll statute of limitations where plaintiff read article about same symptoms she was having and should have seen a connection between those symptoms and the medications she was taking).  The existence of a factual dispute on the question of fraudulent concealment also constitutes grounds for tolling the applicable statutes of limitations for Plaintiffs, and therefore, Defendants are not entitled to summary judgment on this issue.  *Ballen v. Prudential Bache Sec. Inc.,* 23 F.3d 335, 337 (10th Cir. 1994) (principles of equitable estoppel recognize the doctrine of fraudulent concealment as a means of tolling a statute of limitations).

## CONCLUSION

In sum, the Court finds and concludes that a fact finder could conclude that Plaintiffs did not have, and were not given enough information on the check stubs or division orders provided by Energen from which Plaintiffs might have suspected any misconduct on the part of Energen. Plaintiffs have also presented evidence that creates a factual dispute on the issue on whether Energen intentionally omitted or misrepresented information provided on the check stubs, and on whether Energen fraudulently concealed such information. An existing dispute of fact on the fraudulent concealment question also precludes summary judgment on whether Plaintiffs failed to use due diligence to discover the factual basis underlying their claims.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' Claims that are Barred by the Statute of Limitations **(Doc. 116)** is hereby DENIED for reasons described in the above Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE