## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

THE ANDERSON LIVING TRUST f/k/a
THE JAMES H. ANDERSON LIVING
TRUST; THE PRITCHETT LIVING TRUST;
J. RICHIE FIELDS; THE TATUM
LIVING TRUST; and NEELY-ROBERTSON
REVOCABLE FAMILY TRUST,

        Plaintiffs,

        v.                       No. 13-CV-00909 WJ/CG

ENERGEN RESOURCES CORPORATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON PLAINTIFFS' CLAIMS UNDER NEW MEXICO LAW

THIS MATTER comes before the Court upon Defendant's Motion for Summary

Judgment on Plaintiffs' Claims Under New Mexico law, filed April 13, 2015 **(Doc. 96)**.  The

Court has reviewed and considered the parties' written submissions, the oral arguments of their

counsel and the applicable law.  For the reasons stated herein, Defendant's motion is

GRANTED.

## BACKGROUND

The controversy in this case involves issues relating to the proper payment of royalty

income to Plaintiffs, and all others similarly situated, from the production of oil, natural gas and

associated hydrocarbons (including drip condensate) from natural gas wells on lands subject to

various oil and gas leases in northern New Mexico and southern Colorado all within the geologic

formation known as the San Juan Basin. The New Mexico Plaintiffs (Anderson Living Trust,

Pritchett Living Trust and Neely-Robertson Revocable Family Trust, hereinafter, "Anderson-Pritchett" and "Neely-Robertson" "Trust" or "lease") own interests only in wells located in New Mexico.[1]  Plaintiff Tatum Living Trust ("Tatum Trust") owns interests in wells located in Colorado.  In the motions pending before the Court Defendant seeks summary judgment on claims asserted by the New Mexico Plaintiffs in the Motion for Summary Judgment Under New Mexico law (Doc. 96); and partial summary judgment on claims asserted by the Tatum Trust (Doc. 99).  This Memorandum Opinion and Order addresses only Plaintiffs' claims asserted under New Mexico law.

Defendant Energen Resources Corporation ("Defendant" or "Energen") is the owner and operator of the natural gas wells on the oil and gas leases at issue in this lawsuit.  According to the First Amended Complaint, Defendant produces and sells the production from its wells pursuant to the terms of oil and gas leases and other royalty instruments. Plaintiffs allege that they own royalty and overriding royalty interests under some of these instruments. They also allege that Energen is required to pay monthly royalties to them, and to other owners on the production and sale of oil and natural gas, consistent with the terms of the royalty instruments.

This case is essentially a re-filing of a previous case that was removed to federal court from the 1st Judicial District Court, County of Rio Arriba, State of New Mexico, in April 2012 based on diversity jurisdiction.  In that case, United States District Court Judge Judith C. Herrera dismissed Plaintiffs' claims without prejudice.  *See Anderson Living Trust v. Energen*, Civil No. 12-00352 JCH-KBM, Doc. 29 ("previous lawsuit").  This Court has dismissed several claims asserted by the New Mexico Plaintiffs pursuant to Fed.R.Civ. P. 12(b)(6).  Doc. 67 (Court's

---

[1]  It is undisputed that Plaintiffs Anderson Living Trust and Pritchett Living Trust own a royalty interest under a single lease covering minerals in San Juan County, New Mexico.  Doc. 97, Statememt of Undisp. Fact No. 2.

Mem. Opin. & Order) at 35-37.  Defendant now seeks summary judgment on the remaining

claims.  The Second Amended Complaint  (Doc. 70) asserts the following claims:

First Cause of Action: Failure to Pay Royalty on values received by Energen, on volumes of hydrocarbons, drip condensate and lawful expenses;

Second Cause of Action: Breach of Duty of Good Faith and Fair Dealing (Dismissed as to Colorado and Re-Pled);[2]

Fourth Cause of Action (Breach of Duty to Market Hydrocarbons) – Colorado;

Fifth Cause of Action: Violation of the New Mexico Oil and Gas Proceeds Payment Act and Interest Due;

Sixth Cause of Action: Bad Faith Breach of Contract;

Seventh Cause of Action: Declaratory Relief.

Defendant has grouped Plaintiffs' claims asserted in the Second Amended Complaint

("SAC") into five categories of alleged underpayment or late payment:

(a) deducting unreasonable costs from royalty payments (post-production costs);
(b) failure to pay royalties on gas used as fuel;
(c) failure to pay royalties on "drip condensate";
(d) late payment of royalties under the New Mexico Proceeds Payment Act, NMSA 1978, § 70-10-1, et seq.

Plaintiffs object to Defendant's characterization of their claims, pointing out that the SAC

also asserts claims for breach of contract, including the implied covenant to market, and that

different types of damages are alleges as well.[3]  The Court finds that these distinctions are

---

[2] The Third Cause of Action, duty to market hydrocarbons, is reiterated in the Second Amended Complaint although it is noted that the claim has been dismissed.  See Doc. 67 at 36.

[3]  The other reason the Court elects to follow Defendant's grouping of issues is that it is much better organized than what Plaintiffs offer.  In contrast to Defendant's careful organization of the issues underlying Plaintiffs' claims in the motion, Plaintiffs' response lacked an organization which would have made it fairly easy for the Court to find the responsive sections corresponding to Defendant's arguments.   For example, Plaintiff's responsive argument to Section IV is located in Plaintiffs' brief in Section I; the responsive argument to Defendant's Section VI is in Plaintiffs' Section III.   There is an omnibus-type response in Plaintiffs' Section I which includes occasional references to issues raised in Defendant's Sections III and IV and which relates to fuel use and drip condensate.  The Court assumes that Plaintiffs' Section I serves as the response for those two issues, but the section does not make clear what parts are responsive to those two issues.  In addition, the Court has pored over Plaintiffs' response, but has not found any appreciable response to Defendants' arguments in Sections I and V relating to post-production

immaterial because in the end, all of Plaintiffs claims can fairly be described as allegations of royalty underpayment even though the manner of the alleged underpayments may differ.  At the January 27, 2016 hearing on Defendant's summary judgment motion, the Court was advised that Plaintiffs have dismissed their claim for underpricing and so this claim will not be addressed. Additionally, the Court will not address the issue of whether Energen must pay royalties in the same manner used to pay royalties to the United States Government under federal oil and gas leases.  This issue involves a question of standing, and would be more appropriately addressed in the context of Plaintiffs' pending motion to certify class (Doc. 152).[4]

## I.      Post-Production Costs

Post-production costs are the expenses associated with processing the gas into a merchantable product, such as gathering, compressing, dehydrating and treating the gas. *ConocoPhillips Co. v. Lyons,* 299 P.3d 844, 849-50 (N.M. 2013) (*Lyons*); *Creson v. Amoco Prod. Co.,* 129 N.M. 529, 533 (2000) (post-production costs are those associated with transporting  the gas, expenses of compressing gas so that it can be delivered into a pipeline and other "costs incurred in adding value to the well-head product").  Energen incurs costs for post-production services performed by third parties in order to gather, compress, and process the gas produced from wells situated on lands covered by oil and gas leases in which the New Mexico Plaintiffs' own royalty interests.  With respect to the wells owned by Anderson and Pritchett Trusts, Enterprise Fields Services, LLC ("Enterprise") is the third party that gathers and

---

costs and Plaintiffs' underpricing claims.  While there is no rule governing the arrangement of arguments presented to the Court, it would seem to make sense to present those arguments in the clearest way possible, given the rather specialized and complicated nature of this oil and gas case.

[4] The Court's granting summary judgment to Defendant on Plaintiffs' claims in the instant motion will likely render moot Plaintiffs' class action certification motion for the royalty owners in the New Mexico wells involved in this litigation.

processes the gas under contract with Energen.  Williams Four Corners, LLC ("WFC") gathers and processes the gas for Energen with respect to the Neely-Robertson Trust.

Energen deducts expenses which it incurs for post-production services performed by these third parties (hereinafter, "third-party processors") in order to gather, compress, and process the gas produced from the New Mexico Plaintiffs' wells.  Plaintiffs acknowledge that Energen does incur costs for post-production expenses as part of the gathering and processing. They do not challenge the reasonableness of these monetary deductions, or argue that these costs are excessive or were not actually incurred by Energen.  Plaintiffs object only to those costs being deducted from their royalty payments.   As Defendant's counsel noted at the January 27th hearing, Plaintiffs' sole challenge to post-production costs is to the deduction of the cost of the New Mexico natural gas processors tax, which is a "privilege tax" collected from "processors" for the privilege of operating a natural gas processing plant in New Mexico.   NMSA 1978, §7-33-4.  Plaintiffs also object to what they describe as an "in-kind" deduction  or compensation to the third-party processors for gathering and processing services by allowing them to use as fuel a portion of the gas produced from the New Mexico wells involved in this litigation.

    A.    <u>How Royalties Are Paid</u>

The New Mexico Plaintiffs have royalty agreements (or overriding royalty agreements) that provide for the calculation of royalties. The Anderson-Pritchett lease provides for royalties on the "market value [of the gas] at the well.   Doc. 97-1, ¶ 4. The comparable provision in the Neely-Robertson Revocable Trust provides for payment on the "prevailing field *market* price." Doc. 97-2, ¶ 7 (emphasis added).  As Defendant observes, there are no functional differences between the two leases for purposes of calculating royalties because both provisions are based on

the market value or price of the gas at the well.  This lease language means that before royalties are paid, the market value for gas at the well must be determined.

Energen explains that royalties are paid to Plaintiffs by taking the downstream sale prices for the monthly sale of gas at the tailgate of the third party's processing plant and then reducing that price by Plaintiffs' proportionate share of the gathering and processing expenses incurred under Energen's respective contracts with third-party processors, as well as considering the relevant taxes.[5]  Energen then applies that price to the volumes produced from Plaintiffs' wells, reduced by any liquids retained by the processing plant and any fuel used either on the lease or to gather and process the gas.

Plaintiffs claim that they should be paid royalties based on the volume of the gas at the wellhead, arguing that gas volume is greatly reduced after processing and after reductions that occur from use of plant fuel.  In other words, Plaintiffs want to be paid based on the particular number of molecules of gas coming out of the wellhead.  However, as Defendant notes, there is no way to pay Plaintiffs an actual "price" for gas from an individual well because the tracing of individual molecules of gas "is physically impossible from the moment the gas enters" the gathering system.  *In re Assessment Against Mo. Gas energy ("MGE"),* 234 P.3d 938, 944 (Okla. 2009); *see also W.W. McDonald Land Co. v. EQT Production Co.,* 983  F.Supp.2d 790, 803 (S.D.W.Va.,2013) (finding that "lessees have no general duty to pay for lost volumes" (amounts of gas lost in process from wellhead to market) and that plaintiffs wanted "to have their cake and eat it too" by seeking royalty based on unit value of gas at market based on volume at the wellhead, "where gas is considerably less valuable.").

_____

[5] The term "downstream" is used to describe operations performed after those at a designated point of reference. It is often used to describe post-production process which are deemed downstream operations.  On a gas pipeline, such as the situation here, downstream denotes a location further removed from the source of supply.. William & Meyers, OIL AND GAS LAW, vol. 8, annot. at 279.

Plaintiffs offer no argument for why they are entitled to royalty payments based strictly upon the share of gas produced from their wells, nor would any argument be supported by the royalty provisions in the lease language in the Anderson-Pritchett Trust and the Neely-Robertson Trust, both of which require a determination of the "market" value.  Here, Plaintiffs are not seeking royalties that are based on the value of gas *sold* at the well, since there is little value to the gas at that point.  Rather, Plaintiffs want royalties based solely on the volumes of gas produced at the well without having to pay a share for any of the value-enhancing processing measures which are covered by Energen.  Plaintiffs offer no facts showing that the gas produced from the Anderson-Pritchett and Neely-Robertson have a value and could be sold at the wells, prior to processing and marketing, and this position is untenable under relevant New Mexico law.  *See Creson,* 129 N.M. at 534 (distinguishing between gas sold in the form in which it emerges from the well, and gas to which value is added by transportation away from the well or by processing after the gas is produced); *Bice v Petro-Hunt, L.L.C.,* 768 N.W.2d 496 (2009) ("because the gas has no discernible market value at the well, commercially reasonable processing costs can be deducted before royalties are calculated").  Therefore, the Court finds that the language in both the Anderson-Pritchett and Neely-Robertson leases ("market value" and "prevailing field market price") clearly intends for royalty payments to be based on the downstream value of the gas at its market value.

      B.      <u>Deductions for Post-Production Costs</u>

Plaintiffs also contend that post-production costs should not be deducted from royalty payments, although the only specific challenge they make is to the deduction for the natural gas processing tax.  Plaintiffs claim that their argument is based on the lease language, but their reading ignores the operable language calling for payments to be based on "market value."  This

language in both the Anderson-Pritchett and Neely-Robertson Trusts entitles Energen to make deductions for post- production expenses.

In *Abraham v. BP America Production Co*., the Tenth Circuit held that a market-value royalty owner is entitled to be paid based on the market value of unprocessed gas at the well, or an acceptable estimation of same, through a "netback calculation." 685 F.3d 1196, 1203 (10th Cir. 2012). The "netback" method of calculation is a method for calculating the market value of gas at the lease. Under this method, costs of transportation, processing, or manufacturing are deducted from the proceeds received for the gas. The value of gas using the "netback" or "work-back" methodology is determined by taking the downstream sales price and deducting from it the costs incurred by the working interest owner to move the gas from the point of valuation to the actual point of sale. William & Meyers, OIL AND GAS LAW, vol. 8, annot. at 643; *Elliott Ind. Ltd Partnership v. BP America Prod. Co*., 407 F.3d 1091, 1100 n.2 (10th Cir. 2005). Additionally, in *Creson*, the New Mexico Court of Appeals determined that the computations of plaintiffs' royalties for gas sold downstream were subject to deductions for post-production, value-enhancing costs. 129 N.M. at 534-35. When the well is specified as the point of valuation, it is generally understood that the lessee is "…entitled to deduct all costs that are incurred subsequent to production, including those necessary to transport the gas to a downstream market and those costs, such as dehydrating, treating, and processing the gas, that are either necessary to make the gas saleable in that market or that increase the value of the gas." *Lyons*, 299 P.3d at 850-51; *see also Piney Woods Country Life School v. Shell Oil Co.,* 726 F.2d 225, 228 (5th Cir. 1984) (rejecting royalty owners' argument that they could not be charged for expenses to make gas marketable where royalty clause provided for payment based on value "at the well") (cited in *Creson,* 129 N.M. at 534).

The Court previously mentioned that Plaintiffs do not seem to be challenging the reasonableness of post-production costs, or the fact that Energen actually incurred these costs. Plaintiffs simply do not want to pay these costs.  Behind Plaintiffs' objections to these deductions is a disagreement with the Court's previous ruling on the "marketable condition rule" which favored Defendant.  In a previous pleading, Plaintiffs had argued that Defendant must bear all processing costs as part of its implied duty to market.  The Court disagreed with Plaintiffs and concluded that New Mexico law did not support a finding that the producer must bear all costs necessary to render the gas marketable and thus, this particular interpretation of an implied duty to market is not recognized under New Mexico law.  Doc. 67 at 14-17.  *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.,* 407 F.3d  1091, 1108 (10th Cir. 2005); *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690 (1993) (rejecting the argument that the producer must bear all costs necessary to render the gas "marketable").  At the January 27th hearing on the instant motion, Plaintiffs' counsel sought to have the Court revisit this issue.  The Court will not reconsider what it has already exhaustively considered.  The record in this case is well developed on this issue as well as the other litigated issues and Plaintiffs are welcome to seek appellate review of the Court's rulings at the appropriate time.

The Court finds that in accordance with New Mexico law, Energen is entitled to deduct post-production costs for its services in getting the gas into a marketable condition.

1.      *Natural Gas Processing Tax*

As part of compensation to the third-party processor and pursuant to the agreement between those parties, Energen reimburses the processors for all taxes, including the New Mexico natural gas processors tax.   Energen treats this tax like any other post-production cost in that it is deducted from the royalty payments.   Plaintiffs claim that they should not have to pay

for this tax because the relevant statute intended to make the processor liable for the tax instead of the interest owner.

Defendant contends that the statute did not intend to insulate royalty interest owners from having to ultimately pay this privilege tax. It changed only the identity of the taxpayer and clarified how the state would go about collecting the tax. In the context of the oil and gas industry, it is much more efficient for the state to collect the tax from a handful of processors than from numerous royalty and/or working interest owners. Instead of keeping track of all these owners and their respective ownership interests, the state need only look to the processor. *Amoco Production Co. v. New Mexico Taxation and Revenue Dept.*, 134 N.M. 162, 166 N.M.App., 2003) (purpose of the tax is to tax the processing of gas). There is no language in NMSA §7-33-4 which suggests that the privilege tax cannot be shared with the royalty owner in the form of a royalty deduction in order to cover reimbursement to the processor who had to pay the tax. *Blackwood & Nichols Co. v. New Mexico Taxation and Revenue Dept.*, 125 N.M. 576 (N.M.App.,1998) (fact that legislature substantially rewrote provisions of natural gas processors tax statute, and in so doing deleted requirement subjecting all "interest owners" to such tax, indicated legislative intent to modify the basis upon which the tax was levied, rather than to clarify existing law). As a result, Plaintiffs cannot successfully claim that Energen's deduction of the privilege tax is the imposition of a tax which they are not required to pay.

The next logical question is whether Energen is entitled to deduct this tax as a post-production cost. Energen views the tax as a cost of operation because it must cover the cost of the New Mexico processor's tax for the third-party processor. Plaintiffs are receiving a benefit as a result of the processing, which greatly enhances the value of the gas produced from their wells, and thus Energen's reimbursement of the tax to the processor is a post-production cost.

The analysis returns to the lease language, which the Court has already determined allows for the deduction of post-production costs under New Mexico law.  Doc. 97-1 at 1.  As such, Energen's reimbursement of the tax paid by third-party processor can be passed along to the royalty interest owner in the form of deductions from royalty payments.[6]  As Defendant notes, Plaintiffs do not challenge either the reality of, or the reasonableness of, post-production costs.  They simply object to these costs being passed on to them, but it is impossible to escape these deductions under New Mexico law for the reason that New Mexico law does not recognize a duty to market on the part of the producer.  *See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690 (1993) (cited in *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.,* 407 F.3d 1091 (10th Cir. 2005).

2.      *In-Kind Use of Fuel as Post-Production Cost*

The only other challenge Plaintiffs raise to the post-production costs is the use of free field and plant fuel.[7]  Energen allows the third-party processors to keep the fuel used in downstream processing as an in-kind cost or compensation in the form of free field and plant fuel.  The third-party processors use field fuel to run compressors in the field to compress the gas in order to move it downstream, or plant fuel, which is fuel that is used in the processing plant and is consumed by the plant in order to process the gas and extract liquids or to otherwise improve the gas.

Plaintiffs maintain that they should be paid royalties on the gas used by the processors in-kind for its production services, but offer no substantive confutation to Defendant's argument that free use of gas as field or plant fuel is partial compensation for those services.  It is

---

[6]  As discussed earlier, there is no functional difference between the leases in the Anderson-Pritchett Trust and the Neely-Robertson Trust: Energen is entitled to take the downstream price at the processing plant, less the cost to process the gas.

[7]  Plaintiffs also take the position that the Anderson-Pritchett lease language does not permit Energen to free use of field and plant gas for fuel, which the Court addresses further in the discussion.  The question being considered here is whether Defendant's free use of gas is considered a post-production cost.

undisputed that Energen does not sell this gas, that it does not market this gas, and that it receives no proceeds on this gas; yet Plaintiffs essentially claim a right to payment on anything that is produced, regardless of how it is used. Again, Plaintiffs rely on the lease language, but that language clearly entitles them only to royalties on the "market value" or "market price" of the gas. Doc. 97-1, ¶ 4; Doc. 97-2, ¶ 7. Because the field and plant gas used in the processing was not sold and Energen received no proceeds from that gas, it cannot be considered gas that was "marketed," and so no royalties are owed.

Plaintiffs also take issue with the fact that the third-party processors are Energen's affiliates and are not parties to the lease contract, and claim that the lease language does not provide this in-kind form of compensation to the third-party processor. Defendant views the processors' use of free gas as fuel as an in-kind cost that is implied within the royalty provisions because it contemplates the fact that gas would be marketed downstream. Here again, Plaintiffs overlook the provisions in both leases which require payment of royalties for gas that is "marketed"—which excludes gas used in processing the gas and for which Energen receives no benefit. *See Montoya v. Villa Linda Mall, Ltd*., 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) (absent a showing of ambiguity, a court is required to interpret and enforce the contract according to the language and terms contained therein). At the same time, Plaintiffs receive the benefit of enhanced value to the gas product, which is made possible by expenses incurred by Energen in their agreements with third-party processors. Based on the unambiguous language in both the Anderson-Pritchett and Neely-Robertson leases, Defendant may treat gas used as field and plant fuel as an in-kind compensation to third-party processors for post-production costs. Because Plaintiffs offer no material fact suggesting that the lease language does not envision doing so, Defendant is entitled to summary judgment on the issue of post-production costs.

II.     **Free Use Provision: Anderson-Pritchett Lease**

Plaintiffs claim that Energen has failed to pay royalties on gas used as fuel in that Energen has failed to compensate them for certain volumes of natural gas used or consumed in the field by Energen and not reported.   Defendant characterizes this claim as a challenge by Plaintiffs to Energen's right to "free use" of produced gas for its operations.  A portion of the gas produced from the New Mexico Plaintiffs' wells is used as fuel to operate Energen's equipment near the well itself, and also to operate field compressor stations and equipment in the processing plant, necessary to gather and process the gas.

A.      Interpreting the "Free Use" Clause

 Under New Mexico law, a "free use" clause is an express provision in most oil and gas leases "which governs the right of a lessee to use products derived from the leased premises in the operation of said lease" without any royalty obligations. *ConocoPhillips Co. v. Lyons*, 299 P. 3d 844, 855 (NM., 2012).  The Anderson-Pritchett lease contains such a clause and provides that:

> The lessee shall have the right to use free of cost, gas, oil, and water found **on said land for its operations thereon**, except water from the wells of the lessor.

Doc. 97-1, Ex. A, ¶ 8 (emphasis added).   Plaintiffs acknowledge that the language in the Anderson-Pritchett lease contains a "free use" provision, but contend that the provision restricts use of field and plant gas to use which occurs on the leased premises, and does not include use of gas as fuel to third-party processors because the gathering system and processing plants are not located within the physical boundaries of the Anderson-Pritchett lease.   Defendant argues that free use of gas as fuel is an "in-kind" cost of gathering and processing gas and that it is entitled to free use of gas for fuel as long as the gas is used in furtherance of lease operations.

The issue here is the meaning of the language in the free use provision in ¶ 8.  Defendant again relies on *ConocoPhillips Co. v. Lyons,* 299 P.3d 844, 860 (N.M. 2013).  In *Lyons,* the New

Mexico Supreme Court affirmed the state district court's holding that the oil producers (the lessees) were permitted to net the costs associated with placing the gas in a marketable condition. The *Lyons* provision granted the lessees in that case:

> any and all rights and privileges necessary, incident to or convenient for the economical operation of said land, for oil and gas, with [the] right for such purposes to the free use of oil, gas casing-head gas, or water **from** said lands...." (Emphasis added). These rights were granted to Lessee "for the sole and only purpose of exploration, development and production of oil and gas **thereon** and **therefrom** with the right to own all oil and gas so produced and saved therefrom and not reserved as royalty by the lessor . . . .

299 P.3d at 856 (emphasis added).  Based on the lease language in *Lyons* allowing free use of gas "for the sole and only purpose of exploration, development and production of oil and gas thereon and therefrom," the court concluded that the lessees were entitled to the free use of oil and gas produced **from** the leased premises, "regardless of where the use occurred, so long as the oil and gas was being used to further the economical operations of said land."  *Lyons,* 299 P.3d at 856 (emphasis in original).  Plaintiffs urge the Court not to rely on *Lyons* because it involved state oil and gas leases and because the court stated that its opinion "should not be interpreted as affecting private oil and gas lease agreements."  *ConocoPhillips Co. v. Lyons,* 299 P.3d 844, 860 (N.M. 2013).  However, the only part of *Lyons* which the Court finds distinguishable was the court's consideration of the state's "duty to market" and its discussion of a marketable condition rule for state leases.  The focus here is the "free use" issue, and not the marketable condition rule. .  *Lyons'* analysis on the free use issue applies here because the court in that case looked to the free use clause language, which is similar to the free use clause language in the Anderson-Pritchett lease.

In *Lyons,* the New Mexico Supreme Court acknowledged that a lessee is not under a duty to pay royalty on gas used for the purpose of operating the lease premises and that the gas used

for that purpose should be excluded in the calculation of the lessor's royalty.  299 P.3d at 856

(citing 3A Summers, THE LAW OF OIL AND GAS, §33:7 at 153; §33:12 at 160).  However, the

court also noted that a lessee's right to use gas in the operations of the leased premises is not

without limits and is generally interpreted as being limited to the leased premises unless the

clause expressly states otherwise.  This requires a reading of the lease provisions to determine

the intent of the parties.  *See* Williams & Myers, OIL AND GAS LAW, §661.4 at 763 (providing

"parties are free to authorize the provision of free gas without geographic limitation if their intent

is expressed in the lease"), cited in *Lyons,* 299 P.3d at 856.

Plaintiffs view *Lyons* as inapplicable because the lease language in that case was not

identical to the Anderson-Pritchett language.  They contend that the phrase, "for its operations

thereon" in the Anderson-Pritchett lease expressly limits the use of free use gas to use that occurs

*on* the premises, and defines "operations" to getting the gas from ground to surface.  Thus,

Plaintiffs contend that Energen is required to pay royalties for any and all gas used off the lease

premises, even if the gas is used for purposes of gathering and processing.

The Court disagrees with Plaintiffs' insistence that the language between the two

provisions is dissimilar.  The *Lyons* language is not identical to the language in the Anderson-

Pritchett lease, but it appears to be a standard free use clause provision, and while it does not

contain the exact juxtaposition of certain words like "thereon" and "operations," its language is

still similar enough to *Lyons.*  In *Lyons,* the free use clause language expressly entitled the

lessees to free use of gas that was "necessary, incident to or convenient for the economical

**operation** of said land. . . .  limited to the "exploration, development and production of oil and

**thereon** and **therefrom** . . . ."  299 P.3d at 856.  Reading the provision for its plain meaning and

in putting it in more common parlance, the lessees could use free gas for the operation of the

15

"said land" (the lease premises), as long as the purpose was for the development "thereon and therefrom" the lease premises.  This language is not unlike the free use clause in the Anderson-Pritchett lease, which gives Energen as lessee the right to free gas "on said land for its operations thereon." Doc. 97-1, Ex. A, ¶ 8.   Thus, the interpretation of the free use clause in *Lyons* would apply to the Anderson-Pritchett lease as well.   In *Lyons,* the New Mexico Supreme Court concluded that the lessees were entitled to the "free use of oil and gas produced **from** the leased premises, regardless of where the use occurred, so long as the oil and gas was being used to further the economical operations of said land."  299 P.3d at 856 (emphasis original).   Similarly, Energen's free use of gas would be limited to gas that was produced **from** the lease premises, with no restriction on where the use occurred, as long as the purpose was to further the economical operations of the lands covered by the Anderson-Pritchett lease.

If there is any doubt that *Lyons*  applies to the Anderson-Pritchett lease, that doubt is dispelled because of the Supreme Court's reliance on a case from the North Dakota Supreme Court which involved lease language almost identical to the language in the Anderson-Pritchett lease and addressed the same issue that Plaintiffs raise here.   In *Bice v. Petro Hunt, LLC,* the free use clause provided that the lessees "shall have the right to use, free of cost, gas, oil and water produced on said land **for its operation thereon**." *Id.* 768 N.W. 2d 496, 502-03 (N.D. 2009) (cited in *Lyons,* 299 P.3d at 856) (emphasis added).   The *Bice* court found that the phrase "for its operations thereon" did not limit the lessee's use of gas to use that occurs on the lease premises. *Id.* at 503-04 (cited in *Lyons,* 299 P.3d at 856) ("the words 'thereon' or 'hereunder' modify the word 'operations' and are not limitations on where the physical consumption of the gas may occur").   As Defendant noted at the hearing, the *Bice* court's holding was premised on the expectation that the use of field and plant fuel was involved in the gathering and processing to

16

sell the gas downstream, and that the royalty owners were paid royalties on the product that was realized as a result of the gathering and processing.

Plaintiffs distinguish *Bice* because in that case, the gathering and processing operations actually did occur on the lease premises where the gas traveled only a short distance, where here the processing is off-lease.  However, neither the analysis nor the holding in *Bice* turned on the question of where the processing actually took place, and *Bice* expressly rejected this idea.  In fact, *Bice specifically* noted that allowing a lessee to use gas only on the lease premises could lead to an "absurd result."  768 N.W.2d at 504.  Such an interpretation would require lessors who have processing capabilities on the lease premises to "bear the entire burden of the 'free use' clause, notwithstanding benefits conferred on the other lessors."  *Id.*  Contrary to Plaintiffs' argument, *Bice* was mindful of the inequities imposed on lessors/owners when a free use clause considered the geographic location of the fuel use.  *Bice* further noted that royalty owners were receiving monetary benefit in the form of royalties from the processing that was being done off-premises.  Thus, the holding in *Bice* cannot be read to be limited only to situations where the fuel use happens to be conducted on the lease premises.  *Id.*

Plaintiffs' last effort to distinguish *Bice* is their argument that the term "operations" refers solely to getting the gas from ground to surface.  The Court has already addressed this argument in the discussion of post-production costs, *supra.*   The argument fares no better in the context of the free use clause because Plaintiffs overlook the fact that the Anderson-Pritchet and Neely-Robertson leases both contemplate downstream sale of gas.  The use of plant and field fuel to process the gas for marketing is consistent with and necessary for, the downstream sale of that gas because under the leases, the gas is not saleable at the wellhead. Therefore, Plaintiffs' definition of "operations" is not maintainable under either *Lyons* or *Bice.  See Bice,* 768 N.W.2d

at 502 (where royalty is based on market value of gas at the well and the gas has no market value at the well, market value "at the well" is determined by working back from where a market value exists, deducting post-production costs from plant tailgate proceeds).

   B.   The Free Use Clause in ¶ 8 is Consistent with the Royalty Provision in ¶ 4

   The Anderson-Pritchett lease contains provisions governing royalty payments.  The Anderson-Pritchett lease requires payment of royalty "on gas marketed from each well . . . ."  It further provides that the lessee pay a percentage of proceeds received from gas produced

> from any well and **used by lessee off the leased premises for any purpose** or used on the leased premises by the lessee for purposes other than the development and operation thereof. . . .

Doc. 97-1, ¶ 4 (emphasis added).   Plaintiffs argue that this language means that Energen must pay royalties on any gas used for the purpose of gathering and processing, since those functions are conducted off-premises.  This is essentially a reworking of Plaintiffs' argument related to the free use clause issue, where Plaintiffs contend that gas is free in operating the lease premises but only when gas is used *on* the lease premises.

   There is a problem with this argument.  First, both the free use clause in ¶ 8 and the royalty provision in ¶ 4 must be read together to make sense.  *See Bank of N.M. v. Sholer,* 102 N.M. 78, 79 (1984) ("a contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract").  Because the free use clause has been interpreted to allow free use of gas in the operation of the lease premises regardless of where the use occurs, the royalty provision in ¶4 cannot mean that royalty must be paid on all gas used in the operation of the lease premises unless it occurs on the lease premises.   Second, Plaintiffs' argument overlooks key language in ¶4 which states that royalty is owed on "gas *marketed* from each well where gas only is found."

18

Doc. 97-1 (emphasis added).  Thus, the royalty owner would be paid if the gas is *marketed* by

the lessee off the leased premises, at one-eighth of its *market* value at the well--not merely *used*

in the operation or development of the lease premises.  When one takes into account that gas

would be marketed downstream using the netback calculation and construes ¶ 4 to apply to gas

that is "marketed," royalties would not be owed on field and plant gas used as fuel to operate the

lease premises.   Under a simple analysis that looks to the plain language of the lease, the two

provisions are not inconsistent at all: the royalty provision in ¶4 does not conflict with the free

use clause in ¶8.  *See RTC v. Ocotillo W. Joint Venture*, 840 F. Supp. 1463, 1482 (D.N.M. 1993)

(Under well-established tenets of contract law, the terms of a writing are to be given their plain

meaning, and ambiguities are to be construed against the drafter); *Smith v. Tinley*, 100 N.M. 663,

665 (1984).   Any other interpretation, such as one concluding that Plaintiffs are owed royalties

on gas used as fuel (or on drip condensate, which will be discussed below), would lead to a result

giving royalty owners much more than proceeds on the gas that is marketed.   This windfall

result was not contemplated by the parties to the  Anderson-Pritchett lease.

## III.   Free Use Provision: Neely-Robertson Lease

The Neely-Robertson lease does not contain a "free use" clause.  However, based on

other language in the Neely-Robertson lease, the conclusion on the free use issue must be the

same as it is under the Anderson-Pritchett lease.

The Neely-Robertson royalty provision provides for payment on all oil and gas *produced*

from the lands" "at the prevailing field market price."  Doc. 97-2.  As mentioned earlier, in terms

of calculating a value on the royalty, this language is functionally identical to the royalty

provision in the Anderson-Pritchett lease, which is calculated based on the "market" value of the

gas.  The same "netback calculation" is used: royalties are paid on the downstream sales value

less the costs—both costs that are monetary and costs that are in-kind in the form of plant and field fuel—in order to arrive at the prevailing field market price.  Therefore, even though there is no free use clause in the Neely-Robertson lease, under New Mexico law regarding post-production costs, Energen would be entitled to the free use of gas going in the processing of the gas produced from the wells.  *See Lyons,* 299 P.3d at 856 ("field and plant fuel are post-production costs that Lessees remit to post-production service providers for the development and production of the leased premises; they are neither sold nor saved by Lessees and therefore are not subject to royalty payments").

Thus, despite the absence of a free use clause in the Neely-Robertson lease, Energen is not obligated to pay royalties on field and plant gas used as fuel, because under New Mexico law it is considered an in-kind post-production cost.   The Court finds the lease terms to be unambiguous, and because Plaintiffs raise no dispute of fact on this issue, Defendant is entitled to summary judgment on the free use issue pertaining to the Neely-Robertson lease.

## III.    Royalty on Drip Condensate

Plaintiffs also claim that Energen failed to pay them royalties on drip condensate, arguing that Defendant is not entitled to free use of drip condensate. Generally speaking, drip condensate is the term for heavy liquids that naturally fall out of the gas stream while the gas is inside the gathering system.  *See* Doc. 67 (Mem. Opin. & Order at 5) (quoting 64 F.R. 43506-01; 30 CFR §206.171); William & Myers, OIL AND GAS LAW, vol. 8 at 294 (describing drip condensate as that part of a gas stream that becomes a liquid during the transmission of the gas from a lease to a processing plant).  The gatherer will collect these heavy liquids out of the gathering system by running what is referred to as a "pig" that is pushed through the lines to push out the liquids.

Defendant explains that the drip condensate is not used by the processors.  The gatherers are entitled to retain the drip condensate as part of their compensation for their gathering and processing services pursuant to a contract between Energen and these third parties.  Plaintiffs contend that this drip condensate should be accounted for in the form of royalties because it is being used either by Energen or third parties, and that Plaintiffs never agreed to allowing Energen to give away drip condensate to these third parties.  Plaintiffs raised this same argument earlier when they claimed that royalties should be paid on the volume of gas produced at the well, even though the express lease language ties royalties to the market value of the gas which is not realized until it is processed downstream.  The Court rejects this argument for the same reason as it was rejected before: based on the terms agreed to by the parties under the lease terms.  Plaintiffs cannot have it both ways, where they are paid on the volume of gas brought up from the ground, but based on the enhanced value of the gas downstream, without sharing in any of the costs involved to increase its value for market.

Under the terms of the Anderson-Pritchett lease, royalties are paid on gas that is "marketed," and under the Neely-Robertson lease, royalties are paid on "oil and gas produced from the lands."  Doc. 97-1, ¶4; Doc. 97-2, ¶7.  Defendant argues that under these terms, drip condensate is neither "oil" nor "gas," and thus royalties do not have to be paid.  This statement appears to be justified under the relevant case law.  In *Barby v. Cabot Corp.*, the Tenth Circuit determined that liquefiable hydrocarbons were of "no consequence to the market value of the gas at the wellhead."   465 F.2d 11, 14 (10th Cir. 1972).  Energen correctly reads *Barby* to hold that if a royalty instrument provides for payment on "gas" (as both leases do here), then additional royalties are not owed on liquids extracted from the gas stream.  Energen also relies on a Fifth Circuit case which aligns with *Barby* and supports Defendant's contention that Plaintiffs are not

21

entitled to royalty on drip condensate.  In *Sowell v. Nat. Gas Pipeline of America*, the Fifth

Circuit held that plaintiffs were "not entitled to royalty based on component elements that

assume the form of natural gas liquids after the gas is metered."  789 F.2d 1151, 1157-58 (5th

Cir. 1986).

Defendant regards drip condensate as another form of post-production cost, one that is in-

kind rather than monetary and is given as compensation to third-party processors.  Energen does

not receive any proceeds on drip condensate, and would have to incur costs associated with

processing and refining before it had any real value.  However, drip condensate does have a

value as part of a post-production service Energen provides to third-party processors and

gatherers in allowing them to retain the drip condensate from the gas stream.  The Court agrees

with this assessment and finds that Defendant is entitled to treat drip condensate as an in-kind

reimbursement to these third parties.  *See Lyons,* 299 P.3d at 856 (affirming district court's

findings and holding that field and plant fuel are post-production costs on which lessees owed no

royalty).

Plaintiffs offer no case to rebut either *Barby* or *Sowell*, nor do they present any factual

disputes to counter the facts upon which Defendant makes its argument.  Therefore, Defendant is

entitled to summary judgment on this issue as well.

## IV.    Late Payment

Plaintiffs initially contended that Energen pays royalty late under the New Mexico

Proceeds Payment Act ("the Act"), NMSA 1978, §70-10-1, et seq. which requires that a

producer must pay royalty owners "not later than forty-five days after the end of the calendar

month within which payment is received by payor for production."  Energen contends that it

invoices gas purchasers in the month *following* the month the gas is purchased, receives payment

in that month and then distributes royalties in the month *after* receiving payment.  *See* Doc. 137-1 (bank statement excerpts).  Plaintiffs do not dispute this, yet still assert a late payment claim.

Plaintiffs have revamped this claim as one asserting that Energen "occasionally" pays royalties late, for which they present one pay stub as evidence.  Defendant concedes that one payment was outside the Act's timeframe because there was a title issue concerning this individual plaintiff under the terms of the Act.  Until that issue was resolved, Energen was entitled to suspend royalty payments, and it released the royalty income once the title issue was resolved.  Defendant contends that this suspension was permitted by the statute.

Plaintiffs' claim of "occasional" late payments is unfounded.  The Act requires timely royalty payments "to all persons **legally entitled** to such payments. . . ."  NMSA §70-10-3 (emphasis).  Thus, Defendant is correct that the suspension of payments to the individual New Mexico plaintiff was legally permitted under the statute.  Plaintiffs do not present any fact which contests the explanation given by Energen for the late payment, nor do they assert any other instances of late payments under the Act.  Therefore, Defendant is entitled to summary judgment on the late payment issue as well.

The Court's rulings on these issues dispose of all of Plaintiffs' claims asserted under New Mexico law.

## CONCLUSION

In sum, the Court finds and concludes that Defendant is entitled to summary judgment on all claims asserted by Plaintiffs under New Mexico law:

(1)     Energen is entitled to deduct the cost of the New Mexico natural gas processors tax as a monetary post-production cost; and is also entitled to allow third parties involved in

processing and gathering the gas to keep the fuel used in the downstream processing as an in-kind cost of compensation for the processing;

     (2)    Energen is not required to pay royalties on its use of field and plant gas as fuel, regardless of where the use occurred, based on the "free use" provision in ¶8 of the Anderson-Pritchett lease, and based on the royalty provision in ¶7 of the Neely-Robertson lease which allows use of gas as fuel as a post-production cost under New Mexico law;

     (3)    Drip condensate is not "oil or gas" as contemplated under the royalty provisions in either lease and can be considered a post-production cost; therefore Defendant does not owe Plaintiffs royalties on this drip condensate; and finally,

     (4)    Energen's royalty payments have been timely under NMSA §70-10-3, with the exception of one individual New Mexico plaintiff, for whom the temporary suspension of royalties was permitted under the Act.

     **THEREFORE,**

     **IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' Claims Under New Mexico law **(Doc. 96)** for reasons described in this Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT JUDGE