IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a
THE JAMES H. ANDERSON LIVING
TRUST; THE PRITCHETT LIVING TRUST;
J. RICHIE FIELDS; THE TATUM
LIVING TRUST; and NEELY-ROBERTSON
REVOCABLE FAMILY TRUST,

      Plaintiffs,

      v.                                                      No. 13-CV-00909 WJ/CG

ENERGEN RESOURCES CORPORATION,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR CLAIMS UNDER COLORADO LAW

THIS MATTER comes before the Court upon Defendant's Motion for Partial Summary Judgment on Plaintiff Tatum Living Trust's Claims Under Colorado Law, filed April 13, 2015 **(Doc. 99)**. Having considered counsel's written and oral arguments and having reviewed the applicable law, the Court has determined that Defendant's motion shall be GRANTED in part and DENIED in part.

### BACKGROUND

The controversy in this case involves issues relating to the proper payment of royalty income to Plaintiffs, and all others similarly situated, from the production of oil, natural gas and associated hydrocarbons (including drip condensate) from natural gas wells on lands subject to various oil and gas leases in northern New Mexico and southern Colorado all within the geologic

formation known as the San Juan Basin. The New Mexico Plaintiffs (Anderson Living Trust, Pritchett Living Trust and Neely-Robertson Revocable Family Trust) own interests only in wells located in New Mexico.  Plaintiff Tatum Living Trust ("Tatum Trust") owns interests in wells located in Colorado.  Defendant Energen Resources Corporation ("Defendant" or "Energen") is the owner and operator of the natural gas wells on the oil and gas leases at issue in this lawsuit.

The Court recently granted Defendant's motion for summary judgment on Plaintiffs' claims asserted under New Mexico law. *See* Doc. 175.[1]  In the instant motion, Defendant Energen seeks partial summary judgment on claims asserted by the Tatum Trust under Colorado law (Doc. 99). According to the First Amended Complaint, Defendant produces and sells the production from its wells pursuant to the terms of oil and gas leases and other royalty instruments. Plaintiffs allege that they own royalty and overriding royalty interests under some of these instruments and that Energen has failed to pay them certain royalties that they are owed according to the terms of the royalty instruments. The Second Amended Complaint  (Doc. 70) asserts the following claims:

First Cause of Action: Failure to Pay Royalty on values received by Energen, on volumes of hydrocarbons, drip condensate and lawful expenses;

Second Cause of Action: Breach of Duty of Good Faith and Fair Dealing (Dismissed as to Colorado and Re-Pled);

Fourth Cause of Action (Breach of Duty to Market Hydrocarbons) under Colorado law;

Fifth Cause of Action: Violation of the New Mexico Oil and Gas Proceeds Payment Act and Interest Due;

Sixth Cause of Action: Bad Faith Breach of Contract;

---

[1] The claims asserted under New Mexico law were previously asserted in a former lawsuit that was removed to federal court from the 1st Judicial District Court, County of Rio Arriba, State of New Mexico, in April 2012 based on diversity jurisdiction.  In that case, United States District Court Judge Judith C. Herrera dismissed Plaintiffs' claims without prejudice.  *See Anderson Living Trust v. Energen*, Civil No. 12-00352 JCH-KBM, Doc. 29 ("previous lawsuit").  However, that litigation did not involve the Colorado royalty owners who are Plaintiffs for purposes of the instant motion.

Seventh Cause of Action: Declaratory Relief.

In this motion, Energen seeks to narrow the claims asserted by Tatum Living Trust asserted in the Second Amended Complaint (Doc. 70), contending that these claims fail as a matter of Colorado law:

(a)  Improper deduction of post-production costs from royalty payments;

(b)  Failure to pay royalties on gas used as fuel; and

(c)  Sales of gas to affiliated entities of Energen at an improperly low price (underpricing claim).

(d)  In addition, Defendant seeks summary judgment on the issue of whether Plaintiff Tatum Living Trust can assert claims on behalf of "same as fed" owners.

At the January 27, 2016 hearing on Defendant's summary judgment motion, the Court was advised that Plaintiffs have dismissed their claim for underpricing and so this claim will not be addressed.  Additionally, the Court will not address the issue of whether Energen must pay royalties in the same manner used to pay royalties to the United States Government under federal oil and gas leases.  This issue involves a question of standing, and would be more appropriately addressed in the context of Plaintiffs' pending motion to certify class (Doc. 152).

Also at the hearing, Defendant stated that it was not moving for summary judgment on the Tatum Trust's claims directed at deductions for costs which were made under the New Mexico Oil and Gas Proceeds Payment Act, or on claims involving royalty payments for drip condensate.  This leaves two issues for the Court to address here in this motion for partial summary judgment: (1) deductions for post-production costs and (2) failure to pay royalties on gas used as fuel.

**DISCUSSION**

**I.     Deduction for Post-Production Costs**

The Tatum Trust alleges that Energen improperly deducts monetary charges for gas gathering and processing, known as "post-production" expenses, from its royalty payments. Post-production cost are costs "associated with making the natural gas marketable after the gas is severed or removed from the ground." Williams & Myers, OIL AND GAS LAW, vol. 8 at 787; *see also* Doc. 100-7 (describing post-production costs as including the "mechanical separation of oil and water from the gas stream, operating pumpjacks and other wellhead equipment, and compressing the natural gas near the wellhead before it enters into the gathering system").

Energen acknowledges that the post-production cost issue presents a much closer question under Colorado law compared to New Mexico law for the reason that New Mexico law does not recognize a "marketable condition rule," which imposes on the producer the burden of bearing all costs necessary to render the gas marketable.  *See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690 (1993) (rejecting the argument that the producer must bear all costs necessary to render the gas "marketable"), cited in *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1108 (10th Cir. 2005). *See also* Doc. 175 at 9; and Doc. 67 (Court's Mem. Opin. & Order denying in part and granting in part claims brought under New Mexico law) at 35-37.

However, under Colorado law beginning in 2001, the lessee must bear expenses incurred in order for the gas to reach marketable condition. *See Rogers v. Westerman Farm Co.,* 29 P.3d 887 (Colo. 2001).  Additionally, Energen acknowledges that the terms of the Tatum lease are more favorable to the Tatum Trust as lessor because the lease expressly addresses the allocation of post-production costs between the Tatum Trust and Energen.  Having recognized its

obligations under Colorado law and the Tatum Trust lease terms, Energen nevertheless maintains that it is not in breach of the lease terms and that no royalties are owed to the Tatum Trust because Energen no longer deducts post-production expenses from royalties paid to the Tatum Trust. Energen states that it has also reviewed past deductions and made refunds where applicable, reimbursing the Tatum Trust for any post-production costs that had been improperly deducted. In support of its position, Defendant provides an Affidavit from Energen's Revenue Accounting Supervisor, Jacqueline Cobb and 30(b)(6) deposition statements explaining that, beginning in 2006, Energen no longer deducted these costs from the Tatum Trust's royalty payments, and refunded costs deducted prior to 2006, except for leases specifically allowing Energen to make these deductions. *See* Doc. 99, Ex. D; Ex. E at 19:10-19; 23:5-19; 24:8-13; 28:6-8:45:7-2. At the hearing, counsel for Energen explained that in calculating the reimbursements that were due to the Tatum Trust, Energen applied a six-year time period for 1000 royalty owners 12 times a year, which results in 12,000 remittance statements a year and 72,000 total monthly statements.[2]

    The Tatum Trust insists that it was not fully reimbursed the post-production charges, claiming that such charges were still being deducted during 2006, after Energen claims that it had changed its accounting methods to where it was not making deductions for post-production costs. Defendant points out that the check stubs Plaintiff refers to (Doc. 138-1) are not from 2006, but from 2004 and 2005, *before* Energen changed its accounting method. Defendant also points to Ex. 4 to the Second Am. Compl. (Doc. 70-4), which is a check stub from "3/25/09," indicating that no post-production expenses were made for that time period. However, one of the check stubs which Tatum Trust includes as evidence does show a date of "6/26/2006" with a notation of "GATH," the industry code for post-production costs. Doc. 138-5. The check stub

---

[2] Colorado law has a six-year statute of limitations for contract disputes. See C.R.S. §13-80-103.5(1)(a). (

exhibits are difficult to read due to poor copying quality, but in the end, it does appear that the check stub from "6/26/2006" presents a factual dispute regarding whether Energen was still making deductions for post-production costs even after it claims that it changed its accounting methods to discontinue these deductions.

Defendant is therefore not entitled to summary judgment on this issue, although the Tatum Trust's success on this claim may be tenuous, in light of statements made by counsel for the Tatum Trust at the hearing that he did not actually know whether all the post-production cost reimbursements had been made and that he proposed to have an expert review all the paperwork to determine what, if any, deductions had not been reimbursed. Given that Defendant has moved for summary judgment on this issue, it would have been appropriate for the Tatum Trust's expert to have presented such evidence now instead of later, to indicate whether: (a) Energen was still making post-production deductions contrary to Colorado law and the express lease terms; and/or (b) Energen had not reimbursed to the Tatum Trust a more or less specific amount that Energen owed the Tatum Trust. In other words, as non-movant in a summary judgment motion responding to facts presented by Energen, the Tatum Trust was required to "set forth specific facts" from which a rational trier of fact could find for the Tatum Trust as the non-movant. *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). The singular and discrete piece of evidence in the form of one check stub from June 26, 2006 is sufficient to preclude summary judgment on this issue at this time, but just barely, because it indicates a singular and discrete occurrence on Energen's part rather than a trend that would support the scope of Tatum Trust's allegations.

The Tatum Trust also makes an argument that post-production deductions were being made by using free gas without paying a royalty. Tatum Trust relies on an exhibit submitted by

Energen, an affidavit by Mark Cox, Director of Energen's Gas Marketing. Doc. 100-7. In that affidavit, Mr. Cox states that the gathering and processing of the gas occurs away from the wellhead and that these "post-production services" require fuel as gas. Tatum Trust argues that this statement shows that Energen is using free gas, and allowing the third-party processor to use free gas for the gathering and processing, without paying royalties. With regard to the Tatum lease, the Red Cedar Gathering Company ("Red Cedar") performs post-production services to gather and process the gas pursuant to the contract between Energen and its affiliates. *See* Doc. 100-2 at 4 (identifying and describing Red Cedar contract).

The Court previously found that under New Mexico law, Energen was entitled to treat gas used as field and plant fuel as an "in-kind compensation" to third-party processors for post-production costs. Doc. 175 at 11-12. Under Colorado law, however, Energen as the producer must bear post-production expenses unless the lease expressly addresses allocation of costs. *Rogers v. Westerman Farm Co.,* 29 P.3d at 906. Because the Tatum lease does contain a provision regarding the free use of fuel, this issue is more properly addressed in that context. If Defendant is permitted free use of field and gas fuel under that clause, then Tatum Trust would not be entitled to royalties on this gas because it is not gas used as a post-production cost, but rather gas used as fuel under the express terms of the lease provisions.

**II.     Free Use of Gas as Fuel**

Energen seeks summary judgment on the claim that it failed to pay royalties on gas used as fuel, claiming that it is entitled to use this gas as fuel under the terms of the Tatum lease:

> Lessee shall have free use of oil, gas and water **from said land**, except water from Lessor's walls, tanks, creeks, rivers, streams and springs, **for all operations hereunder.**

7

Doc. 100-1, Deft's Ex. A, ¶ 7 (emphasis added).[3] Energen contends that this free use provision permits the free use of gas and oil found on the lease land for the purpose of carrying out operations to develop the product. Defendant relies on *ConocoPhillips Co. v. Lyons*, which addressed a clause with similar language, which reads as follows:

> any and all rights and privileges necessary, incident to or convenient for the economical **operation of said land**, **for oil and gas**, with [the] right for such purposes to the **free use of oil, gas casing-head gas**, or water **from** said lands....‖ (Emphasis added). These rights were granted to Lessee ―for the sole and only purpose of exploration, development and production of oil and **gas thereon and therefrom** with the right to own all oil and gas so produced and saved therefrom and not reserved as royalty by the lessor . . . .

299 P.3d 844, 856 (N.M.2013) (emphasis added). In *Lyons,* the New Mexico Supreme Court concluded that that the lessees were entitled to the free use of oil and gas produced from the leased premises, "regardless of where the use occurred, so long as the oil and gas was being used to further the economical operations of said land." *Id.* at 856. Defendant acknowledges that *Lyons* is a New Mexico case, but that the result would be no different under Colorado law. The Court agrees with this assessment. The *Lyons* court came to its conclusion using the principles of contract interpretation, and Tatum Trust has presented no Colorado case to the contrary or otherwise given any reason to believe that construction of the provision in *Lyons* would be read any differently under Colorado law. *See USI Properties East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo.1997) (intent of the parties to a contract is to be determined primarily from the language of the instrument itself).

---

[3] Oil and gas leases usually provide for free use of oil and gas for lease related development where the lessee is entitled to use as much of the surface as is reasonably is necessary for development, including the free use of water. The lessor may insert special clauses of restriction to limit this use. *See* Summers, THE LAW OF OIL AND GAS, §60:35 (3d ed.).

A.      *Lyons* and *Bice* Applies to this Case

Nevertheless, Tatum Trust contends that *Lyons* should not be considered persuasive authority to this case because the lease language at issue in *Lynon* was not identical to the language in ¶7 of the Tatum lease. Tatum Trust also claims that the language in the Tatum lease confines the use of free gas to use that occurs *on* the premises, which means that Energen would be required to pay royalties for any gas used off the lease premises, even if the gas is used for purposes of gathering and processing. The Court heard this same argument from the New Mexico Plaintiffs, who also argued that the lease clause was subject to a geographic limitation. The Court rejected that argument and found that the language in that lease was similar enough to the language in the *Lyons* leases. *See* Doc. 175 at 15-16. The Court applies and adopts that same reasoning here because the free use provisions in both the Anderson-Pritchett lease (the New Mexico lease) and the Tatum lease are very similar. The Anderson-Pritchett free use provision permitted free use of gas and oil "found on said land **for its operations thereon**" (Doc. 97-1, Ex. A, ¶ 8) (emphasis added); while the Tatum lease permits free use of gas and oil "from said land . . . **for all operations hereunder**." Doc. 100-1, Deft's Ex. A, ¶ 7 (emphasis added). The Court finds no appreciable distinction between the words "thereon" and "hereunder" that would justify a finding that "hereunder" limits use of free gas to the lease premises while "thereon" does not.

*Lyons'* construction of the lease terms is made even more persuasive because of the case that court relied on for comparison. In *Bice v. Petro Hunt, LLC*, the free use clause provided that the lessees

> . . . shall have the right to use, free of cost, gas, oil and water produced on said land for its **operation thereon**" or the lessees "shall have free use of oil, gas and water from said land ... for all its **operations hereunder**.

*Bice v. Petro Hunt, L.L.C.,* 768 N.W.2d 496, 503, 2009 ND 124, ¶ 22 (N.D.,2009) (emphasis added). The *Bice* court found that the phrase "for its operations thereon" did not limit the

9

lessee's use of gas to use that occurs on the lease premises, and further, that "the words 'thereon' or 'hereunder' modify the word 'operations' and are not limitations on where the physical consumption of the gas may occur." *Id.* at 503-04.  The language in the *Bice* lease is identical to that in the Tatum lease free use provision, and the Court finds no reason to depart from the interpretation given to the same language in another lease.  *USI Properties East, Inc.*, 938 P.2d at 174 (Colo.,1997) (using plain meaning of provision to determine that meaning was unambiguous).

As Defendant noted at the hearing, the holding in *Bice* was premised on the expectation that the use of field and plant fuel was involved in the gathering and processing to sell the gas downstream, and that the royalty owners were paid royalties on the product that was realized as a result of the gathering and processing.  *Bice* also explained that interpreting the free use provision to limit use to the lease premises (as Tatum Trust urges the Court to interpret the provision) would lead to "absurd results because one lessor may be required to bear the entire burden" of the free use clause if it had the ability to treat and process the gas on the lease premises.  *Id.* at 503-04.  The same absurd results would occur here if the Court adopted Tatum Trust's argument, limiting free use to within the boundaries of the lease premises.

B.  <u>Free Use Clause Is Consistent with Royalty Provisions in Tatum Lease</u>

Tatum Trust next contends that the ¶ 7 in the Tatum lease cannot allow free use of field and plant gas, specifically relying on the royalty provision which it claims requires Energen to pay royalty on *all* gas used:

> Lessee shall pay Lessor royalty on all oil and other liquid hydrocarbons . . . **produced** from a well on the leased premises or on lands pooled with the leased premises and sold or used off the leased premises. . . .

*See e.g.,* Doc. 100-1,Ex. A, ¶3(c) (emphasis added). Tatum Trust contends that this language, read together with the free use provision in ¶7, requires Energen to pay royalties on all gas that is

10

used off the leased premises, including all gas used by Red Cedar for processing. However, Tatum Trust's reading of the royalty provision in ¶3(c) does not square with the free use clause in ¶ 7 of the Tatum lease, which clearly allows for use of gas as fuel without the payment of royalties. Energen contends, correctly, that based on the language in the royalty provisions, ¶3(c) comes into play in situations where the lessee sells products off the leased premises, but where the lessor receives no credit or money for that sale; or if gas were not used in the gathering, processing and development of the lease. In other words, if gas is being used for lease operations, then Energen is not required to pay royalties by virtue of ¶7, but if gas is being sold without crediting the lessee, then there may a potential breach of ¶3(c). This reading of the lease terms allows ¶ 3(c) to be read consistently with ¶7. *See USI Properties East, Inc. v. Simpson,* 938 P.2d 168, 173 (Colo.1997) (contract language "must be examined and construed in harmony with the plain and generally accepted meaning of the words employed").

The other problem with Tatum Trust's interpretation of the language in the royalty provision is that it overlooks key language that envisions a royalty to be paid on "all gas . . . *produced.*" ¶3(c) (emphasis added). Because gas that is *used* as fuel is not the same as gas that is *produced*, the language in ¶7 does not conflict with the language in the royalty provision in ¶ 3(c). Any other construction of ¶ 3(c) would not only nullify the Tatum lease free use clause, against general rules of contract construction, but also give royalty owners much more than the proceeds on the gas that is marketed according to the terms of the lease. This would result in a windfall to the royalty owners beyond what was intended according to the lease terms. *See USI Properties East, Inc. v. Simpson*, 938 P.2d at 173 (intent of the parties to a contract is to be determined primarily from the language of the instrument itself).

The Tatum lease free use provision in ¶ 7 does not conflict with any other royalty provision. For example, ¶3(f) states that:

> Lessee agrees that before any gas produced from the leased premises is used or sold off the leased premises, it will be run, free of cost to Lessor, through an adequate oil and gas separator.

Doc. 100-1,Ex. A, ¶3(f). However, Energen states that it has complied with ¶3(f) because it does not deduct any charge for separating gas which it does in order to recover oil or other heavy liquids at the physical location of the lease. Tatum Trust offers no factual dispute to Energen's statement. Thus, the gas is run "free of cost" to Tatum Trust, and the language in ¶3(f) contains nothing which conflicts with allowing Energen free use of gas as fuel in the Tatum lease free use clause. In addition, ¶3(a) describes royalties due on "oil and other liquid hydrocarbons . . . **produced and saved** from the leased premises and **sold** by Lessee . . . ." and ¶3(b) addresses royalty due "for all gas . . . recovered or separated on the leased premises, **produced from the leased premises and sold** by [Energen]. Doc. 100-1, Ex. A, ¶ 3 (emphasis added). Oil and gas that is *produced* is clearly distinct from oil and gas that is used as fuel under ¶7, and so none of the royalty provisions conflict with Energen's entitlement to the free use of oil and gas under that provision. Also, because the Tatum lease expressly addresses the free use of gas as fuel, Tatum Trust cannot rely on the marketable condition rule, which is alive and well and Colorado, to demand royalty payments on oil and gas used as fuel.

Finally, Tatum Trust fares no better with the argument that Energen owes royalties on gas and oil used as fuel by Red Cedar as the third-party processor. Tatum Trust is correct that because Colorado recognizes the "marketable condition rule," Red Cedar's use of gas and oil as fuel cannot be considered a post-production cost. However, Red Cedar's use comes within the purview of ¶7 of the Tatum lease, which entitles Energen to free use of gas and oil that is

12

"necessary, incident to or convenient for the economical operation" of the lease premises, for the purpose of carrying out operations to develop the product.  *See* Doc. 100-1, ¶7 (. . . for the sole and only purpose of exploration, development and production of oil and gas").  This language encompasses Energen's arrangement Red Cedar, which develops the product.   Attributing the financial burden of development to Energen would be contrary not only to the plain language of the free use clause but contrary to the provisions governing royalty payments, which are based only on gas that is *produced* or *sold*.  Therefore, summary judgment is granted on the issue of whether royalties are due on gas and oil used as fuel.  Under the express language of the free use clause of the Tatum lease and under a fair reading of the relevant royalty provisions in the Tatum lease, Energen is entitled to free use of gas and oil for the purpose of carrying out operations to develop the gas product found on the lease premises.

## CONCLUSION

In sum, the Court finds and concludes that summary judgment is denied on the issue of whether Energen improperly deducted post-production costs from royalty payments, in light of evidence indicating that Energen may not have reimbursed Tatum Trust for all of these costs as it was required to do under Colorado law.  As the Court previously mentioned, Tatum Trust has presented but one check stub which seems to show that a deduction was made for post-production expenses in June of 2006, after Energen claims to have changed its accounting methods.

The Court also finds and concludes that Defendant is entitled to summary judgment on the issue of whether Energen failed to pay royalties on gas and oil used as fuel.  The free use provision in ¶7 of the Tatum lease entitles Energen to free use of gas and oil used as fuel, and the

language in that clause is consistent with the royalty provisions in the Tatum lease or with the "marketable condition rule" which is recognized under Colorado law.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiff Tatum Living Trust's Claims Under Colorado Law **(Doc. 99)** is hereby GRANTED IN PART and DENIED IN PART for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE