# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a
THE JAMES H. ANDERSON LIVING
TRUST, *et al.*,

        Plaintiffs,

        v.                                       No. 13-CV-00909 WJ/CG

ENERGEN RESOURCES CORPORATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON NEELY-ROBERTSON REVOCABLE TRUST'S FUEL GAS CLAIM

THIS MATTER comes before the Court upon Energen's Motion for Summary Judgment on the Neely-Robertson Revocable Trust's Fuel Gas Claim, filed February 28, 2019 (**Doc. 216**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

This case concerns the calculation and payment of royalties on natural gas produced from wells located in the northwest part of New Mexico and the southwest part of Colorado within the geologic formation known as the San Juan Basin. The New Mexico Plaintiffs (Anderson Living Trust, Pritchett Living Trust and Neely-Robertson Revocable Family Trust) own interests only in wells located in New Mexico. Plaintiff Tatum Living Trust ("Tatum Trust") owns interests in wells located in Colorado. Defendant Energen Resources Corporation ("Defendant" or "Energen") is the owner and operator of the natural gas wells on the oil and gas leases at issue in this lawsuit.

**I.**        **Procedural background**

Most of the issues related to the claims in this case have been briefed and addressed by the Court. Docs. 175, 177. Plaintiffs appealed the Court's adverse rulings and the Tenth Circuit Court of Appeals affirmed in part and reversed in part. *See Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 847 (10th Cir., Mar. 2, 2018).[1] As a result of the Court's rulings on claims asserted by the other New Mexico Plaintiffs which have been affirmed by the Tenth Circuit, the only remaining New Mexico Plaintiff is the Neely-Robertson Revocable Family Trust ("N-R Trust" or "Trust") *See* Doc. 194 at 3 & 5 (table); Doc. 198 at 6.[2]

In this motion, Energen seeks dismissal of the N-R Trust's claim for additional royalties on gas used as fuel. Relying on New Mexico law regarding post-production costs that are shifted to the lessor, the district court granted summary judgment to Defendant, concluding that Energen was not required to pay royalties on gas used as fuel even though the N-R lease did not contain a "free use" clause. Doc. 175 at 19-20.

Post-production costs are those costs necessary to make the gas marketable. *Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 831 (10th Cir. 2018). New Mexico law does not recognize a "marketable condition rule," which imposes on the producer the burden of bearing all costs necessary to render the gas marketable. *See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690 (1993) (rejecting the argument that the producer must bear all costs necessary to render the gas "marketable"), cited in *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d

---

[1] The Tenth Circuit Court of Appeals affirmed this Court's rulings regarding: (1) the marketable condition rule and the New Mexico Natural Gas Processors Tax Act; (2) summary judgment granted to Defendant with respect to the Anderson and Pritchett Trusts' fuel gas claims; and (3) the Court's denial of Plaintiffs' motion to certify the marketable condition rule to the New Mexico Supreme Court. However, the Tenth Circuit reversed summary judgment with respect to (1) the Neely-Robertson and Tatum Living Trust's fuel gas claims and (2) the Neely-Robertson Trust's claim for statutory interest under the New Mexico Oil and Gas Proceeds Payments Act, NMSA 1978, §70-10-1 et seq (Count V). The latter will be re-addressed in connection with a renewed motion for class certification. *See* Doc. 212 at 3.

[2] Tatum Living Trust is the sole Colorado plaintiff. A separate summary judgment motion is pending on claims asserted by this Plaintiff. *See* Doc. 215.

1091, 1108 (10th Cir. 2005). Thus, Energen is entitled to deduct post-production costs for its services in getting the gas into a marketable condition. See Doc. 175 at 9; *Anderson Living Trust*, 886 F.3d at 830.

On appeal, the Tenth Circuit disagreed with the district court's ruling granting summary judgment to Defendant. The court found that Energen's practice of using fuel gas royalty-free was "not only contrary to the royalty provision of the lease, it also impermissibly reads into the lease a "free use" clause that is not there." *Anderson Living Trust*, 886 F.3d at 847. While the Neely-Robertson Trust did not contain a "free use" clause, the Tenth Circuit stated that the royalty provisions in the lease language were "explicit" in stating that royalty is owed on *all* oil and gas produced from the leased land, and not just on gas that is marketed:

> "at the prevailing field market price therefor at the time when produced a royalty in cash or oil amounting to seven and one half (7 ½) percentum of all oil and gas produced from the lands embraced in said primary lease . . ."

Doc. 216-1 at 4. The field market price at "the time when produced" means "the value of the gas at the wellhead, where production occurs, when production occurs"—that is, royalty is to be paid "on all gas emerging from the wellhead of each well within the lease area." *Anderson Living Trust,* 886 F.3d at 846-847. The Tenth Circuit found that Energen was entitled to deduct the value of the fuel gas consumed as a post-production cost, but it must still pay royalty on the wellhead value of the fuel gas consumed. *Id.* ("In calculating [the field market price," Energen may deduct the value of the fuel gas consumed as a post-production cost (along with other post-production costs), but it must also pay royalty on the wellhead value of the fuel gas consumed.").

The Tenth Circuit stated that the "netback method" should be used to determine the wellhead value of any gas at issue "unless the lease provides otherwise. . . ." 886 F.3d at 847. The court described this method by comparing it to the calculation of a commission paid to a car

3

salesman. *Anderson Living Trust*, 886 F.3d at 833, n.10. Using that analogy, the value of gas at the wellhead can be determined by deducting the post-production costs from the sales price (market value) of the processed (or non-fuel) gas. The court noted that the "netback method" was "widely accepted as the best means for estimating the market value of gas at the well where no such market exists. *Id.* at 832 (citing *Abraham v. BP America Production Co*., 685 F.3d 1196, 1200 (10th Cir. 2012). Because the record on appeal was insufficient from which a determination could be made of the wellhead value of the fuel gas consumed, the Tenth Circuit remanded the N-R fuel gas claim for appropriate factual findings and required calculations" by the district court. *Anderson Living Trust,* 886 F.3d at 847. Thus, what remains for the fuel gas claim is a calculation of royalties owed to the N-L lessors for Energen's use of gas as fuel, based on the "netback method" of calculation. Following remand, the parties were allowed to re-brief the claim.

## II.     Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer,* 101 F.3d 1336, 1338 (10th Cir. 1996). Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The non-moving party may not rest on averments in its pleadings, but instead must establish specific triable issues. *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## DISCUSSION

Plaintiff's fuel gas claims are alleged in Counts I, II and VII in the Second Amended Complaint (Doc. 70); *see* Doc. 212 at 2. In this motion, Energen contends that it owes no royalties to Plaintiff after allowing for Plaintiff's share of gathering and processing costs—in other words, Energen's royalty obligations are "precisely equal" to its share of gathering and processing costs. Plaintiff disagrees, claiming that Energen undervalues the fuel gas used in the royalty calculations and disputes the accuracy of the mathematical calculations used by Energen.

### I. Relevant General Facts

The N-R Trust has an overriding royalty instrument governing minerals in San Juan County, New Mexico. *See* Ex. A. Prior to March 2015, Energen owned and operated six wells subject to the Trust's overriding royalty interest. *See* Ex. B. Gas produced from the N-R leasehold wells was gathered by Williams Four Corners ("WFC"), the third party that gathers and processes the gas under contract with Energen. WFC returned the processed residue gas to Energen, which then sells the gas to third parties. Ex. D at 4-5. WFC purchased the natural gas liquids ("NGL"), also known as "shrink,"[3] less that portion of NGL's that WFC was contractually entitled to retain.

WFC provided Energen with detailed monthly statements indicating the wellhead volumes of gas produced by Energen, the volumes of natural gas returned to Energen and the gallons of NGL's that WFC purchased from Energen. Exs. G & H. In turn, Energen sent Plaintiff monthly royalty payment statements identifying the volumes of residue gas it sold from the wells and the volumes of NGL's purchased by WFC.

---

[3] Shrink" generally is defined as "[g]as lost or absorbed in the process of extraction of salable products from natural gas, exclusive of gas used as fuel." 8 Williams and Meyers, THE LAW OF OIL AND GAS, "G" Terms (2017) (citing 18 C.F.R. § 201.772).

Energen claims that the difference between the wellhead volumes produced by Energen and the volumes of residue gas sold by Energen are:

(1) the volumes of gas used by WFC for gathering and plant fuel; and
(2) Energen's share of the NGL volumes extracted from the natural gas stream through processing, for which the Trust received a separate payment.

Defendant claims that no royalties remained as owed after attributing to Plaintiff its "share of gathering and processing costs." Doc. 216 at 6. Plaintiff admits that its monthly royalty statements identify volumes of residue gas sold, but disputes that the statements it receives from Defendant show all volumes of the NGL's that were derived from the gas in its wells. Plaintiff also claims that Energen substantially undervalues the fuel gas used in order to arrive at its conclusions.

## II. Methodology Used in Calculations by Parties

To start with, the Court is puzzled by Energen's reference to Plaintiff's "share" of gathering and processing costs, as Defendant does not refer to any lease provision that addresses a "share" that Plaintiff must pay for gathering/processing costs. *See* Doc. 216 at 2, 4, 6. Defendant does not explain whether it used, or how it used, the "netback" calculation method ordered by the Tenth Circuit as a means of calculating the wellhead value of the gas so that royalties could be calculated on the gas used use as fuel. Energen is also vague about how and when it takes its post-production deductions, including those for the value of fuel gas consumed as a post-production cost.

Energen is entitled to the "free" use of gas consumed as a post-production cost. 886 F.3d at 846-847. The Tenth Circuit mandate provided explicit instructions that the "netback method" should be used in calculating royalties. *Anderson Living Trust,* 886 F.3d at 847 (". . . unless the lease provides otherwise the netback method should be used to determine the wellhead value of any gas at issue"). The court also strongly emphasized that the "netback method" is not a means

6

of cost-shifting marketing expenses to the royalty owners, but is used solely as an "accounting mechanism" to determine the market value at the wellhead by "netting" the gross profit:

> Properly understood, the netback method is not a means of cost-shifting; it is a means of determining the net profit on the oil and gas by "netting" the gross profit. **The post-production expenses are not subtracted from the sales amount because the royalty owners are responsible for post-production expenses; they are subtracted as an accounting mechanism to determine the market value at the wellhead.** Stated differently, "value added" to the gas produced at the wellhead solely through the effort and expense of the lessee must be deducted from an established market price of the improved product in order to make an accurate estimate of the value of the gas at the wellhead. In simple terms, if [A] the market value at the wellhead + [B] the value added in the production process (post-production costs) = [C] the value of the processed natural gas (the sales price of the processed gas), then [C] – [B] = [A]. Subtracting [B] does not shift some of the costs of production to the lessors; it is an accounting adjustment designed to effectuate the intention of the parties as it is expressed in the parties' agreement—the lease.

*Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 832–33 (10th Cir. 2018) (emphasis added) (rejecting Trusts' position that royalty owners are "bearing post-production costs"). As the Tenth Circuit noted, the royalty owner bears his part of these costs in receiving less than the market value for the processed gas, rather than directly being charged those costs:

> The royalty owner shares only in what is left over, whether stated in terms of cash or an end product. In this sense he bears his proportionate part[ ] of that cost, but not because the obligation (or expense) of production rests on him. Rather, it is because that is the way in which [one] arrives at the value of the gas at the moment it seeks to escape from the wellhead.

*Anderson Living Trust,* 886 F.3d 833 (citing *Freeland v. Sun Oil Co.,* 277 F.2d 154, 159 (5th Cir. 1960) (emphasis added).

Based on the Tenth Circuit's directive, Energen should be employing the "netback method" to calculate the market value of the gas at wellhead, and then apply that price to the volume of the gas used as fuel as royalty payment. Here, it appears that Energen is subtracting post-production costs directly from the royalties owed, which is contrary to the Tenth Circuit's description of the "netback method" that should be used. It is also not clear how Energen arrives initially at a gas

value, and whether that value represents the value of gas at the wellhead or at the market. Because Defendant has left the details of its methodology unexplained, the Court cannot determine whether Energen has correctly concluded that it owes Plaintiff no royalty payments.

Defendant relies on a Fifth Circuit case, *Piney Woods County Life Sch. V. Shell Oil Co.,* as support for its argument that it owes the Trust nothing after deducting processing costs from any royalties due. 905 F.2d 840, 855 (5th Cir. 1990). In that case, the court found that the royalty owner was not owed any royalty on the portion of gas used as fuel to run the Thomasville, Mississippi plant because the oil producer was entitled to deduct the processing costs from the market value royalty on that gas. *Piney Woods Country Life Sch. v. Shell Oil Co.*, 905 F.2d 840, 856 (5th Cir. 1990) (holding that the plaintiffs are entitled to royalty on plant fuel, but that defendant may include these royalties as processing costs).

The situation in *Piney Woods* is quite different from the situation here. That case grappled with the question of how market value is determined and did not particularly embrace any particular accounting method, including the "netback method" 905 F.2d at 844-45 (5th Cir. 1990). In fact, the court in *Piney Woods* noted that the "actual sales price of the gas less costs" was "the *least* desirable method of determining market price" and that market value was a question of fact which must be decided by the fact finder on a case-by-case basis. *Id.*[4] *Id.* (emphasis added). In contrast, the Tenth Circuit has given both this Court as well as the parties a roadmap for using the "netback method" for figuring whether any royalties are owed to Plaintiff for Energen's use of gas as fuel: (1) start at the value of the processed natural gas (the sales price of the processed gas); (2) subtract the value added in the production process (post-production costs); which leaves (3) the

---

[4] The court in *Piney Woods* makes no reference to a "netback method" to calculate market value, but the Court assumes that using "actual sales price of the gas less costs" is based on the "netback method".

market value at the wellhead. Thus, the *Piney Woods* case is not relevant to value determinations that must be done in this case.[5]

## III. Parties' Positions on Royalty Calculations

According to the Tenth Circuit mandate, only one issue remains on Plaintiff's fuel gas claim regarding the N-R Trust: whether any royalties are due. The claim was remanded solely for "appropriate factual findings and required calculations." *Anderson Living Trust,* 886 F.3d at 847. However, the parties disagree on too many of the basic starting figures, and these disputes stand in the way of resolving the royalty question.

Plaintiff claims that Defendant does give wellhead production volumes in a few statements presented as exhibits, but these statements are deficient because they do not contain:

(1) the total volume of natural gas produced from its wells,
(2) the total MMBtu value of the natural gas produced at the wellhead or
(3) the wellhead value of such natural gas.
(4) the volumes of natural gas used as fuel for gathering (which is of course the central issue for this claim); and
(5) the amount of processing or natural gas consumed in processing.

*See e.g.* Doc. 216-8; Doc. 221-1 (N-R check stub). Plaintiff further argues that Defendant understates netback wellhead value of fuel gas volumes, and that Defendant's analysis assumes that the volumes of gas used as fuel should be valued at only the residue gas price even though the "netback" wellhead value was higher because the gas was processed for liquids.[6]

On the other side, Energen presents its own challenges to Plaintiff's claim that royalties are due:

---

[5] Plaintiff does not weigh in on the relevance of *Piney Woods* except to note that Defendant relies on the case rather than the Tenth Circuit's directive. Doc. 221 at 2.

[6] "Residue gas" is the gas remaining after processing and extraction of NGL or "shrink." *See* https://www.mineralweb.com/library/oil-and-gas-terms/residue-gas-definition/

9

(1) Plaintiff's calculations improperly double-credit liquids: once when are part of the gas stream and a second time when they are extracted at the plan. It contends that this is inconsistent with the Tenth Circuit's directive to pay royalties on a wellhead value of the production;

(2) Plaintiff inaccurately claims that Energen failed to pay on 20% of the wellhead production, which it asserts is not reflected on the invoices received from WFC, but Plaintiff ignore the fact that, as consideration for processing the gas, the third-party processor was contractually entitled to retain 20% of the extracted liquids;[7]

(3) Plaintiff now raises a new theory of recovery that it was "underpaid" by Energen because it cannot properly calculate a federal tax credit, based on Energen's failure to show wellhead production volumes on its royalty payment statements; and in addition, offers no factual support for this new theory. The Court agrees with Defendant on this issue. This is a new theory of underpayment which the Court will not allow to proceed. Further, the Court recently refused to allow Plaintiff to advance new theories of recovery, noting that it "has spent a significant amount of time and effort trying to pin down the claims and issues that remain in this case." Doc. 212 at 5.

(4) In response to Plaintiff's argument that Energen improperly valued gas used as fuel at the residue gas price, Energen response that the wellhead value is no different and does not result in additional royalties owed to Plaintiff. Below is Energen's explanation on this one argument:

---

[7] Defendant offers Doc. 216-3 (Ex. C) at §2.5 as the "relevant provision" of the processing contract purportedly showing that WFC was contractually entitled to retain 20% of the extracted liquids. *See* Doc. 225 at 7. Exhibit C is a "Gas Gathering and Processing Agreement" between Williams Field Service and Williams Gas Processing-Blanco, Inc. which does not seem to describe this entitlement:

> 3.5 **Plant Recovery Factor.** Each Month WFS shall determine the total gallons of each Plant Product actually recovered at the Plant from all Gas Processed in the Plant by direct measurement. Such actual gallons of each Plant Product recovered at the Plant for the same Month shall be divided by the Plant Theoretical Inlet Gallons of each Plant Product; such quotient shall be referred to hereafter as the "Plant Recovery Factor" for each such Plant Product.

The Court cannot fathom how it is expected to grasp a "20%" retention of extracted liquids from this language, but ventures a guess that 20% can perhaps be obtained as a number figure arrived at by calculation of the "actual gallons of each Plant Product" divided by the "Plant Theoretical Inlet Gallons of each Plant Product" which in turn results in a "Plant Recovery Factor."

Combining the residue gas and liquids is simply a different way to present the same amounts separately paid by Energen on these two products. The wellhead value is no different, and does not result in additional royalties owed to NRRT. Table 3 below shows the wellhead value of residue gas and liquids for gas produced from the Congress Lachman 4 DK in March 2014, presented in the same way as Tables 1 and 2 above for the Angel Peak #22 well:

Table 3

| | Volume (MMBTU) | Price | Value (MMBTU x Price) |
|---|---|---|---|
| **Wellhead Gas Volume** | 465[11] | $4.8844[12] | $2,271.23 |
| **Minus Post-Production Costs** | | | |
| Gathering Fuel (4.00%) | (18.60)[13] | $4.8844 | ($90.85) |
| Plant Fuel (4.00%) | (18.60)[14] | $4.8844 | ($90.85) |
| Liquids Shrink | (130.00)[15] | $4.8844 | ($634.97) |
| **Subtotal after Fuel and Shrink** | | | $1,454.56 |
| Field Transportation | | | ($70.79)[16] |
| NGPT | | | ($6.42)[17] |
| **Netback Value for Gas** | 346.24 | | $1,377.35 |
| 100% of Recovered Liquids | | | $1,340.20 |
| **Minus Post-Production Costs** | | | |
| 20% retained by WFC | | | ($268.04) |
| **Subtotal after 20% Retention** | | | $1,072.16[18] |
| Field Transportation | | | ($39.74)[19] |
| **Netback Value for Liquids** | | | $1,032.42 |
| **TOTAL NETBACK VALUE OF GAS AND LIQUIDS (BEFORE TAXES)** | | | $2,409.77 |

When the same products are valued using NRRT's $5.43 per MMBTU, and fuel costs are valued at the same price, the result is the same (within one cent):

Table 4

| | Volumes Paid (MMBTU) | NRRT's Price | Value (MMBTU x Price) |
|---|---|---|---|
| Volumes Paid as Residue Gas | 297.80[20] | $5.43 | $1,618.19 |
| Volumes Paid as Liquids | 130.00[21] | $5.43 | $706.40 |
| Volumes Used as Gathering Fuel | 18.60 | $5.43 | $101.07 |
| Volumes Used as Plant Fuel | 18.60 | $5.43 | $101.07 |
| **Subtotal** | | | $2,526.73 |
| **Minus Monetary Post-Production Costs** | | | |
| Field Transportation (Gas) | | | ($70.79)[22] |
| NGPT | | | ($6.42)[23] |
| Field Transportation (Liquids) | | | ($39.74)[24] |
| **TOTAL WELLHEAD VALUE** | | | $2,409.78 |

Doc. 225 at 8-9.[8]

---

[8] The footnotes cited in the tables, which are references to exhibits, are omitted here.

For purposes of this summary judgment motion, the Court categorizes the "disputes" that exist into two groups: (1) disputes regarding the accuracy of the volumes of and types of gas being considered as the starting point for calculations; and (2) the mathematical calculations themselves.[9] These disputes preclude summary judgment. There also several other reasons why this Court must deny summary judgment:

First, even assuming that Defendant's calculations are mathematically accurate, the Court cannot be certain whether Defendant relied on the "netback method."

Second, the pleadings do not contain sufficient documentation to make any kind of assessment of the accuracy of either party's calculations. Defendant has submitted what appears to be a few check stubs and statements as examples supporting its argument that it owes N-R Trust no royalty. Surely, Defendant cannot expect the Court to consider samples of statements representing *some* of the production from *some* of the wells governed by the lease, and expect the Court to find as a matter of law that no royalties are owed.

The third reason why summary judgment must be denied is amply illustrated by the Court's inclusion of Energen's discrete "explanations" to its second and fourth arguments, which the Court has incorporated into its discussion above. In terms of both accounting complexity and incomprehensibility, it is similar to other arguments and explanations offered in the briefs (particularly Defendant's). Because this is an oil and gas case, a certain level of specialized knowledge is to be expected, and the Court relies on counsel to present the issues with enough clarity and explanation to enable it to resolve issues where possible. The Tenth Circuit sent this case back to the undersigned to resolve what initially must have seemed like a fairly straightforward matter of calculating royalties based on a "netback method:

---

[9] Plaintiff notes, for example, that the check stub provided to N-R Trust shows a wellhead value of fuel gas for a particular well as $4.88 per MMBtu, rather than the correct value of $5.00 per MMBtu. Deft's Ex. H; Pltff's Ex. 2.

> We have identified a unifying theme, not only here but for the Anderson and Pritchett Trusts' lease as well: royalties are to be calculated according to the lease terms and unless the lease provides otherwise the netback method should be used to determine the wellhead value of any gas at issue. We have every confidence that, aided by counsel, the district judge, who has demonstrated a comprehensive understanding of Oil and Gas Law, can find a way through the thicket.

*Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d at 847. Finding a way through the "thicket" of oil and gas accounting is formidable enough, but where the parties disagree on almost step in the process, it cannot be done without expert assistance, which brings the Court to possible options for resolution.

**IV. Resolution by Parties or Possible Appointment of Special Master following Trial**

Summary judgment will be denied on this motion.

The Court will consider class certification when that motion is filed. *See* Doc. 212 at 8 (setting briefing schedule for class certification motion). This case will proceed on its litigation track with this claim still pending on the sole issue of damages—that is, royalty payments.

Parties have two options they may consider:

(1) Plaintiff N-R Trust and Energen are invited to negotiate a resolution of whether royalties are due on Plaintiff's fuel gas claim. The Tenth Circuit's mandate is now the law of the case. *See Pittsburg County Rural Dist. No. 7 v. City of McAlester*, 346 F.3d 1260, 1276 (10th Cir. 2003) (law of case doctrine requires every court to follow the decisions of courts that are higher in the judicial hierarchy). That court has already found that the N-R lease explicitly provided that royalty is owed on *all* oil and gas produced from the leased land, and not just on gas that is marketed. The court also found that Energen must pay royalty on the wellhead value of the fuel gas consumed although it could deduct the value of fuel gas consumed as a post-production coast. The Court expects that the parties are sufficiently familiar with the calculations that need to be done if both sides view resolution as the objective.

(2) Should the royalty payment remain unresolved by the parties by the time of trial, the Court will appoint a Special Master pursuant to Fed.R.Civ.P. 53 following trial for all matters where the Court finds that oil and gas accounting expertise is required. That individual will have the task of hearing parties on the disputes presented in this motion, reviewing *all* relevant check stubs and documents on volumes owed, making the necessary computations consistent with the Tenth Circuit mandate and taking any other appropriate measures for the purpose of ultimately making findings on whether—or how much—Defendant owes Plaintiff in royalty payments. *See* Rule 53(c).[10]

## CONCLUSION

In sum, the Court finds and concludes that disputes of fact preclude summary judgment. The Court further finds and concludes that Plaintiff will not be allowed to proceed on a theory of underpayment related to calculation of a federal tax credit because of Energen's alleged failure to show wellhead production volumes on its royalty payment statements. This is not a theory that was raised previously as to any of the Plaintiffs, and all Plaintiffs are precluded from pursuing this theory going forward.

Finally, the Court suggests that Plaintiff and Defendant attempt a resolution of the discrete issue of damages on royalty payments owed for N-R's fuel gas claim. If this does not occur by the time trial has commenced, the Court will appoint a Special Master under Rule 53 following trial (if appropriate) to make the necessary findings on this issue as well as any other matters that require oil and gas accounting or calculations.

---

[10] The Court initially considered assigning a Special Master to resolve the royalty payment question specific to the N-R fuel gas claim, but in the interest of efficiency decided to defer the matter until after trial, at which point there would be either no need for further calculations, or other matters that also require a Special Master's attention—depending on which party prevails. The Court defers matters such as process of appointment and shared costs by parties until a later time.

**THEREFORE,**

**IT IS ORDERED** that Energen's Motion for Summary Judgment on the Neely-Robertson Revocable Trust's Fuel Gas Claim **(Doc. 216)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE