IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a
THE JAMES H. ANDERSON LIVING
TRUST, *et al.*,

      Plaintiffs,

v.                                                         No. 13-CV-00909 WJ/CG

ENERGEN RESOURCES CORPORATION,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon a Motion for Summary Judgment on the Colorado Plaintiff's Fourth Claim for Relief (**Doc. 215**), filed on February 28, 2019 by Defendant Energen Resources Corporation ("Defendant" or "Energen").

## **BACKGROUND**

This case concerns the calculation and payment of royalties on natural gas produced from wells located in northern New Mexico and southern Colorado within the geologic formation known as the San Juan Basin. The New Mexico Plaintiffs (Anderson Living Trust, Pritchett Living Trust and Neely-Robertson Revocable Family Trust) own interests only in wells located in New Mexico. Plaintiff Tatum Living Trust ("Tatum Trust") owns interests in wells located in Colorado. Defendant Energen Resources Corporation ("Defendant" or "Energen") is the owner and operator of the natural gas wells on the oil and gas leases at issue in this lawsuit.

Most of the issues related to the claims in this case have been briefed and addressed by the Court. Docs. 175, 177. Plaintiffs appealed the Court's adverse rulings and the Tenth Circuit Court of Appeals affirmed in part and reversed in part. *See Anderson Living Tr. v. Energen Res.*

*Corp.*, 886 F.3d 826, 847 (10th Cir., Mar. 2, 2018).[1] As a result of the Court's rulings on claims asserted by the other New Mexico Plaintiffs which have been affirmed by the Tenth Circuit, the only remaining New Mexico Plaintiff is the Neely-Robertson Revocable Family Trust ("N-R Trust"). *See* Doc. 194 at 3 & 5 (table); Doc. 198 at 4, 6.

In this motion, Defendant seeks dismissal of a claim for "Breach of the Duty to Market Hydrocarbons—Colorado," asserted by the sole Colorado Plaintiff in this case. *See* Sec. Am. Compl. ("SAC"), Doc. 70 at ¶¶59-63. This particular claim has never been briefed by the parties or otherwise addressed by the Court. *See* Doc. 207 at 5.[2]

## DISCUSSION

In its Fourth Claim for Relief, Plaintiff Tatum Trust asserts that Energen failed to comply with its obligation to bear all costs associated with placing the natural gas produced from the subject wells located in the State of Colorado in marketable condition, according to the "marketable condition rule" followed by Colorado. *See* Doc. 70 (SAC), ¶63. In *Garman v. Conoco, Inc.*, the Colorado Supreme Court held that, "absent an assignment provision to the contrary," all costs incurred to make the gas marketable must be borne entirely by the lessee and are not deductible from royalty payments. 886 P.2d 653, 654 (Colo. 1994). This means that the producer (or lessee) must bear the expenses incurred in order for the gas to reach marketable

---

[1] The Tenth Circuit Court of Appeals affirmed this Court's rulings regarding: (1) the marketable condition rule and the New Mexico Natural Gas Processors Tax Act; (2) summary judgment granted to Defendant with respect to the Anderson and Pritchett Trusts' fuel gas claims; and (3) the Court's denial of Plaintiffs' motion to certify the marketable condition rule to the New Mexico Supreme Court. However, the Tenth Circuit reversed summary judgment with respect to (1) the Neely-Robertson and Tatum Living Trust's fuel gas claims and (2) the Neely-Robertson Trust's claim under the New Mexico Oil and Gas Proceeds Payments Act. All the claims of Plaintiffs Pritchett

[2] Tatum Trust also alleges underpayment of royalties under Colorado law for gas used as fuel ("fuel gas" claim); underpayment of royalties on drip condensate; and improper deduction from royalties of the Trust's share of tax under the New Mexico Natural Gas Processors' Tax, NMSA 1978, §§7-33-1 to 7-33-2. *See* SAC, Doc. 70, Counts I, II & VII. Parties will address what remains of these claims in connection with a renewed motion for class certification. *See* Doc. 212 at 2-3. Defendant's motion is directed solely to Count IV which asserts a Breach of Duty to Market Hydrocarbons.

condition. *See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690 (1993); *Rogers v. Westerman Farm Co.*, 29 P.3d 887 (Colo. 2001) (the implied duty to market obligates a producer to bear "the expense of getting the product to a marketable condition and location"). In this case, the Tatum Trust lease *expressly* addresses the allocation of post-production costs between the Tatum Trust and Energen:

> Lessor shall not bear, directly or indirectly, any production or post-production cost or expenses, including without limitation, cost or expenses for storing, separating, dehydrating, transporting, compressing, treating, gathering, or otherwise rendering marketable or marketing the Products, and no deduction or reduction shall be made for any such costs and expenses in computing any payment, or the basis upon which any payment is, to be made to Lessor pursuant to clauses (a), (b) or (c).

Doc. 215-1 (Ex. A, for leases dated Dec. 15, 2000 and Dec. 1, 2003). In addition, the Tenth Circuit recognized that the Tatum Trust leases expressly provide for the allocation of post-production costs and royalties on volumes of gas and liquids not sold by Energen, such as gas used as fuel (Plaintiff's fuel gas claims) and drip condensate. Doc. 177 at 4; *see Anderson Living Trust*, 886 F.3d at 848:

> Colorado prohibits oil and gas well operators like Energen from deducting from the royalty payment the costs necessary to render the gas marketable, unless the lease provides otherwise. *See Garman*, 886 P.2d at 653–54, 659–60. These leases do not provide otherwise; in fact, **they explicitly prohibit Energen from deducting post-production costs from the Trust's royalty**.

*Anderson Living Trust,* 886 F.3d at 848 (emphasis added).[3]

Plaintiff's Fourth Cause of Action refers to the lease provisions, *See* Doc. 70 at 60 ("Under the terms of the oil and gas leases and other documents creating the Plaintiffs' interest. . . Energen

---

[3] The Tenth Circuit's reference to post-production costs was made in the context of Plaintiff's fuel gas claim, in which Plaintiff alleged that Defendant did not pay royalties to Plaintiff for gas from the leased land that was used as fuel. The Tenth Circuit reversed the district court's grant of summary judgment to Defendant on this claim, disagreeing with the district court's interpretation of the royalty provisions as they concerned Defendant's use of gas as fuel. 886 F.3d at 852.

has a duty and covenant to market production to the mutual advantage of [the parties]"). It asks the Court to find that "Energen owes an implied duty to market under the terms of the subject Colorado leases" to Plaintiffs. Doc. 70, ¶63.

## I. Parties' Positions

Defendant contends that the implied duty to market has no bearing on the proper calculation of royalties paid to the Tatum Trust because the leases contain express language which allocates post-production costs to Energen, and this language eliminates the need for Plaintiff to rely on the "marketable condition rule." As a result, Plaintiff has no grounds to pursue a claim for breach of the implied duty to market under Colorado law.

Plaintiff contends that the Court should not dismiss Plaintiff's Fourth Cause of Action because it invokes both Defendant's express obligations under the lease provisions as well as its implied duty under the marketable condition rule and because it is directed to Energen's failure to fulfill its obligations under its implied duty under the rule rather than the express terms of the lease provisions. Doc. 220 at 6.

## II. Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer*, 101 F.3d 1336, 1338 (10th Cir. 1996). Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The non-moving party may not rest on averments in its pleadings, but

instead must establish specific triable issues. *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The issue here is whether, based on certain language in the Tatum Trust, Plaintiff's Fourth Cause of Action can survive summary judgment. The parties do not dispute the specific lease language at issue and so there are no disputed material facts—only the legal outcome. *See Rummel v. Lexington Ins. Co.,* 123 N.M. 752, 759 (1997) (summary judgment is appropriate where no facts are in dispute, but only the legal significance of the facts); *Benns v. Continental Cas., Co*., 982 F.2d 461, 462 (10th Cir. 1993) (when facts are undisputed, all that remains is a question of law for the court) (insurance context).

## III. Analysis

It is undisputed that the Tatum Trust lease expressly provides for the allocation of post-production costs between the Tatum Trust and Energen. Nevertheless, Plaintiff suggests that Energen also has other "implied" duties under the marketable condition rule, and that the rule still applies as set forth in the Fourth Cause of Action because the lease language fails to define when and where the gas is marketable. Plaintiff contends that the implied duty to market under the "marketable condition rule" must take over where the Tatum Trust lease language is silent.

Gas is marketable when it is in the physical condition where it is acceptable to be bought and sold in a commercial market place and in the location of a commercial marketplace." *Clough v. Williams Prod. RMT Co*., 179 P.3d 32 (Colo. 2007) citing *Roger*s at 905. The point at which the product becomes marketable is a critical one. *See Clough v. Williams Prod. RMT Co.*, 179 P.3d 32, 37 (Colo. App. 2007) (when and where gas is marketable is "critical" to resolving issue of

5

whether producer could satisfy burden of justifying its cost deductions from royalty payments) (citing *Rogers,* 29 P.3d 887). Plaintiff observes, for example, that because the leases fail to define when and where the gas is marketable, Energen is claiming that it can deduct taxes and fuel gas it uses. If Energen claims that Tatum Trust's gas is marketable *prior* to the imposition of these taxes, then Tatum Trust (rather than Energen) would have to bear those costs; that is, the earlier the product is deemed to be marketable, the more distance Energen can keep between itself and the imposition of post-production costs.

The Tatum Trust lease language allocates all post-production costs to the lessee (here, Energen), but it is silent about exactly how the point of marketability is determined. However, there is no need for lease language to specifically address that issue, because the determination of marketability is a question of fact, to be resolved by a fact finder. *Rogers*, 29 P.3d at 906; *see also Clough v. Williams Prod. RMT Co.*, 179 P.3d 32, 38 (Colo. App. 2007) (whether gas is marketable is a question of fact, and the determination of when gas is marketable is driven by the commercial realties of the marketplace) (citing *Rogers,* 29 P.3d 887). The question of whether Energen has made improper or unreasonable deductions for post-production costs is one for the fact finder at trial.

In the First, Second and Seventh Causes of Action, Plaintiff alleges that Defendant deducted unreasonable costs from royalty payments (post-production costs). *See* Doc. 198 at 7 & 9; *see also* Doc. 199 at 1. Parties have jointly agreed that Tatum Trust's specific underpayment claims are based on the following:

    (1) the alleged improper deduction of post-production costs, including the deduction of the cost of the New Mexico Natural Gas Processors Tax ("NGPT");

    (2) the alleged failure to pay royalties on gas used as fuel; and

    (3) the alleged failure to pay royalties on drip condensate.

Doc. 211 at 2 at C(1); *see also* Doc. 212 at 2.[4]

Plaintiff is concerned that the lease provision that shifts post-production costs and expenses to Energen permits Defendant to arbitrarily define when and where the gas is marketable and for this reason, Plaintiff argues that the Fourth Cause of Action takes up where the express language of the lease leaves off. However, Plaintiff's concern is unwarranted because at trial, the fact finder will determine whether Defendant has made unreasonable or improper post-production deductions. *See Rogers,* 29 P.3d at 905-06, 908 (fact finder should determine what condition gas is first marketable, and whether post-production costs were necessary to make the gas marketable). The fact finder's inquiry will be based on the lease provision (which incorporates the marketable condition rule) rather than on a separately alleged claim of a breach of an "implied" duty to market)—which makes the Fourth Cause of Action unnecessary and superfluous.

The Court's conclusion here is supported by the relevant case law. In adopting the marketable condition rule, the Colorado Supreme Court "relied on the 'implied covenant to market' contained in every oil and gas lease. *Garman*, 886 P.2d at 653–55; *Lindauer v. Williams Prod. RMT Co.*, 381 P.3d 378, 379 (Colo. Ct. App. 2016) (implied duty to market "obligates the lessee to engage in marketing efforts which 'would be reasonably expected of all operators of ordinary prudence, having regard to the interests of both lessor and lessee'"). An "implied covenant to market" is implicated only when "there are no express provisions contemplating allocation of costs with respect to royalty calculations." *Rogers*, 29 P.3d at 906 (holding implied duty is inapplicable to royalty payments where there are "express lease provisions addressing

---

[4] In Document 212, the Court reiterated the parties' understanding of Tatum Trust's royalty underpayment claims, although the improper deduction of post-production costs was limited to the deduction of the cost of the NGPT tax. Doc. 212 at 2. However, that part of the royalty underpayment claim which alleges an improper deduction of post-production costs *includes* the deduction of the cost of the NGPT tax, and is not *limited* to the NGPT tax—as it is correctly reflected in the parties' joint position on the claim. *See* Doc. 211 at 2 at (C(1)).

7

allocation of costs"); *Garman v. Conoco, Inc.*, 886 P.2d 653, 654 (Colo. 1994) (applying the implied duty to market after holding that the royalty agreement was "silent with respect to the allocation of post-production costs"). The duty or covenant to market need not be an implied one where the duty is expressly provided for in the lease language. Because the Tatum Trust lease contains an express provision assigning the burden of post-production costs to the lessor, there is no need at all for Plaintiff to assert a claim charging Defendant with a failure to carry out an "implied duty."

A separate cause of action based on a breach of implied duty is not only unnecessary where a lease contains an express provision, but it may also conflict with agreements that parties may have bargained for. *See Grossman v. Columbine Medical Group, Inc.*, 12 P.3d 269, 271 (Colo. App. 1999) (implied duty "may not contradict terms or conditions for which the parties have bargained"; *Genova v. Banner Health*, 734 F.3d 1095, 1103 (10th Cir. 2013) (holding implied duty under Colorado law "never insinuates itself in the first place in ways and places that undo the parties' expressly bargained-for rights").

## V. Plaintiff's Proposed Surreply

**Just prior to the Court's filing of this decision, Plaintiff requested leave to file a surreply, Doc. 230. The Court has reviewed the proposed submission (Ex. 1), and is not persuaded that it changes the Court's ruling in any way. Plaintiff argues that because the terms in the Tatum lease do not contradict the implied duty to market as it exists under Colorado law, the Fourth Cause of Action should survive. However, Defendant's motion and accompanying arguments were not premised on a position that the lease terms were inconsistent with Colorado's marketability rule, but rather whether a separate cause of action for violation of an implied duty is appropriate and necessary, given that the lease**

8

**expressly states the lessor's duty of marketability. Therefore, the Court finds that the proposed surreply is unhelpful and there is no reason to proceed with further briefing on the matter. For this reason, denies Plaintiff's request to file a surreply.**

Therefore, for the above reasons, the Court finds that Plaintiff's Fourth Cause of Action for a breach of implied duty to market is superfluous and unnecessary in light of the express language in the Tatum Trust lease, the existence of which is undisputed by the parties. Accordingly, Plaintiff has no claim for a breach of implied duty to market so Defendant is entitled to summary judgment on this claim.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE