# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST
f/k/a THE JAMES H. ANDERSON LIVING
TRUST, et al.,

        Plaintiffs,

v.                                        CV No. 13-909 WJ/CG

ENERGEN RESOURCES CORPORATION,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon the parties' *Joint Motion and Brief in Support of Final Approval of Class Settlement, Notice and Plan of Allocation* (the "Motion for Final Approval"), (Doc. 294), filed June 28, 2021; *Plaintiff's Motion for Attorney Fees, Litigation Costs, Class Representative Service Fees, and Anticipated Administrative Costs from the Settlement Fund and Memorandum in Support Thereof* (the "Motion for Fees"), (Doc. 295), filed June 28, 2021; and *Plaintiff's Supplement to Motion for Attorney Fees and Litigation Costs—Hearing July 19, 2021 at 10:00 AM Via Zoom Before Chief Magistrate Judge Garza* (the "Supplemental Motion for Fees"), (Doc. 297), filed July 14, 2021. On June 30, 2021, Chief United States District Judge William P. Johnson referred both motions to the undersigned to perform legal analysis and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 296).

The Court, having considered the Motion for Final Approval, the Motion for Fees, the Supplemental Motion for Fees, the terms of the parties' settlement, the record of this case, the relevant law, and the arguments presented by counsel at the final approval

hearing on July 19, 2021, **RECOMMENDS** the Motion for Final Approval, the Motion for Fees, and the Supplement be **GRANTED**.

## I.      Factual and Procedural Background

This case stems from the alleged systematic underpayment of royalties on oil and gas wells in the San Juan Basin. In September 2013, Plaintiffs, then comprised of four separate trusts owning royalty interests in these wells, filed this class action against Defendant Energen Resources, the owner and operator of the wells. *See* (Doc. 1); *see also* (Doc. 5); (Doc. 70); (Doc. 256 at 1). Over the ensuing years of the litigation, three of the four trusts were dismissed from the case, leaving only the Tatum Living Trust. *See* (Doc. 212 at 2); (Doc. 293). Further, the only claim to survive to date is the Tatum Living Trust's claim of underpaid royalties on gas used as fuel (the "Colorado fuel gas claim"), which the Honorable Chief Judge Johnson certified as a class claim. (Doc. 212 at 2); *see also* (Doc. 256).

On March 9, 2021, the parties informed the Court that they had reached a settlement in this matter, (Doc. 282), and on April 5, 2021, they filed a *Joint Motion for Order (1) Preliminarily Approving Class Settlement, (2) Approving Notice to Class Members, (3) Establishing Opt Out and Objection Procedures, (4) Appointing a Class Administrator, and (5) Setting a Final Hearing Date to Consider Final Approval of the Class Settlement, Attorneys' Fees and Expenses*, (Doc. 283). The proposed *Settlement Agreement* (the "Agreement"), (Doc. 283-1), provided, in relevant part, that the Class would receive $5,610,000.00. The *Notice of Class Action and Proposed Settlement* (the "Notice"), (Doc. 283-2), set forth procedures for notifying the Class members of the

Agreement, including the payment of attorney fees, costs, and reimbursement for expenses, and for distributing the funds to the Class members.

On April 29, 2021, following a hearing on the motion, the undersigned entered a *Proposed Findings and Recommended Disposition* ("PFRD"), (Doc. 290), recommending the Court preliminarily approve the parties' settlement of the Colorado fuel gas claim, appoint a class administrator, and establish procedures for providing the class members with notice of the Agreement, for opting out of the Agreement, and for objecting to the Agreement. (Doc. 290 at 6-9).

That same day, Chief Judge Johnson entered an *Order Adopting Chief Magistrate Judge's Proposed Findings and Recommended Disposition*, (Doc. 291), in which he preliminarily approved the Agreement, approved the Notice as to form and content, directed Defendant Energen to deposit the settlement payment of $5,610,000.00 into an escrow account, appointed a Class Administrator, and set forth various deadlines concerning notice and due process for the Class. The matter was then set for a final approval hearing. *Id.* at 3-4.

On June 28, 2021, the parties filed the instant Motion for Final Approval, requesting the Court "(1) grant[] final approval of the proposed Settlement; (2) approve[] the form, content, and manner of the Settlement Class Notice; (3) approve[] the Plan of Allocation as fair, adequate, and reasonable; (4) approve[] attorney's fees, litigation expenses and incentive award; [and] (5) find[] there are no objections for the proposed Settlement." (Doc. 294 at 1). The parties indicate that no objections were lodged by any of the Class members, and one class member (via her heir) elected to opt out. *Id.* at 3. The parties also filed the instant Motion for Fees and Supplemental Motion for Fees,

asking the Court to award from the Settlement Fund "(1) attorney fees, (2) litigation costs, (3) class representative services fees, and (4) anticipated administrative costs." (Doc. 295 at 1); *see also* (Doc. 297). On July 19, 2021, the Court held a hearing on the motions. *See* (Doc. 299).

## II.    Final Approval of the Settlement Agreement

### A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 23(e) provides that "the claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . [and] only after a hearing." FED. R. CIV. P. 23(e)(2). Approval by the Court is a two-step process: preliminary approval and final approval. *Stanforth v. Farmers Ins. Co. of Arizona*, 1:9-cv-1146 RB/RHS, 1162014 WL 11497806, *3 (D.N.M. Nov. 1, 2013). At the final approval stage, the court must determine whether the settlement is fair, reasonable and adequate. *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also* FED. R. CIV. P. 23(e)(2). Generally, courts will approve a proposed class settlement where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Stanforth*, 1162014 WL 11497806, at *3.

### B.    <u>Analysis</u>

In their Motion, the parties contend that the Agreement is "fair, adequate, and reasonable[,]" that the Notice "constituted fair and adequate notice and was the best practicable Notice under the circumstances, satisfying all the requirements of due

process" and Rule 23, and that "[t]he proposed Plan of Allocation is fair, adequate, and reasonable[.]" (Doc. 294 at 3).

### i.   Fairness Under Fed. R. 23(e)(2)(A)-(F)

In determining whether a class settlement agreement is fair, reasonable, and adequate, Rule 23(e) requires the Court to find: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the proposal treats class members equitably relative to each other; and (4) the relief provided for the class is adequate, taking into account (a) the costs, risks, and delay of trial and appeal, (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (c) the terms of any proposed award of attorney's fees, including timing of payment, and (d) any agreement required to be identified under Rule 23(e)(3). FED. R. CIV. P. 23(e)(2)(A)-(F).

### 1.   _Whether the class representatives and class counsel have adequately represented the class_

This first factor focuses "on the actual performance of counsel acting on behalf of the class." _Montgomery v. Continental Intermodal Group-Trucking LLC_, 2:19-cv-940 GJF, 2021 WL 1339305, *4 (D.N.M. April 9, 2021) (quoting FED. R. CIV. P. 23 advisory committee's note).

In the eight years of litigation in this case, the parties have exchanged substantial discovery, which provided Class Counsel with "an adequate appreciation of the case's merits before negotiating." _In re Warfarin Sodium Antitrust Litig._, 391 F.3d 516, 531 (3d Cir. 2004) (citations omitted). With that appreciation, Class Counsel achieved an excellent result for the class—$5,600,000.00—which Class Counsel indicates amounts

to "one hundred percent (100%) of principal damages and very close to one hundred percent (100%) of interest as calculated by the Colorado Statutes on the . . . Colorado fuel gas [claim]." (Doc. 295 at 8). Moreover, no class members objected to the settlement. (Doc. 294 at 3).

The Court therefore finds that Class Counsel and the Tatum Living Trust adequately represented the Class, and that this factor favors approval of the settlement.

### 2.   _Whether the proposal was negotiated at arm's length_

The second factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." _Montgomery_, 2021 WL 1339305, at *4 (quoting FED. R. CIV. P. 23 advisory committee's note).

Here, the Agreement was reached as a result of arms-length negotiations between attorneys experienced not only in class action litigation generally but in this eight-year-long litigation. The attorneys are thus intimately familiar with the legal and factual issues in this matter. Further, once the Class was certified, the parties "exchange[d] . . . information necessary to . . . settlement [negotiations]," employing experts, for at least a ten-month period. _See_ (Docs. 270-278). Both parties' experts, whom counsel indicated at the motion hearing worked very well together, also engaged in an exhaustive analysis of Defendant Energen's royalty accounting data. Moreover, Counsel agree that the Agreement was the product of good faith, arms-length negotiations between the parties. (Doc. 294 at 5).

As such, the Court finds the Agreement was fairly and honestly negotiated at arm's length. _See Lucas v. Kmart Corp._, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced

counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

> 3.   *Whether the proposal treats class members equitably relative to each other*

This factor seeks to prevent the "inequitable treatment of some class members vis-à-vis others." *Montgomery*, 2021 WL 1339305, at *4-10 (quoting FED. R. CIV. P. 23 advisory committee's note). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*

Here, the Settlement Fund is allocated to Class members based on the amount of monthly underpayments for the failure to pay royalty on fuel gas and when that alleged underpayment occurred. (Doc. 294 at 8). The allocation plan also accounts for all attorney fees, costs, and administrative expenses as ordered by the Court, and it allocates these expenses pro rata to each Class member. *Id.* The allocation calculation accounts for the time-delay of payment by applying Colorado's 8% pre-judgment interest compounded annually, beginning with the date the original payment was allegedly due for the applicable months. *Id.* at 9. Using this methodology, Class members are allocated a proportionate share of the net Settlement Fund, net of Class Counsel's requested fees and costs. *Id.*

The Court therefor finds that this plan of allocation treats each Class member equitably relative to each other Class member.

4.   _Whether the relief provided for the Class is adequate_

Finally, this factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." _Montgomery_, 2021 WL 1339305, at *4 (quoting FED. R. CIV. P. 23 advisory committee's note).

i.   _Whether the relief provided for the Class is adequate, taking into account the costs, risks, and delay of trial and appeal_

The settlement provides substantial monetary payments to the Class members, totaling $5,610,000.00, enabling them to avoid the real risks of litigation. Given the heavy litigation of this case for over eight years, there is a great risk that the parties would continue litigating it for years to come. Notably, the parties have already litigated one appeal to the Tenth Circuit. _See_ (Doc. 175); (Doc. 177); (Doc. 182); (Doc. 184); (Doc. 185); (Doc. 193). The parties have also litigated an interlocutory appeal regarding class certification of the Colorado fuel gas claim, which, as counsel indicated at the motion hearing, Defendant Energen would likely continue to pursue if this case were to proceed. _See_ (Doc. 256); (Doc. 264); (Doc. 266).

The Court agrees that serious questions of law and fact exist, which place the ultimate outcome of this litigation in doubt, "including whether, and to what extent, Energen has underpaid royalties to the Class members on gas used off the lease premises as fuel." (Doc. 283 at 6). Given the lengthy history of the case and the complexity of the legal issues, "it is clear that the parties could reasonably conclude that there are serious questions of law and fact, which could significantly impact this case if litigated." _Lucas_, 234 F.R.D. at 693-94. Particularly, it appears the class members would face a legitimate risk to their recovery of royalties related to the Tatum Living Trust fuel

gas claim. Additionally, more litigation would lead to greater expense and delayed recovery for the class members.

Thus, the Court finds that the relief provided for the Class members is adequate, taking into account the costs, risks, and delay of trial and appeal.

> ii.   Whether the relief provided for the Class is adequate, taking into account the effectiveness of any proposed method of distributing relief to the class

Under this factor, the court "scrutinize[s]" the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." *Montgomery*, 2021 WL 1339305, at *4-10 (quoting FED. R. CIV. P. 23 advisory committee's note). The Notice process here gave Class members the option to opt out and the opportunity to object to the settlement, which no Class member chose to do. *See* (Doc. 283-2); (Doc. 294 at 3). Further, the Class Administrator mailed notices to the 412 Class members, 87 of which were returned undeliverable. (Doc. 294-1 at 1). Class Counel then subjected the returned mailings to a "skip trace" procedure wherein Class Counsel was able to find new addresses or new names and new addresses for over seventy of the members. *Id.* In response to these notices, only one member opted out, and that member's share represented only "2/1000[th] of a percent interest" in the Class. (Doc. 294 at 6).

Given the process employed to notify Class members of the settlement, the lack of any objections and only one opt-out, as well as Chief Judge Johnson's preliminary approval of the form of the Notice, (Doc. 291), the Court finds the relief provided for the Class is adequate taking into account the effectiveness of any proposed method of distributing relief to the class.

9

> iii.  *Whether the relief provided for the Class is adequate taking into account the terms of any proposed award of attorney's fees, including timing of payment*

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement. *Montgomery*, 2021 WL 1339305, at *4-10 (quoting FED. R. CIV. P. 23 advisory committee's note). Class Counsel has requested attorney fees in the amount of $2,244,000.00, constituting 40% of the Settlement Fund, out-of-pocket litigation expenses in the amount of $102,661.43, class representative services fees in the amount of $5,000.00 to be paid to the Tatum Living Trust, and current and anticipated administrative costs in the estimated amount of $150,000.00 to be paid to the Class Administrator. (Doc. 295-1 at 2); (Doc. 297).

In the Notice, Class Counsel informed the Class members that attorney fees would be requested in the amount of 40% of the gross recovery, to be taken from the Settlement Fund. (Doc. 283-2). As stated above, no Class members objected and only one opted out. (Doc. 295 at 5). Moreover, in the Motion for Fees and the Supplemental Motion for Fees, Class Counsel submitted billing records and provided the Court with a "lodestar cross-check" in order for the Court to review the request for reasonableness. *Id.* at 4; (Doc. 297). The lodestar method computed attorney fees in the amount of $1,694,125.00, which constitutes 30.2% of the Settlement Fund. (Doc. 295 at 4).

Counsel adequately detailed the hours spent litigating this case, the respective hourly rates for the attorneys involved, which all appear to be reasonable, and provided the Court with the lodestar cross-check. Moreover, courts in this District routinely award fees in the range of 30-40% of any amount recovered. *See Montgomery*, 2021 WL

1339305, at *7, n.5-6 (approving a fee request of 31.47% and citing twelve cases from districts in the Tenth Circuit awarding fees in the range of 30% to 40%).

Therefore, the Court finds the relief provided for the Class is adequate taking into account the terms of any proposed award of attorney's fees, including timing of payment.

> iv.    *Whether the relief provided for the Class is adequate taking into account any agreement required to be identified under Rule 23(e)(3)*

Under this factor, the parties are required to "file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). The parties have duly filed with the Court the Settlement Agreement and the Plan Allocation, and thus the Court finds that this has been satisfied.

Therefore, given the foregoing, the Court finds that the relief provided to the Class is adequate. The Court further finds, in conclusion that the parties have satisfied the four prongs set forth under Rule 26(e)(2)(A)-(F).

## ii.    Fairness Under the *Rutter* Factors

In addition to the four prongs set forth under Rule 26(e)(2)(A)-(F), the Tenth Circuit requires that, in making these findings, the Court consider the following four "*Rutter*" factors: (1) whether the settlement was fairly and honestly negotiated; (2) whether serious legal and factual questions place the litigation's outcome in doubt; (3) whether the immediate recovery is more valuable than the mere possibility of a more favorable outcome after further litigation; and (4) whether the parties believe the settlement is fair and reasonable. *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d

1180, 1188 (10th Cir. 2002); *see also Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1266 (10th Cir. 2004).

1.   <u>Whether the settlement was fairly and honestly negotiated</u>

With regard to the first factor, the parties state the Agreement was "the product of good faith, arms-length negotiations between the parties," and that the parties engaged in extensive discovery, including exhaustive analysis by qualified experts of Energen's royalty accounting data. (Doc. 294 at 5). The Court agrees.

As stated above, the Agreement was the result of arms-length negotiations between attorneys experienced not only in class action litigation generally but in this eight-year-long litigation. The attorneys are thus intimately familiar with the legal and factual issues in this matter. Further, once the Class was certified, the parties "exchange[d] . . . information necessary to . . . settlement [negotiations]," employing experts, for at least a ten-month period. *See* (Docs. 270-278). As such, the Court finds the settlement was fairly and honestly negotiated.

2.   <u>Whether serious legal and factual questions place the litigation's outcome in doubt</u>

With regard to the second factor, the parties contend serious questions of law and fact exist, which place the ultimate outcome of this litigation in doubt. (Doc. 283 at 6). Again, the Court agrees. Across several fronts, it appears the Class members would face a legitimate risk to their recovery of royalties related to the Colorado fuel gas claim, as explained above. Additionally, more litigation in a case almost nine years old would lead to greater expense and delayed recovery for the class members. As counsel indicated at the hearing, given the lengthy history of the case and the complexity of the legal issues, "it is clear that the parties could reasonably conclude that there are serious

questions of law and fact, which could significantly impact this case if litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693-94 (D. Colo. 2006). Thus, the Court finds the second factor favors approval of the settlement.

3.   *Whether immediate recovery is more valuable than continued litigation*

The Agreement awards the Class members a settlement amount of $5,610,000.00. (Doc. 283-1, Exhibit A at 2). Counsel indicated that, according to experts for both parties, this amount constitutes 100% of the amount the Class members could have otherwise recovered, "plus substantial interest." (Doc. 295 at 8). Given this guaranteed recovery, which is substantial, the Court finds this factor favors approval of the settlement.

4.   *Whether the parties believe the settlement is fair and reasonable*

Finally, the parties agree that the settlement is fair and reasonable. *Id.* at 6-10. As stated above, counsel for both parties are experienced, and they have been involved in this eight-year litigation since its inception. Further, "[c]ounsel's judgment as to the fairness of the agreement is entitled to significant weight." *Kmart Corp.*, 234 F.R.D. at 695. Therefore, given counsel's unanimous support of the settlement, this factor favors approval.

**C.   Conclusion**

Given the foregoing findings, the Court will thus recommend that the settlement be approved as fair, reasonable, and adequate, and that the Motion for Final Approval be granted in its entirety.

III.     **Attorney Fees and Costs**

Under Federal Rule of Civil Procedure 23(h), the court may "award reasonable attorney's fees and nontaxable costs that are authorized by law." Moreover, in class settlement cases, counsel may seek those fees and expenses from the settlement fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The percentage awarded to the class members, thus, results "in a sharing of the fees among those benefitted by the litigation." *Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

In the Tenth Circuit, there is a preference for determining the reasonableness of a fee award in common fund cases utilizing "the percentage of fund" method. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). The Tenth Circuit does not use the lodestar method and it does not require a lodestar cross-check, but some courts in this district nevertheless require a lodestar cross-check only to determine the reasonableness of the request. *See Candelaria v. Health Care Serv. Corp.*, 2:17-cv-404 KG/SMV (Doc. 83); *see also Montgomery v. Continental Intermodal Group-Trucking LLC*, 2:19-cv-940 GJF (Doc. 63).

Further, the Tenth Circuit mandates courts to consider the following twelve "*Johnson* factors":

1.  the time and labor involved;
2.  the novelty and difficulty of the questions;
3.  the skill requisite to perform the legal service properly;
4.  the preclusion of other employment by the attorney due to acceptance of the case;
5.  the customary fee;
6.  any prearranged fee—this is helpful but not determinative;
7.  time limitations imposed by the client or the circumstances;
8.  the amount involved and the results obtained;
9.  the experience, reputation, and ability of the attorneys;
10. the undesirability of the case;

14

11. the nature and length of the professional relationship with the client; and
12. awards in similar cases.

*Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1096 (D.N.M. 1999) (quoting

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Here, in Plaintiffs' Motion for Fees, Class Counsel requests attorney fees in the amount of $2,244,000.00, constituting 40% of the settlement fund, out-of-pocket litigation expenses in the amount of $102,661.43, class representative services fees in the amount of $5,000.00 to be paid to the Tatum Living Trust, and current and anticipated administrative costs in the estimated amount of $150,000.00 to be paid to the Class Administrator. (Doc. 295-1 at 2); (Doc. 297). The Court will consider each of the *Johnson* factors in determining the reasonableness of this request.

1.   *Time and Labor Involved*

As detailed in Exhibit 1 to the Motion for Fees, lead counsel for the Class spent over 1,500 hours on this case. (Doc. 295-1 at 1-2). Other counsel involved, also as detailed in Exhibit 1, spent over 1,000 hours on the case. *Id.* All told, Class Counsel spent over 2,500 hours working on this eight-year case. *Id.*

2.   *Novelty and Difficulty of the Questions*

The Court considered the central issue in this case—whether the subject leases intended for royalty to be paid on fuel gas, or whether the fuel gas was encompassed by the language in the leases, allowing gas to be used free of royalty "on the lease premises"—and the Court ruled in Defendant Energen's favor. (Doc. 295 at 6-7). However, the Tenth Circuit disagreed and granted Plaintiff's appeal. (Doc. 193). This illustrates the novelty and difficulty of the questions in this case. Additionally, as Class

15

Counsel notes, class certification of oil and gas royalty cases is somewhat rare in New Mexico. (Doc. 295 at 7).

        *3.*    <u>Skill Requisite to Perform the Legal Service Properly</u>

Oil and gas litigation, especially in the area of royalty interests in oil and gas, is highly specialized, as Class Counsel notes in the Motion for Fees. (Doc. 295 at 7). Further, lead counsel for the Class has practiced in the area for thirty years, litigating against some of the most skilled oil and gas litigators nationally and internationally. *Id.*

        *4.*    <u>Preclusion of Other Employment by the Attorney Due to Acceptance of the Case</u>

As Class Counsel detailed in the Motion for Fees, and as stated above, the attorneys representing the Class spent over 2,500 hours on this case, across eight years. These are 2,500 hours that counsel was unable to spend on other legal matters.

        *5.*    <u>*Customary Fee*</u>

Class Counsel is requesting a fee of 40% of the Settlement Fund. (Doc. 295-1 at 2). Customarily, courts in this District award fees in the range of 30% to 40% of any amount recovered, which places Class Counsel's request within the customary fee range. *See Montgomery*, 2021 WL 1339305, at 7, n.5-6.

Moreover, Class Counsel's lodestar cross-check for attorney fees came to 30.3%, which means Class Counsel's request of 40% amounts to only a multiplier of 0.33. (Doc. 295 at 7). This multiplier is far less than the multiplier of 1.3, which the Tenth Circuit recently permitted in a similar case. *See Wells v. Best Buy Co. (In re Samsung Top-Load washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.)*, 997 F.3d (10th Cir. 2021). In fact, counsel who reviewed the fee request on behalf of Class Counsel, and opined on its reasonableness, stated that his "experience and research indicates

that a lodestar percentage multiplier in class cases of this nature in New Mexico go up

to a multiplier of 4.0." (Doc. 297-1). In its finding under this factor, the Court will

incorporate by reference the *Declaration in Support of Plaintiff's Motion for Attorney*

*Fees and Litigation Cost*s, (Doc. 297-1).

### 6.   Any Prearranged Fee

The fee in this case was contingent upon the outcome. (Doc. 295 at 7). In other

words, as Class Counsel notes in the Motion for Fees, Class Counsel spent thousands

of hours over eight years working on this case, understanding they may not recover the

$102,661.43 they paid in out-of-pocket expenses. *Id.* Moreover, as Class Counsel

stated at the motion hearing, Class Counsel and the Tatum Living Trust agreed to a

40% fee at the outset of this litigation.

### 7.   Time Limitations Imposed by the Client or the Circumstances

This Court imposed various time limitations concerning discovery and motion

practice, and the Tenth Circuit imposed time limitations in the briefing of Plaintiffs'

appeal.

### 8.   Amount Involved and Results Obtained

As this Court explained in the PFRD recommending preliminary approval of the

proposed Settlement Agreement, Class Counsel secured a settlement of 100% of the

principal damages and nearly 100% of interest on the class-certified Colorado fuel gas

claim. *See* (Doc. 290 at 6); (Doc. 295 at 8).

### 9.   Experience, Reputation, and Ability of the Attorneys

As noted above, lead counsel for the Class has practiced in the area of oil and

gas law for thirty years, litigating against some of the most skilled oil and gas litigators

nationally and internationally. (Doc. 295 at 8). Moreover, Class Counsel has appeared before courts in this District dozens of times. *Id.* And Counsel has settled and obtained monies for royalty owners in excess of $200,000,000. *Id.*

    10. *Undesirability of the Case*

  The parties have litigated this case for over eight years, requiring thousands of hours of work by counsel. *Id.* That, as Class Counsel explains in the Motion for Fees, was the central undesirable aspect of this case. *Id.* Additionally, the case required Class Counsel to seek class certification in a state—New Mexico—that has not recognized "the marketable condition rule" as part of the implied covenant to market. *See Anderson Living Trust v. Energen Resources Corp.*, 886 F.3d 826, 839-40 (stating that "the New Mexico Supreme Court has not included the marketable condition rule in the implied duty to market, despite having the opportunity to do so . . .").

    11. *Nature and Length of the Professional Relationship with the Client*

  Class Counsel has represented the Tatum Living Trust for over eight years in this case, and lead counsel for the Class "has represented Jack Anderson and various trusts from the Bank of Oklahoma for decades in numerous royalty owner actions." (Doc. 295 at 8).

    12. *Awards in Similar Cases*

  As stated above, the settlement award in this case falls within the range of awards in similar cases. *See Montgomery*, 2021 WL 1339305, at *7, n.5-6.

  Thus, The Court finds each of the twelve *Johnson* factors weighs in Class Counsel's favor, supporting a finding that Class Counsel's fee request is reasonable. The Court will therefore find that the attorney fees and other fees requested are

reasonable, and it will recommend that Chief Judge Johnson grant Plaintiff's Motion for Fees.

**IV.     Conclusion**

The undersigned therefore **RECOMMENDS** the Court order as follows:

1.      The Settlement Agreement, (Doc. 283-1), is finally **APPROVED** as fair, reasonable, and adequate;

2.      Barbara A. Ley, P.C., is **APPOINTED** as Class Administrator for all purposes necessary to implement the Settlement Agreement;

3.      The parties shall take any and all necessary steps to implement the Settlement Agreement according to its terms;

4.      The Class' Released Claims (as defined in paragraph 7 of the Settlement Agreement) are fully and completely settled, discharged, and released. Distribution of the Settlement Amount shall be conducted pursuant to paragraph 6 of the Settlement Agreement, and Class Members are deemed conclusively to have released and settled the Class' Released Claims. All such members of the Plaintiff Class are barred and permanently enjoined from commencing or prosecuting, either directly, representatively, derivatively, or in any capacity, any of the Settled Claims, against the Energen Released Parties (as that term is defined in paragraph 7 of the Settlement Agreement);

5.      The following fees and expenses shall be paid to the Class Representative, the Class Administrator, and Class Counsel from the Settlement Amount defined in paragraph 2 of the Settlement Agreement:

19

a.  Class Representative the Tatum Trust shall be **AWARDED** a service fee award of $5,000.00;

b.  Class Administrator Barbara A. Ley, P.C. shall be **AWARDED** current and anticipated administrative costs in the amount of $150,000.00;

c.  Class Counsel shall be **AWARDED** reasonable attorney fees in the amount of 40% of the gross Settlement Fund ($2,244,000.00), and litigation expenses in the amount of $102,661.43; and

6.  Class Counsel shall provide to the Court by no later than **October 25, 2021**, a Joint Status Report, including a final accounting of the actual administrative costs to be awarded to Class Administrator Barbara A. Ley, P.C., or an update on the status of such a final accounting.

Generally, a party may file written objections with the Clerk of the District Court within 14 days after that party is served with a copy of a proposed findings and recommended disposition. *See* 28 U.S.C. § 636(b)(1). However, at the July 19, 2021 motion hearing, the parties waived the objections period set forth in § 636(b)(1), so that this case may be finalized expeditiously. *See* (Doc. 299).

For the foregoing reasons, the Court **RECOMMENDS** that the parties' *Joint Motion and Brief in Support of Final Approval of Class Settlement, Notice and Plan of Allocation*, (Doc. 294), be **GRANTED**; *Plaintiff's Motion for Attorney Fees, Litigation Costs, Class Representative Service Fees, and Anticipated Administrative Costs from the Settlement Fund and Memorandum in Support Thereof*, (Doc. 295), be **GRANTED**; and *Plaintiff's Supplement to Motion for Attorney Fees and Litigation Costs—Hearing*

*July 19, 2021 at 10:00 AM Via Zoom Before Chief Magistrate Judge Garza*, (Doc. 297),

be **GRANTED**, and the settlement be finally **APPROVED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE